UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------x

STATE OF NEW YORK,

                                    Plaintiff,

                    vs.

GRAND RIVER ENTERPRISES SIX
NATIONS, LTD., NATIVE WHOLESALE
SUPPLY COMPANY INC., JERRY
MONTOUR, ARTHUR MONTOUR, Jr.,
and KENNETH HILL,

                                    Defendants.

------------------------------------------------------x

Civil Action No. ____

**COMPLAINT**



CV 13

1112

With knowledge of its own actions and on information and belief as to the actions of the

defendants, plaintiff State of New York, by its attorney Eric Schneiderman, Attorney General of

the State of New York, respectfully alleges as follows:


## INTRODUCTION

1.       This case involves the ongoing illegal sale and shipment of contraband cigarettes.

Defendants Grand River Enterprises Six Nations, Ltd. ("Grand River", or "GRE") and Native

Wholesale Supply Co., Inc. ("Native Wholesale", or "NWS") have sold and shipped, and

continue to sell and ship, large quantities of unstamped and unreported cigarettes into the State of

New York.

2.      Defendants' actions undermine New York's public health efforts and violate numerous state and federal laws, including the Contraband Cigarette Trafficking Act, 18 U.S.C. §§ 2341-2346 (the "CCTA"); the Prevent All Cigarette Trafficking Act ("PACT Act"), 15 U.S.C. §§ 375-378; and New York Tax Law §§ 471, 1814, and 480-b.

3.      In bringing this civil action for defendants' violations of these laws, plaintiff respectfully requests this Court for an order (1) enjoining the defendants from making such sales and shipments in and into the State of New York; (2) granting plaintiff's request for civil penalties, attorney fees, and costs; and (3) granting any additional relief that this Court deems proper.

## JURISDICTION AND VENUE

4.      Pursuant to 28 U.S.C. § 1331, 18 U.S.C. § 2346, and 15 U.S.C. § 378, this Court has original jurisdiction over plaintiff's claims made under the CCTA and the PACT Act.

5.      Pursuant to 28 U.S.C. § 1367, this Court has supplemental jurisdiction over plaintiff's state law claims. These claims are so related to the plaintiff's CCTA and PACT Act claims that they form part of the same case or controversy under Article III of the United States Constitution.

6.      Pursuant to 28 U.S.C. §1391(b), venue within this judicial district is proper. A substantial part of the events or omissions giving rise to the claims occurred within this judicial district.

## PARTIES

7.      Plaintiff State of New York is a sovereign entity that brings this action on behalf of its citizens and residents to protect public health, safety, and welfare, and to enforce federal and state law for that purpose.

8.      Defendant Grand River Enterprises Six Nations, Ltd. is a corporation formed under the laws of the Six Nations of Indians. Grand River is engaged in the business of manufacturing, selling, transferring, transporting and shipping its cigarettes for profit throughout the United States, including New York. Its principal place of business is located at Ohsweken, Ontario, Canada.

9.      Defendant Native Wholesale Supply is a corporation formed under the laws of the Sac and Fox Nation of Oklahoma. Native Wholesale is engaged in the business of purchase, transport, distribution and resale of Grand River tobacco products for profit throughout the United States, including New York. Its principal place of business is located at 10955 Logan Road, Perrysburg, New York.

10.     Defendant Jerry Montour is a resident of Ontario, Canada; he is the Chief Executive Officer, co-founder, and owner of Grand River Enterprises.

11.     Upon information and belief, defendant Arthur Montour is a resident of New York State; he is the President, director, co-founder and owner of Native Wholesale Supply.

12.     Defendant Kenneth Hill is an officer and shareholder of defendant Grand River.

13.     Upon information and belief, based upon documents filed by Grand River in an arbitration it initiated pursuant to the North American Free Trade Agreement, defendants Grand River and Native Wholesale Supply act as informal partners. Though they may be separate businesses, they act as a single enterprise whose purpose is to manufacture and distribute Grand River Enterprise's tobacco products, specifically the Seneca brand cigarettes. Each of their principals shares in the profits of both entities, deriving their income from the joint venture relationship between Grand River and Native Wholesale Supply. The income and profits from the partnership are shared through an informal allocation process which distributes profits to

3

defendants Jerry Montour and Kenneth Hill through Grand River, and to defendant Arthur

Montour, Jr. through Native Wholesale Supply.  Grand River is the manufacturer of the Seneca

brand cigarettes, and Native Wholesale Supply is Grand River's sole importer and distributor of

Seneca brand cigarettes to Indian lands in the United States, including in New York.  Native

Wholesale Supply does not import or distribute any other brand of cigarette besides Seneca, and

in fact, Native Wholesale Supply holds the Seneca brand trademark.  Each defendant's activity

collectively and individually violates the state and federal laws referenced herein.

## FACTUAL BACKGROUND

14.     Cigarettes are a deadly and costly public health problem.  Smoking causes a host

of crippling and deadly diseases, including cardiovascular disease, coronary heart disease,

emphysema, aortic aneurysms, and a wide range of cancers.  *Report on the Global Tobacco*

*Epidemic* 8 (WHO 2008 Reports).[1]  Each year, tobacco-related illnesses kill approximately

440,000 people in the United States.  CDC, *Smoking-Attributable Mortality, Years of Potential*

*Life Lost, and Productivity Losses--United States, 2000-2004* (2008);[2] Statement of Vice

Admiral Richard H. Carmona, U.S. Surgeon General, *reprinted at* 155 Cong Rec. S6000 (June 3,

2009).  In other words, tobacco kills more people than AIDS, alcohol, drug abuse, car crashes,

murders, suicides, and fires combined.

15.     Children are particularly vulnerable to the dangers of tobacco.  As the Supreme

Court has observed, "tobacco use, particularly among children and adolescents, poses perhaps

the single most significant threat to public health in the United States." *FDA v. Brown &*

*Williamson Tobacco Corp.,* 529 U.S. 120, 161 (2000). "Everyday, approximately 4,000 children

under age 18 experiment with cigarettes for the first time; another 1,500 become regular

---

[1] *Available at* http://www.who.int/tobacco/mpower/en/.
[2] *Available at* http://www.cdc.gov/mmwr/preview/mmwrhtml/mm5745a3.htm.

4

smokers. Of those who become regular smokers, about half eventually die from a disease caused by tobacco use." President's Cancer Panel, "Promoting Healthy Lifestyles," at 64 (2007).[3] In addition, tobacco use may function as a "gateway drug" to the use of illegal substances such as cocaine and heroin. *See, e.g.*, Shenghan Lai et al., *The Association Between Cigarette Smoking and Drug Abuse in the United States*, J. of Addictive Diseases, Dec. 2000, at 11.

16.     Tobacco is also a substantial drain on the public fisc. Tobacco-related disease and death cost $193 billion a year in health-care spending and loss of productivity. *Smoking-Attributable Mortality, Years of Potential Life Lost, and Productivity Losses - United States, 2000-2004, supra.* Smoking costs the Medicaid program an estimated $30 billion annually and the Medicare program an estimated $27 million. CDC, *Sustaining State Programs for Tobacco Control: Data Highlights 2006*, at 17 (Medicaid)[4]; Xiulan Zhang et al., *Cost of Smoking to Medicare Program, 1993*, 20 Health Care Financing Rev. 1-19 (1999) (Medicare).

17.     Given these enormous public-health and economic costs associated with tobacco, the states and federal government have a strong interest in regulating the sale and use of tobacco.

18.     In New York, such regulations take several forms. *See, e.g.*, N.Y. Pub. Health Law § 1399-*ll* (banning delivery of cigarettes to consumers); *see also* N.Y. Tax Law §§ 480 (licensing of wholesalers), 480-a (registration of retail dealers); N.Y. Pub. Health Law §§ 1399-*ll*(3) (labeling), 1399-cc (age-verification); N.Y. Tax Law §§ 483-489 (marketing); N.Y. Exec. Law § 156-c (fire safety standards); *see also, generally,* N.Y. Pub. Health Law §§ 1399-aa-1399-mm.

19.     One such regulation is the taxing of cigarettes possessed for sale within the state. *See* N.Y. Tax Law § 471(1).

---

[3] *Available at* http://deainfo.nci.nih.gov/advisory/pcp/ pcp07rpt/pcp07rpt.pdf.
[4] *Available at*
http://www.cdc.gov/tobacco/data_statistics/state_data/data_highlights/2006/pdfs/dataHighlights06rev.pdf.

20.     New York imposes such a tax because "[i]t is well established that an increase in the price of cigarettes decreases their use and that raising tobacco excise taxes is one of the most effective policies for reducing the use of tobacco." Inst. of Med., *Ending the Tobacco Problem: A Blueprint for the Nation* 80, 182 (2007); Report of the Surgeon General, *How Tobacco Smoke Causes Disease: The Biology and Behavioral Basis for Smoking-Attributable Disease*, at 654 (2010)[5] (noting that "increases in the price of cigarettes through excise taxes [...] are an effective policy intervention to prevent smoking initiation among adolescents and young adults, reduce cigarette consumption, and increase the number of smokers who quit").

21.     It is estimated that a ten-percent increase in prices reduces cigarette demand among adults by three to five percent. Frank J. Chaloupka & Rosalie Liccardo Pecula, *The Impact of Price on Youth Tobacco Use*, National Cancer Institute Monograph No. 14, at 194 (Nov. 2001).[6] Youth response to price increases is even greater; a ten-percent uptick in cigarette prices is estimated to reduce the number of youth smokers by at least six or seven percent. *See* Prevent All Cigarette Trafficking Act of 2007, and the Smuggled Tobacco Prevention Act of 2008: Hearing Before the Subcomm. on Crime, Terrorism, and Homeland Security of the H. Comm. on the Judiciary, 110 Cong. 50, 52 (May 1, 2008) (Statement of Matthew L. Myers, President, Campaign for Tobacco-Free Kids).

22.     Indeed, "[i]t is well established that an increase in the price of cigarettes decreases their use and that raising tobacco excise taxes is one of the most effective policies for reducing the use of tobacco." Inst. of Med., *Ending the Tobacco Problem: A Blueprint for the Nation* 80, 182 (2007). Furthermore, "limit[ing] smuggling and the availability of untaxed tobacco products is essential to maximizing the effectiveness of higher taxes in reducing tobacco use[.]" Report of

---

[5] *Available at* http://www.surgeongeneral.gov/library/tobaccosmoke/report/chapter9.pdf.
[6] *Available at* http://cancercontrol.cancer.gov/TCRB/ monographs/14/m14_12.pdf.

the Surgeon General, *How Tobacco Smoke Causes Disease: The Biology and Behavioral Basis for Smoking-Attributable Disease* (2010), at 654.

23.     The federal government also imposes a cigarette tax, and has legislated other regulations and restrictions pertaining to the sale and advertising of cigarettes. *See, e.g.*, Family Smoking Prevention and Tobacco Control Act of 2009, Pub. L. No. 111-31 (authorizing the federal Food and Drug Administration to regulate the content, marketing and sale of tobacco products); Federal Cigarette Labeling and Advertising Act, 15 U.S.C. §§ 1331-1341.

24.     The two federal statutes of importance in this case, the CCTA and the PACT Act, assist the States with enforcing their own tobacco laws.

## STATUTORY BACKGROUND

### New York Tax Law

25.     New York Tax Law § 471 ("Section 471") imposes an excise tax on all cigarettes possessed for sale within the State.

26.     Section 471(1) requires that tax be paid on "all cigarettes possessed in the state by any person for sale", unless the state lacks the power to tax. The state lacks the power to tax when cigarettes are sold "to qualified Indians for their own use and consumption on their nations' or tribes' qualified reservation", or sold to the United States government or armed forces. N.Y. Tax L. § 471(1).

27.     The cigarette excise tax and prepaid sales tax are advanced and paid by state-licensed cigarette stamping agents. N.Y. Tax Law §§ 471(2) and 1103; N.Y. Comp. Codes R. & R. ("NYCRR") tit. 20, § 74.1(b)(1). A stamping agent must be a person licensed by the Commissioner of Taxation and Finance to purchase tax stamps and to affix tax stamps to packages of cigarettes. N.Y. Tax Law §§ 470(11) and 472(1); 20 NYCRR § 70.2(g)(1).

7

28.     The amount of the cigarette excise tax and prepaid sales tax, the payment of both of which is evidenced by the affixation of a state cigarette tax stamp to each pack, is added to, and collected as a part of, the stamping agent's sale price of the cigarettes to subsequent dealers or the consumer. N.Y. Tax Law §§ 471(2) & (3), and 1103; 20 NYCRR § 74.1(b)(1). Every dealer receiving stamped packages of cigarettes shall, in turn, advance and pay the cigarette taxes as part of such dealer's purchase price and shall pass the taxes through to subsequent purchasers as part of such dealer's sale price. N.Y. Tax Law §§ 471(2) & (3); 20 NYCRR § 74.1(b)(2).

29.     With exceptions not relevant here, all cigarettes possessed for sale in New York must be stamped. Section 471 requires that the tax be prepaid by stamping agents, and that packages of cigarettes possessed for sale within the State bear a tax stamp affixed by such an agent. The tax stamps serve as evidence that the cigarette excise tax has been paid. *See* N.Y. Tax L. §§ 471(2) and 473.

30.     The only entities licensed by the state to receive and possess unstamped cigarettes and to purchase and affix tax stamps to cigarette packages are New York State-licensed stamping agents.  With exceptions not relevant here, any manufacturer or importer shipping unstamped cigarettes in or into New York to anyone other than a state-licensed stamping agent is in violation of Section 471(1). The possession in New York State by any person other than a licensed New York stamping agent or distributor[7] of more than four hundred (400) unstamped cigarettes at any one time is presumptive evidence that the cigarettes are subject to tax. N.Y. Tax Law § 481(2)(a).

---

[7] "Distributor" is defined as any person who imports or causes to be imported into New York any "tobacco product" for sale, and any person within or without the state who is authorized by the Commissioner of Taxation and Finance to make returns and pay the tax on "tobacco products" sold, shipped or delivered by him to any person in the state. N.Y. Tax Law § 470(12). "Tobacco product", in turn, is defined as "[a]ny cigar ... or tobacco, *other than cigarettes*, intended for consumption by smoking, chewing or snuff." *Id.*, § 470(2) (emphasis added). As defendants specifically sell cigarettes, they are not "distributors" under the Tax Law. Because defendants are neither stamping agents nor distributors, they are not exempted from Section 481(2)'s presumption that possession of more than 400 unstamped cigarettes in New York State means that the cigarettes are subject to tax.

31.    At all times relevant to this Complaint, the New York State cigarette excise tax has been $4.35 per pack for a New York state tax stamp, or $43.50 per carton of ten packs.

32.    Notably, under N.Y. Tax Law § 471(1), "[i]t shall be presumed that all cigarettes within the state are subject to tax until the contrary is established, and the burden of proof that any cigarettes are not taxable [t]hereunder shall be upon the person in possession thereof."

33.    Historically, despite having the power to tax on-reservation sales of cigarettes to the public (i.e., to persons who were not members of the tribe on whose reservation the cigarettes were being sold), *see Dep't of Taxation & Fin. of N.Y. v. Milhelm Attea & Bros.*, 512 U.S. 61 (1994), the New York State Department of Taxation and Finance (the Department) had adopted a long-standing policy of forbearance that allowed untaxed cigarettes to be sold from New York State licensed cigarette stamping agents to recognized Indian Nations or tribes and reservation cigarette sellers making retail sales on qualified Indian reservations."

34.    On February 23, 2010, the New York Department of Taxation and Finance ("DTF") revoked its forbearance policy and sought to collect taxes on reservation cigarette sales to non-members of the nation or tribe and to non-Indians.

35.    On June 21, 2010, a bill was signed amending, among other statutes, New York Tax Law §§ 471 and 471-e (collectively, the "amended tax law"). 2010 Sess. Law News of N.Y. Ch. 134, Part D and Ch. 136. The amendment reflected the revocation of the forbearance policy and provides for two alternative systems to ensure that members of an Indian nation or tribe can buy cigarettes tax-free on their own reservation for their own personal use. The amended tax law became effective on September 1, 2010, but was preliminarily enjoined. The injunction was lifted, and implementation of the amended tax law began on June 21, 2011.

36.    The amended tax law continues to require state-licensed stamping agents to prepay the excise and sales taxes and to affix tax stamps on all cigarette packs transported to, and sold for resale on, Indian reservations, *including those cigarettes intended for resale to tax-exempt tribal members*.

37.    Under the 2010 Amendments, DTF issued a "Technical Memorandum" explaining aspects of the new taxation scheme. Under the amended tax law and the corresponding regulations, stamping agents are required to collect both the excise and prepaid sales tax for all cigarettes transported to and sold for resale on an Indian reservation to non-Indians and non-members of the Indian Nation or tribe. Though stamped, cigarettes sold to members of the Indian Nation or tribe *for their own personal use* are tax-exempt.

38.    The amended Sections 471 and 471-e establish two alternative mechanisms by which Indian nations or tribes can make appropriate quantities of tax-exempt cigarettes available to their members for their personal use and consumption. These alternatives are referred to, respectively, as the Indian tax-exemption coupon system, and the prior approval system. Both of these systems contemplate that qualified members may obtain *tax-stamped but tax-free* cigarettes for their personal use. The tax is pre-paid by the stamping agent and a tax stamp is affixed. The tax-stamped cigarettes are rendered tax-free by means of a refund to the licensed stamping agents of the taxes paid. To prevent non-exempt purchasers from obtaining tax-free cigarettes, thus evading the tax, the amended tax law limits the quantity of tax-free cigarettes that may be sold to Indian nations, tribes, and tribal retailers, based on each tribe's "probable demand", which is based on tribal population and the United States averages of cigarette consumption per-capita. *See* Section 471-e(2)(b).

10

39.     The amended tax law was scheduled to take effect September 1, 2010; however, temporary restraining orders were issued and in effect until June 21, 2011, when the last of the restraining orders were vacated by the New York Appellate Division, Fourth Department, in *Seneca Nation of Indians, et al v. State of New York, et al,* Docket # CA 11-01193. *See also Oneida v. Paterson,* 645 F.3d 154 (2d Cir. 2011) (affirming district court orders which denied motions for preliminary injunctions of amended tax law and vacating district court order which preliminarily enjoined the amended tax law).  The amended tax law thus went into effect on June 21, 2011.

40.     Under the amended tax law, any cigarettes transported to qualified reservations for sale must have a cigarette tax stamp affixed to the package.

41.     As a result, cigarettes shipped, delivered, or otherwise transferred to reservations in New York State by manufacturers, distributors, wholesalers, or stamping agents, must be tax stamped, regardless of whether they are to be sold to an Indian nation or tribe or its members or reservation cigarette sellers.

42.     Furthermore, Executive Law § 63(12) empowers the Attorney General to seek injunctive relief, restitution, damages, and costs when any person or business entity has engaged in or otherwise demonstrated repeated fraudulent or illegal acts in the transaction of business.

**The Contraband Cigarette Trafficking Act**

43.     The Contraband Cigarette Trafficking Act focuses on large-scale smuggling by making it a felony punishable by up to five years' imprisonment for any unauthorized person to ship, transport, receive, possess, sell, distribute or purchase more than 10,000 cigarettes that do not bear the tax stamp of the jurisdiction in which they are found.  18 U.S.C. §§ 2341(2), 2342.

44.     The CCTA provides that "[i]t shall be unlawful for any person knowingly to ship, transport, receive, possess, sell, distribute, or purchase contraband cigarettes or contraband smokeless tobacco." 18 U.S.C. § 2342(a). "Contraband cigarettes" are:

> a quantity in excess of 10,000 cigarettes, which bear no evidence of the payment of applicable State or local cigarette taxes in the State or locality where such cigarettes are found, if the State or local government requires a stamp, impression, or other indication to be placed on packages or other containers of cigarettes to evidence payment of cigarette taxes, and which are in the possession of any person.....

18 U.S.C. § 2341(2).

45.     The Second Circuit has recognized four elements to a CCTA violation: "that a party (1) knowingly ship, transport, receive, possess, sell, distribute or purchase (2) more than 10,000 cigarettes (3) that do not bear tax stamps, (4) under circumstances where state or local cigarette tax law requires the cigarettes to bear such stamps." *City of New York v. Golden Feather Smoke Shop, Inc.*, 2009 U.S. Dist. LEXIS 20953, at *33 (E.D.N.Y. March 16, 2009) (citing City of New York v. Milhelm Attea & Bros., Inc., 550 F. Supp. 2d 332, 345 - 46 (E.D.N.Y. 2008)). Accordingly, a CCTA violation occurs when any person engages in transactions with the requisite quantity of cigarettes that do not bear a tax stamp required by law. If a jurisdiction imposes a cigarette tax, and uses stamps to evidence payment of that tax, statutory quantities of unstamped cigarettes present in that jurisdiction are "contraband cigarettes." *See City of New York v. Golden Feather*, 597 F.3d 115, 120-21 (2d Cir. 2010). "[T]he definition of 'contraband cigarettes' depends only upon the absence of indicia of state tax payment and location in a state requiring such indicia." *United States v. Elshenawy*, 801 F.2d 856, 858 (6th Cir. 1986); *see United States v. Approximately Three Million Six Hundred Nine Thousand Eight Hundred Twenty Cigarettes of Assorted Brands*, 2009 WL 773868, at *5 (W.D.

Wash. Mar. 20, 2009) ("Because...state taxes were required on the cigarettes, and state law always required stamps indicating the payment of applicable state taxes, the cigarettes are contraband under 18 U.S.C. § 2341(2)."). CCTA liability is imposed whether or not a person has any statutory duty connected to payment of the tax. "The federal statute makes it a crime for <u>any person</u> knowingly to possess contraband cigarettes....The [CCTA] does not apply only to the person whom the state law requires to pay the stamps [*sic*], but to anyone who possesses more than [1]0,000 cigarettes without the stamp in violation of the state tax law." *United States v. Skoczen*, 405 F.3d 537, 547 (7th Cir. 2005) (emphasis added).

**The PACT Act**

46.     The PACT Act amended its predecessor, the Jenkins Act, 15 U.S.C. §§ 375-378 (1955). The Jenkins Act required any person who sold and shipped cigarettes across a state line or Indian reservation to a buyer other than a licensed distributor (typically a state-licensed tax stamping agent) to report the sale to the buyer's state tobacco tax administrator. Failure to comply with the Jenkins Act's requirements constituted a federal misdemeanor; violators were subject to fines and up to six months' imprisonment. *See former* 15 U.S.C. § 377 (1955).

47.     On June 30, 2010, the PACT Act amended the Jenkins Act by imposing broader and stricter regulations and penalties for interstate sales and shipments of cigarettes. For instance, the PACT Act makes it unlawful to deliver cigarettes and smokeless tobacco through the U.S. Postal Service. 18 U.S.C. § 1716E.

48.     The PACT Act requires any person who "sells, transfers, or ships for profit cigarettes ... in interstate commerce, whereby such cigarettes ... are shipped into a State ... taxing the sale or use of cigarettes" to first register with both the Attorney General of the United States and with the tobacco tax administrator of the State into which such shipment is made. 15

13

U.S.C. § 376(a)(1). The registration statement must include the registrant's "name and trade name (if any), and the address of his principal place of business and of any other place of business, as well as telephone numbers of each place of business, a principal [email] address, any website addresses, and the name, address and telephone number of an agent in the State authorized to accept service on behalf of the person."

49.     In addition to registration with the state tobacco tax administrator, the registrant must file monthly reports with such administrator detailing every shipment of cigarettes made in the previous calendar month into the State, including the name and address of the recipient, the brand and quantity of cigarettes in each shipment, and the address and phone number of the person delivering the shipment to the recipient. 15 U.S.C. § 376(a)(2).

50.     Notably, the PACT Act defines "interstate commerce" broadly to mean "commerce between a State and any place outside the State, commerce *between a State and any Indian country in the State*, or commerce between points in the same State but through any place outside the State *or through any Indian county*." 15 U.S.C. § 375(9) (emphasis added).

51.     Penalties for violations of the PACT Act were increased to up to three years in prison, and civil penalties are recoverable, as well as "any other damages, equitable relief, or injunctive relief ..., including the payment of any unpaid taxes to the appropriate Federal, State, local, or tribal governments." 15 U.S.C. § 377.

52.     The States were also given the power to enforce the Act's provisions. 15 U.S.C. § 378(c).

**New York Tobacco Product Manufacturer Certification Statute**

53.     Under New York law, "[e]very tobacco product manufacturer ... whose cigarettes are sold for consumption in this state shall annually certify under penalty of perjury that, as of

14

the date of such certification, such tobacco product manufacturer: (a) is a participating

manufacturer [in the nationwide 1998 Tobacco Master Settlement Agreement ("MSA")]; or (b)

is in full compliance with subdivision two of section thirteen hundred ninety-nine-pp of the

public health law." N.Y. Tax L. § 480-b(1) ("Section 480-b").  New York Public Health Law §

1399-pp requires that manufacturers not participating in the MSA pay a certain amount into an

escrow fund for each cigarette it sells in the state, roughly equal to the amount it would pay in an

annual settlement payment under the MSA if it were a participating manufacturer.

54.     The annual certification under Section 480-b "shall be executed and delivered to

the commissioner [of Taxation and Finance], the attorney general and any agent who affixes

New York state cigarette tax stamps to cigarettes of such tobacco product manufacturer, no

earlier than the sixteenth day of April and no later than the thirtieth day of April of each year,

and shall be accompanied by a list setting forth each of the cigarette brands of such tobacco

product manufacturer sold for consumption in New York state." N.Y. Tax L. § 480-b(1).

### Actions of the Defendants

55.     Upon information and belief, Grand River Enterprises manufactures the Seneca

brand cigarettes in Ontario, Canada.  In a joint scheme, it then sells, transfers or assigns the

cigarettes to Native Wholesale Supply FOB Canada in Canada.  Title to the cigarettes transfers

from Grand River to Native Wholesale Supply in Canada.

56.     Native Wholesale Supply, holding title for the Grand River cigarettes, then

imports and distributes the cigarettes inside the United States, including in New York.

57.     Since New York's amended tax law took effect, and continuing through to the

present, the defendants have knowingly shipped, transported, transferred, sold and distributed

millions of unstamped and unreported cigarettes to various on-reservation wholesalers in New

York State, such as Seneca Imports, Tonawanda Seneca Nation Distribution, and Tuscarora Nation. Such continuing actions by defendants constitute violations of Sections 471 and 480-b of the New York Tax Law. Defendant Grand River Enterprises has shipped, transported, transferred, sold and distributed cigarettes to Native Wholesale Supply, an entity that is not a New York State licensed stamping agent. These Grand River cigarettes were not tax stamped and were intended for sale in and into the state of New York.

58.     Native Wholesale Supply, having purchased cigarettes directly from Grand River Enterprises and not through a New York State licensed stamping agent as required, received and possessed unstamped and untaxed cigarettes in violation of the CCTA. Native Wholesale Supply then proceeded to sell these untaxed and unstamped cigarettes to reservation cigarette retailers.

59.     Based on a prior course of dealings between Grand River Enterprises and Native Wholesale Supply, defendant Grand River Enterprises knew and in fact intended that its cigarettes sold to Native Wholesale Supply would be sold into New York without going through a New York state licensed stamping agent for pre-payment of the state taxes, and thus would be neither stamped nor taxed as required under New York law.

60.     Large quantities of these contraband Grand River cigarettes have been offered for sale at several reservation cigarette retailers in New York State, including Hank's Smoke Shop in Lewiston, Lake Erie Tobacco in Buck Kill, Onondaga Nation Smoke Shop in Onondaga, OJ's Smokeshop in Steamburg, Steamburg Smokeshop in Cattaraugus, Arrowhawk Smoke Shop in Basom, Rising Native Sisters in Mastic, Turning Stone Casino in Oneida, and Mikey G's in Cattaraugus, among others.

61.     In the eight-month period from November 2011 until July 2012, Native Wholesale Supply paid $85 million to Grand River Enterprises for its cigarettes; Native

Wholesale Supply then sold and distributed some or all of these Grand River cigarettes to on-reservation wholesalers such as Seneca Imports, Tonawanda Seneca Nation Distribution, and Tuscarora Nation. None of the cigarette packages was stamped with the required New York State cigarette excise tax stamp, and none was reported to DTF.

62.     In addition, no New York state-licensed stamping agent has reported any sales of Grand River's Seneca brand cigarettes to DTF.

## November 6, 2012 Purchase by OAG Investigators

63.     On November 6, 2012, investigators from the New York State Office of the Attorney General entered the Poospatuck Reservation in Mastic, New York, for the purpose of purchasing Seneca brand cigarettes.

64.     One of investigators entered the Rising Native Sisters smoke shop located on the reservation at 114 Poospatuck Lane in Mastic. The smoke shop had Grand River's Seneca brand cigarettes for sale, as well as other brands.

65.     There were more than fifty cartons of Seneca brand cigarettes for sale on display shelves in the smoke shop at the time.

66.     While in the smoke shop, the investigator purchased a carton of Seneca brand cigarettes for $28.00.

67.     None of the packs in the carton of Seneca cigarettes which the investigator purchased bore a New York State cigarette tax stamp.

## January 16, 2013 Seizure by BATF Agents

68.     Pursuant to a search and seizure warrant issued on January 15, 2013, agents of the federal Bureau of Alcohol, Tobacco, Firearms and Explosives ("BATF") entered the Skydancer Smoke Shop located at 126 E. Bayard St., Seneca Falls, New York on January 16, 2013 for the

17

purpose of furthering their investigation into the possession and sale of contraband cigarettes at this location.

69.     During this search and seizure, BATF agents discovered 16,230 cartons of Grand River's Seneca brand cigarettes. Each carton contained 10 cigarette packs and each pack contains 20 cigarettes; thus there were over 3 million Grand River cigarettes seized.

**Volume of Cigarettes Distributed and Sold by Defendants**

70.     A pack of cigarettes contains twenty cigarettes, and a carton contains ten packs, or two hundred cigarettes. The state excise tax alone on a pack of cigarettes in New York is $4.35, or $43.50 per carton.

71.     As indicated in Paragraph 61, *supra*, for the period of November 2011 until July 2012, Native Wholesale Supply paid $85 million to Grand River Enterprises for its cigarettes. Even at the retail price of $28.00 per carton, this accounts for 3,035,714 cartons, or 30,357,142 packs of cigarettes, or 607,142,857 cigarettes.

72.     In light of the statistical calculations of the quarterly probable demand for cigarettes by New York State recognized Indian nations or tribes, the quantity of cigarettes shipped to reservation cigarette sellers by defendants is more than could reasonably be consumed by New York State tribal members themselves.

73.     The New York Department of Taxation and Finance has relied on several data sources to estimate the probable demand for cigarettes of New York's Indian nations or tribes for each quarter during specified time periods, including: the U.S. Census adult population (18 years old and greater) for New York State, *Table 2. Annual Estimates of the Resident Population for Selected Age Groups by Sex for the United States: April 1, 2010 to July 1, 2011 (NC-EST2011-02)*; and the Federal excise tax paid cigarette volumes (converted to packs), The U.S.

Department of Treasury, Alcohol and Tobacco Tax and Trade Bureau (Monthly Statistical Release, summed for 2011). DTF calculated that for each quarter during the period of September 1, 2011 to August 31, 2012, the following Indian nations or tribes in New York State would have a total probable demand of 479,100 packs of cigarettes, with the following break down: Cayuga (15,000 packs); Oneida (23,100 packs); Onondaga (45,000 packs); Poospatuck (Unkechauge) (6,000 packs); Seneca (Allegany, Cattaraugus, Oil Springs) (124,500 packs); Shinnecock (30,000 packs); St. Regis Mohawk (215,100 packs); Tonawanda Band of Senecas (4,200 packs); and Tuscarora (16,200 packs); for a total of 479,100 packs of cigarettes per quarter.

74.     DTF made a similar calculation for the September 1, 2012 to August 31, 2013 time period, and determined that the Indian nations or tribes in New York State would have a total probable quarterly demand of 462,000 packs of cigarettes, with the following break down: Cayuga (14,400); Oneida (22,200); Onondaga (43,200); Poospatuck (Unkechauge) (5,700); Seneca (Allegany, Cattaraugus, Oil Springs) (120,000); Shinnecock (29,100); St. Regis Mohawk (207,900); Tonawanda Band of Senecas (3,900); and Tuscarora (15,600).

75.     With Grand River's cigarettes selling at the retail price of $28.00 per carton, and Native Wholesale Supply purchasing at least $85 million worth of Grand River cigarettes in one 8-month period, defendants sold or shipped over 30 million of packs of cigarettes into New York. Thus, defendants were aware, both actually and constructively, that the bulk of the unstamped, untaxed, and unreported cigarettes they sell and distribute to reservation cigarette sellers in New York would be sold to non-Indian consumers in the state.

76.     Thus, defendants' sales of unstamped cigarettes to wholesale dealers and retailers in New York for profit, evidences their intent, understanding and expectation that their cigarettes will be sold to non-tribal consumers in New York State.

77.     Moreover, as recently as July 2012, defendant Grand River filed a certification with the New York Department of Homeland Security and Emergency Services, Office of Fire Prevention and Control, certifying that its Seneca brand cigarettes are in compliance with the New York Cigarette Fire Safety Act, N.Y. Exec. L. § 156-c. Pursuant to that Act, fire-safe certifications are required to be filed for all cigarette brands and brand styles offered for sale to consumers in New York State. Grand River's New York State fire-safe certification is further evidence that it fully knew, expected, and intended that the Seneca brand cigarettes it manufactures and sells to defendant Native Wholesale Supply, which then imports and distributes them into New York, would be sold in New York State to New York consumers.

78.     Defendants' transfers and shipments of cigarettes take place between various Indian lands in New York, as well as between locations both inside and outside New York State. As a result, they are in "interstate commerce" as defined in the PACT Act. *See* 15 U.S.C. § 375(9).

79.     Despite shipping hundreds of millions of cigarettes in interstate commerce into New York, neither Grand River nor Native Wholesale Supply has registered with DTF pursuant to the PACT Act.

80.     Nor has either Grand River or Native Wholesale Supply filed any reports whatsoever with DTF pursuant to PACT.

81.     Moreover, Grand River and Native Wholesale Supply are "tobacco product manufacturers" within the meaning of New York Tax Law § 480-b, the above-mentioned

certification statute. That section incorporates New York Public Health Law § 1399-oo's

definition of tobacco product manufacturer to include any entity that directly (and not

exclusively through an affiliate):

> (a) manufactures cigarettes anywhere that such manufacturer
> intends to be sold in the United States, including cigarettes
> intended to be sold in the United States through an importer ...;
>
> (b) is the first purchaser anywhere for resale in the United States of
> cigarettes manufactured anywhere that the manufacturer does not
> intend to be sold in the United States; or
>
> (c) becomes a successor of an entity described in paragraph (a) or
> (b) of this subdivision.

N.Y. Public Health L. § 1399-oo(9).

82.    Grand River manufacturers Seneca brand cigarettes which, as evidenced by its

filing of a fire-safe certification for the brand, it intends be sold in the United States. As such,

Grand River is a tobacco product manufacturer within the meaning of the certification statute.

83.    Though it could not do so credibly, if Grand River were to claim that it did not

intend that Seneca brand cigarettes be sold in the United States, then Native Wholesale Supply

would nonetheless incur the certification obligation as a tobacco product manufacturer under the

statute because the latter would be the first purchaser anywhere for resale in the United States of

cigarettes which the manufacturer (Grand River) did not intend to be sold in the United States.

N.Y. Public Health L. § 1399-oo(9)(b).

84.    Neither Grand River nor Native Wholesale Supply has, as required by Section

480-b, ever certified under penalty of perjury--to the Commissioner of DTF, the Attorney

General, or to any New York-licensed stamping agent--that it is either a participating

manufacturer under the MSA or is in full compliance with New York Public Health Law § 1399-

pp(2) by having deposited the required amount of escrow per cigarette sold in the state. Nor has either Grand River or Native Wholesale Supply submitted to any of these officials the list setting forth each of the cigarette brands they sell for consumption in New York state, as required by Section 480-b(1).

### FIRST CLAIM FOR RELIEF

### VIOLATION OF THE CONTRABAND CIGARETTE TRAFFICKING ACT, 18 U.S.C. §§ 2341-2346

85.    Plaintiff incorporates by reference all the allegations contained in the previous paragraphs as though fully set forth herein.

86.    The CCTA requires that packs of cigarettes to be sold in New York State bear a state tax stamp to evidence payment of the excise tax.

87.    Defendants have violated the CCTA by knowingly shipping, transporting, receiving, possessing, selling, and distributing contraband cigarettes within New York State.

88.    Defendant Grand River possessed, sold and shipped cigarettes to Native Wholesale Supply, an entity that is not a New York State licensed stamping agent. These untaxed and unstamped Grand River cigarettes were to be sold in and into the state of New York by Native Wholesale Supply. Native Wholesale Supply received, possessed and distributed untaxed and unstamped Grand River cigarettes in violation of the CCTA. Native Wholesale Supply then proceeded to sell these untaxed and unstamped cigarettes to reservation cigarette retailers.

89.    Based on a prior course of dealings between Grand River Enterprises and Native Wholesale Supply, defendant Grand River Enterprises knew and in fact intended that cigarettes sold to defendant Native Wholesale Supply would be sold into New York without going through

22

a New York state licensed stamping agent, and thus would be neither stamped nor taxed as required by New York law.

90.     As detailed in paragraphs 1 through 84 above, defendants Grand River and Native Wholesale Supply have sold and shipped, and continue to sell and ship, hundreds of millions of untaxed and unstamped cigarettes in and into the state of New York far in excess of the 10,000-cigarette limit imposed by the CCTA.

WHEREFORE, plaintiff prays for the relief as hereinafter set forth.

## SECOND CLAIM FOR RELIEF

## VIOLATION OF THE PACT ACT, 15 U.S.C. §§ 375-378

91.     Plaintiff incorporates by reference all the allegations contained in the previous paragraphs as though fully set forth herein.

92.     Defendants' sales, transfers and shipments of cigarettes for profit to reservation sellers in New York State violate the PACT Act.

93.     Defendants sell, transfer, and otherwise ship such cigarettes to reservation cigarette sellers in New York State for profit. Such sales, transfers, and shipments have been made between the Province of Ontario and the State of New York, between New York and Indian country within New York, and/or between two points in New York through Indian country. As a result, defendants' sales, transfers and shipments of cigarettes are considered to be made in "interstate commerce" under the PACT Act. *See* 15 U.S.C. § 375(9).

94.     Specifically, defendant Grand River sold, transferred, and shipped cigarettes to defendant Native Wholesale Supply that were not tax stamped and were to be sold in and into the state of New York by Native Wholesale Supply. Based on prior dealings between Grand River Enterprises and Native Wholesale Supply, defendant Grand River Enterprises knew and in fact

intended that cigarettes sold to defendant Native Wholesale Supply would be sold into New York, that they would not go through a New York state licensed stamping agent, and thus would be neither stamped nor taxed per New York law.

95.    Native Wholesale Supply, in its joint venture with Grand River and/or its independent capacity, having purchased cigarettes from Grand River Enterprises, received and possessed cigarettes that were not tax stamped in violation of the CCTA. Native Wholesale Supply then proceeded to sell these untaxed cigarettes to reservation cigarette retailers in New York.

96.    Accordingly, defendants were required to submit certain filings to the tobacco tax administrator for the State of New York, *i.e.*, the New York Department of Taxation and Finance.

97.    Neither Grand River Enterprises nor Native Wholesale Supply submitted to DTF any of the filings required under the PACT Act for any of their sales, transfers and/or shipments of cigarettes to reservation retailers in New York State.

98.    Specifically, each defendant failed to file with DTF "a statement setting forth his name and trade name (if any), and the address of his principal place of business and of any other place of business, as well as telephone numbers for each place of business, a principal electronic mail address, any website addresses, and the name, address, and telephone number of an agent in the State authorized to accept service on behalf of the person." 15 U.S.C. § 376(a)(1).

99.    In addition, each defendant failed to file with DTF "a memorandum or a copy of the invoice covering each and every shipment of cigarettes or smokeless tobacco made during the previous calendar month into such State; the memorandum or invoice in each case to include the name and address of the person to whom the shipment was made, the brand, the quantity

24

thereof, and the name, address, and phone number of the person delivering the shipment to the recipient on behalf of the delivery seller, with all invoice or memoranda information relating to specific customers to be organized by city or town and by zip code[.]" 15 U.S.C. § 376(a)(2).

WHEREFORE, plaintiff prays for the relief as hereinafter set forth.

### THIRD CLAIM FOR RELIEF

### VIOLATION OF N.Y. TAX LAW §§ 471 and 471-e

100.    Plaintiff incorporates by reference all the allegations contained in the previous paragraphs as though fully set forth herein.

101.    Defendants have violated, and continue to violate, New York Tax Law §§ 471 and 471-e by possessing cigarettes for sale in New York State, namely Seneca brand cigarettes manufactured by Grand River and imported and distributed by Native Wholesale Supply, upon which no state excise tax has been paid, and the packages of which have no tax stamps affixed.

102.    Each defendant likewise violates Section 471's implementing regulations discussed above by failing to ship its unstamped cigarettes from outside New York directly to a New York-licensed stamping agent so that the excise tax can be paid and tax stamps properly affixed.

WHEREFORE, plaintiff prays for the relief as hereinafter set forth.

### FOURTH CLAIM FOR RELIEF

### VIOLATION OF NEW YORK TAX LAW § 480-b

103.    Plaintiff incorporates by reference all the allegations contained in the previous paragraphs as though fully set forth herein.

104. Grand River and/or Native Wholesale Supply are "tobacco product manufacturers" as that term is defined in New York Public Health Law § 1399-oo(9) and referenced in New York Tax Law § 480-b.

105. As explained in detail above, Section 480-b requires a tobacco product manufacturer to file annual certifications with the Commissioner of DTF, the state Attorney General, and any state-licensed cigarette stamping agent who affixes state cigarette tax stamps to the manufacturer's cigarettes, accompanied by a list of the manufacturer's cigarette brands sold for consumption in New York State.

106. Despite having sold millions of cigarettes in New York, neither Grand River nor Native Wholesale Supply has filed any such certifications in accordance with New York Tax Law Section 480-b. Nor has either entity provided the requisite list of brands they sell for consumption in New York State.

107. Grand River and Native Wholesale Supply are therefore jointly and independently in continuing violation of Section 480-b.

WHEREFORE, plaintiff prays for the relief as hereinafter set forth.

## PRAYER FOR RELIEF

WHEREFORE, the Attorney General respectfully prays that the Court issue and order and judgment:

a. Permanently enjoining defendants from violating the CCTA by receiving, possessing or purchasing contraband cigarettes, or shipping, transporting,

selling, or distributing contraband cigarettes to New York residents or other persons in New York not authorized to possess unstamped cigarettes, *i.e.*, any person other than a New York state-licensed stamping agent.

b.    Authorizing the Attorney General to seize, forfeit, and otherwise destroy any unstamped cigarettes that are (i) manufactured by Grand River, (ii) found in New York, and (iii) are being delivered to, or otherwise in the possession of, a person not authorized by the State of New York to possess unstamped cigarettes.

c.    Directing defendants to comply with the registration and reporting requirements of the PACT Act, 15 U.S.C. § 376.

d.    Directing the defendants to comply with the certification requirements mandated by New York Tax Law § 480-b, for the years 2005 through the present. *See* N.Y. Exec. L. § 63(12).

e.    Directing the defendants to pay to plaintiff civil penalties and money damages as authorized by the CCTA and the PACT Act. *See* 18 U.S.C. § 2346(b), 15 U.S.C. §§ 377(b), and 15 U.S.C. § 378(c)(1)(A).

f.    Directing the defendants to pay to plaintiff the Attorney General's fees and costs incurred in bringing this action, and any other injunctive or other equitable relief this Court deems proper pursuant to the PACT Act. 15 U.S.C. § 378(c)(1)(A).

g.    Granting all such other and further relief as this Court deems appropriate.

27

Dated:   March 1, 2013          ERIC SCHNEIDERMAN
         New York, New York      Attorney General of the State of New York

                                 By: _____

                                 Dana Biberman (DB 9878)
                                   Assistant Attorney General
                                   Chief, Tobacco Compliance Bureau
                                 Marc Konowitz (MK 5281)
                                 Sarah Evans (SE 5971)
                                 Assistant Attorneys General
                                 120 Broadway, 3rd Floor
                                 New York, New York 10271
                                 Telephone: (212) 416-6343
                                 Facsimile: (212) 416-8877