UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

STATE OF NEW YORK,

                              Plaintiff,

        v.

GRAND RIVER ENTERPRISES SIX NATIONS, LTD.,
NATIVE WHOLESALE SUPPLY COMPANY, INC.,

                              Defendants.
_____

                                        **REPORT**
                                         **and**
                                    **RECOMMENDATION**
                                    -----------------------------
                                        **DECISION**
                                         **and**
                                        **ORDER**

                                      **14-CV-910A(F)**

APPEARANCES:        LETITIA A. JAMES
                    New York State Attorney General
                    Attorney for the Plaintiff
                    BRANT B. CAMPBELL,
                    CHRISTOPHER K. LEUNG,
                    JOHN P. OLESKE,
                    Assistant Attorneys General, of Counsel
                    120 Broadway
                    New York, New York  10271

                    FRIEDMAN KAPLAN SEILER & ADELMAN LLP
                    Attorneys for Defendant Grand River Enterprises
                    ERIC O. CORNGOLD,
                    JEFFREY R. WANG, of Counsel
                    7 Times Square, 27th Floor
                    New York, New York  10036

                    WEBSTER SZANYI, LLP
                    Attorneys for Defendant Native Wholesale Supply
                    NELSON PEREL,
                    KEVIN A. SZANYI, of Counsel
                    1400 Liberty Building
                    Buffalo, New York    14202

## JURISDICTION

    This action was referred to the undersigned for all pretrial matters by order of

Hon. Richard J. Arcara filed December 9, 2019 (Dkt. 157).[1]  It is presently before the

_____

[1]  The matter was initially referred by Judge Arcara to the undersigned on January 16, 2015 (Dkt. 83).

court on Plaintiff's motion for leave to file a Third Amended and Supplemental

Complaint, filed April 12, 2019 (Dkt. 128), Defendants' joint motion to compel, filed

August 26, 2019 (Dkt. 136), and Plaintiff's motions to strike Defendants' Thirteenth

Affirmative Defense and compel, filed September 25, 2019 (Dkts. 146, 148).[2]

## BACKGROUND and FACTS[3]

This action, commenced March 4, 2013, is based on Plaintiff's allegations that

Defendants have, since 2011, been engaged in a joint venture to manufacture, ship into

New York State ("New York State" or "the State"), possess and distribute for sale and

sell within the State, Seneca brand tobacco cigarettes for which the State's excise tax

imposed by New York State law, on such cigarettes shipped into New York State or

possessed within the State for sale, was not paid.  Defendant Grand River Enterprises

Six Nations, Ltd. is an Indian corporation which manufactures the cigarettes at issue in

this case in Ontario, Canada ("GRE"); Defendant Native Wholesale Supply Company,

Inc. is an Indian corporation operating on the Seneca Nation of Indians reservation but

unlike the Ontario reservation, which is owned by an Indian tribe, where GRE conducts

its business, is an Indian tribe recognized by the U.S. ("federal") government, located

within this district ("NWS") which resells and distributes the cigarettes NWS purchased

from GRE, imported from Ontario, to other wholesalers and retailers on Indian

---

[2]  Plaintiff's Motion to Amend and Supplement, Defendants' Motion to Compel and Plaintiff's Motion to Compel are non-dispositive.  *See Nash v. King,* 2015 WL 1461291, at *1 n. 1 (W.D.N.Y. Mar. 30, 2015) (noting motion to file amended complaint is non-dispositive); *Johnson v. Ledwin*, 2008 WL 4147251, at *1 n. 1 (W.D.N.Y. Sept. 2, 2008) (noting motion to compel is non-dispositive).  Plaintiff's Motion to Strike, if granted, is dispositive.  *See United States v. Green*, 33 F.Supp.2d 203, 209 (W.D.N.Y. 1998) (adopting report and recommendation treating as dispositive plaintiff's motion to strike affirmative defenses and counterclaims).
[3]  Taken from the pleadings and papers filed in this case and related docket entries.

reservations located elsewhere within New York State.  Defendants' manufacture, shipment, possession, and sales of Defendants' Seneca brand cigarettes are alleged by Plaintiff to be in violation of the federal Contraband Cigarette Trafficking Act, 18 U.S.C. §§ 2341-2346 ("the CCTA") ("Plaintiff's CCTA claim(s)"), and, the Prevent All Cigarette Trafficking Act, 15 U.S.C. §§ 375-378 ("the PACT Act" or "the Act") ("Plaintiff's PACT Act claim(s)") (together "Plaintiff's federal law claims").  As applicable to this action, the CCTA declares any quantity in excess of 10,000 tobacco cigarettes without evidence of payment of a state or locally required tax, *i.e.* prepaid tax stamps issued by the state or municipal taxing jurisdiction where such cigarettes may be "found," are "contraband" and, as such, subject to seizure and forfeiture by law enforcement agencies, and prohibits shipment, transportation, receipt, possession, sale, distribution or purchase of such cigarettes.  18 U.S.C. §§ 2341(2), 2342(a), 2344(c).  The CCTA also requires any person who ships, sells, or distributes in excess of 10,000 cigarettes in a single transaction within a state to maintain business records regarding the shipment, receipt, sale and distribution of such cigarettes in accordance with regulations promulgated by the state's attorney general and submit monthly reports to the attorney general pertaining to the person's inventory, receipt and distribution of the cigarettes.  18 U.S.C. § 2343(a), (b).  A knowing violation of § 2342(a) is a five-year federal felony.  18 U.S.C. § 2344(a).  Similar to the CCTA's filing requirement, the PACT Act also requires filing with the state attorney general and the state's tax administrator, a monthly statement providing the identity of any person engaged in the sale, transfer, or shipment for profit of cigarettes, in interstate commerce as defined by the Act, into the state providing information regarding the brand, quantity, and recipient of such sales, transfers or

shipments.

Plaintiff also alleges Defendants, through the Defendants' alleged joint venture, during the period 2011 through 2014, manufactured and shipped to New York State over 1.5 billion untaxed cigarettes as contraband, in violation of New York Tax Law §§ 471, 480-b, and 1814 ("N.Y. State Tax Laws") ("Plaintiff's state law claims" or "state tax law claims").  New York Tax Law §§ 470[11], 471[2], 472[1] provide for the licensing by the State of cigarette tax agents who are authorized and required to purchase excise tax certificates from the State to be affixed to all cigarette packs sold within the State. Plaintiff seeks civil penalties, and damages for Defendants' violations of the CCTA, the PACT Act and N.Y. State Tax Laws, along with injunctive relief to prevent Defendants' further violations of the CCTA as provided by 18 U.S.C. § 2346(b)(2), and the PACT Act, 15 U.S.C. § 377(b)(1) & (b)(2).

As noted, pending before the court are Plaintiff's motion for leave to file a Third Amended and Supplemental Complaint pursuant to Fed.R.Civ.P. 15(a) & (d) ("Rule 15(a), (d)"), ("Plaintiff's Motion to Amend and Supplement"); Defendants' joint motion to compel, pursuant to Fed.R.Civ.P. 37(a)(3) ("Rule 37(a)(3)"), Plaintiff's responses to Defendants' First Interrogatories and First Set of Production Requests directed to Defendant's Thirteenth Affirmative Defense ("Defendants' Discovery Requests") asserting Plaintiff's violation of the dormant Commerce Clause of the U.S. Constitution ("the dormant Commerce Clause" or "the Commerce Clause"), Dkt. 122 ¶¶ at 26 at 23; Dkt. 124 ¶¶ 164-166 at 18-19, "and/or" the Fourteenth Amendment's Equal Protection Clause ("the Equal Protection Clause") resulting from Plaintiff's "policy," Dkt. 122 ¶ 27; Dkt. 124 ¶ 165, of selective enforcement of N.Y. State's Tax Laws applicable and

4

directed to shipments of untaxed cigarettes into New York State from Indian reservations located in other states or, as here, from Ontario, as a defense which Defendants assert "may bar" this action ("Defendants' Motion to Compel"); Plaintiff's cross-motion to strike Defendants' Thirteenth Affirmative Defense, pursuant to Rule 12(f), thus barring for lack of relevancy Defendants' Discovery Requests ("Plaintiff's Motion to Strike"); and Plaintiff's motion to compel Defendants' responses to Plaintiff's First Set of Interrogatories and Requests for Document Production, pursuant to Rule 37(a)(3)(B) and Plaintiff's Requests for Admissions pursuant to Fed.R.Civ.P. 36(a)(6), directed to the existence of a joint venture between Defendants as alleged by Plaintiff in the Second Amended Complaint ("Plaintiff's Motion to Compel") ("the pending motions").

In compliance with Judge Arcara's March 21, 2019 direction (Dkt. 121), denying the parties' joint motion to stay discovery (Dkt. 117), to proceed with limited discovery in this case pending a decision of the Second Circuit in the case of *State of New York v. Mountain Tobacco Company,* 2016 WL 3962992 (E.D.N.Y. July 21, 2016) (Seybert, J.) ("*Mountain Tobacco* I") which, according to the parties, presented issues regarding the applicability and enforceability of the CCTA and PACT Act, against an out-of-state (Washington State) based Indian cigarette manufacturer, defendant Mountain Tobacco Company, d/b/a King Mountain Tobacco Company, Inc., shipping untaxed cigarettes to locations within New York State, similar to those raised in the instant action,[4] a conference with the parties was conducted by the undersigned on April 30, 2019 (Dkt.

---

[4] Judge Seybert's decision in *Mountain Tobacco* I does not indicate defendant asserted plaintiff had violated the dormant Commerce Clause, an issue first raised, apparently, by defendant before the Second Circuit on appeal and fully addressed in the court's recent, November 7, 2019, decision in *State of New York v. Mountain Tobacco Company,* 942 F.3d 536 (2d Cir. 2019) ("*Mountain Tobacco* II").

133) at which each party, acting at the court's request in order to comply with Judge Arcara's direction to proceed with limited discovery, designated a single issue in the case upon which that party wished to initiate discovery limited to such issue pending the Second Circuit's decision on the appeal of Judge Seybert's decision in *Mountain Tobacco* I.  In *Mountain Tobacco* I, Judge Seybert held, *inter alia*, that as an Indian owned corporation operating in Indian Country, *i.e.*, on the Yakama Indian National Reservation located in Washington State, as defined by the PACT Act, defendant Mountain Tobacco Company was exempt from suit on plaintiff's CCTA claim in that case as provided in 18 U.S.C. § 2346(b)(1), which extends exemption from suits to enforce the CCTA by state attorneys generals, to Indians on reservations of Indian tribes recognized by the federal government under 18 U.S.C. § 1151 ("§ 1151"), ("§ 2346(b)(1)"),[5] and that defendant's shipment from an Indian reservation in Washington State of untaxed cigarettes to an Indian reservation within New York State did not constitute interstate commerce within the PACT Act's definition of such commerce as defined in 15 U.S.C. § 375(9)(A).

In accordance with Judge Arcara's direction and the undersigned's request, Plaintiff designated, as its subject for limited discovery, the question of whether Defendants had engaged in a joint venture during the period 2011-2014, as Plaintiff alleged in the Second Amended Complaint, as the subject for Plaintiff's limited discovery requests; Defendants selected the issue of the factual basis for Defendants' Thirteenth Affirmative Defense that Plaintiff's claims "<u>may</u> be barred by the dormant

---

[5]  Defendant NWS has not, since *Mountain Tobacco* II was decided, despite operating on an Indian (Seneca Nation) reservation recognized pursuant to § 1151, moved to dismiss Plaintiff's CCTA claim against it based on § 2346(b)(1).

Commerce Clause and/or Equal Protection Clause of the United States Constitution." [6]
*See* NWS Answer Dkt. 122 ¶ 26 at 23; GRE Answer Dkt. 124 ¶ 164 at 18 ("the
Thirteenth Affirmative Defense," "Defendants' affirmative defense," or "the affirmative
defense").   Particularly, in support of the affirmative defense, Defendants alleged that
Plaintiff had "promulgated a <u>policy</u> of enforcement that specifically discriminated against
transactions involving [the shipment and sale of untaxed cigarettes from][7] one
reservation located outside the State of New York . . . in favor of transactions involving
two reservations located within the outer boundaries of the State of New York."  Dkt.
122 ¶ 27 at 23; Dkt. 124 ¶ 165 at 18.  As a result of such discriminatory enforcement
policy, according to Defendants, "the State [Plaintiff] improperly targeted commerce
from outside the state," in violation of the dormant Commerce Clause.  Dkt. 122 ¶ 28 at
23; Dkt. 124 ¶ 166 at 19.  In further support of the affirmative defense, Defendants'
allegations included a quotation of text from a July 2011 internal, e-mail, communication
among tax enforcement personnel of the Plaintiff's New York State Department of
Taxation and Finance ("the T & F Department") providing guidance to its agents for
potential seizures of contraband cigarettes, under several different possible factual
scenarios involving Native Americans, which Defendants assert is evidence of
discriminatory enforcement of the applicable New York tax laws, and discussing the T &
F Department's policy regarding seizures of untaxed Native American cigarettes in New
York State, applicable to Indian manufactured untaxed cigarettes shipped into New York
State from an out-of-state Indian reservation where the cigarettes, like those in this
case, were alleged to have been manufactured and from where they were shipped into

---

[6]  Unless otherwise indicated all underlining added.
[7]  Unless otherwise indicated all bracketed material added.

the State.  *See* Dkt. 138 ¶ 18; Exh. E.[8]  The topics selected for limited discovery by the

parties, in compliance with Judge Arcara's direction, were confirmed by the

undersigned's Order filed May 1, 2019, Dkt. 134 ("the Order"); thereafter, and in

accordance with the Order, the parties exchanged discovery demands on May 13, 2019

which are the present basis for Defendants' Motion to Compel and Plaintiff's Motion to

Compel and Strike the Affirmative Defense.

Specifically, as part of Defendants' Discovery Requests, nine Document

Requests were directed to Plaintiff's "decision-making and practices concerning . . .

<u>enforcement</u> <u>actions</u> governing . . . untaxed cigarettes . . . in Indian country," Dkt. 138

¶¶ 1-9; Defendants' eight First Interrogatories were similarly directed to the same

subject.  *See* Dkt. 138-1 at 17-18.  Following a meet and confer conference on May 22,

2019, at which Plaintiff sought to obtain Defendants' clarification of the terms

"enforcement action" and "enforcement of laws" as these terms appear in Defendants'

First Interrogatories and First Set of Document Production Requests, Dkt. 147 at 11-12

(referencing Defendants' First Interrogatories and First Set of Requests for Production,

Dkt. 138-1 ¶¶ 1-3 at 5; ¶¶ 1-3 at 17-18) and not receiving the requested clarification

from Defendants' prior to June 12, 2019, the due date for Plaintiff's responses to

Defendants' Discovery Requests as required by Fed.R.Civ.P. 33(b)(2) and 34(b)(2)

("Rule(s) 33(b)(2) and 34(b)(2)"), Dkt. 147 at 12, Plaintiff served, on June 12, 2019, Dkt.

147 at 12, its responses to Defendants' Discovery Requests including objections that

Defendants' requests were vague, unduly burdensome, Dkt. 138-2 ¶ 1, sought

information, for the period January 1, 2008 through June 12, 2019, not relevant because

---

[8]  This exhibit was not attached to Defendants' answers; it is attached as an exhibit to Defendants'
attorney's Declaration in support of Defendants' Motion to Compel (Dkt. 138).

Defendants' affirmative defense failed to plausibly state a legally cognizable affirmative

defense, Dkt. 138-2 ¶ 2, to which Defendants' Discovery Requests could relate in

accordance with the requirements of Fed.R.Civ.P. 26(b)(1) ("Rule 26(b)(1)"), limiting the

scope of discovery to matters relevant to a claim or defense, and, further, requested

information protected by several privileges – attorney-client, law enforcement, common

interest, deliberative process – and work product protection.  Dkt. 138-2 ¶ 3.

During a further meet and confer teleconference call by the parties on July 26,

2019, Plaintiff indicated to Defendants that unless Defendants selected a different

subject for the limited discovery directed by the court, or otherwise narrowed

Defendants' requests to issues in the case deemed relevant by Plaintiff, Plaintiff

intended to move to strike the Thirteenth Affirmative Defense thereby making it

unnecessary (based on Plaintiff's assumption the motion to strike would be granted) for

Plaintiff to respond to Defendants' pending Discovery Requests on the ground such

requests sought irrelevant material within the scope of discovery permitted in

accordance with Rule 26(b)(1).  Dkt. 147 at 13.  Following the July 26, 2019 conference,

at a subsequent meet and confer conference between the parties on August 5, 2019,

Defendants informed Plaintiff that Defendants declined to accept Plaintiff's requested

modification of Defendants' selected discovery subject, *viz*, Defendants' Thirteenth

Affirmative Defense, Dkt. 147 at 13, and that Defendants intended to pursue a motion to

compel directed to Plaintiff's objections to Defendants' Discovery Requests in support of

Defendants' affirmative defense.  *Id.*  As indicated, Defendants' Motion to Compel was

subsequently filed on August 26, 2019 (Dkt. 136); Plaintiff's Motion Compel and to

Strike was filed September 25, 2019 (Dkt. 146).  Briefing on the parties' motions was

completed on October 30, 2019 with the filing of Plaintiff's Omnibus Memorandum of

Law in Support of Plaintiff's Motion to Compel and Cross-Motion to Strike (Dkt. 153).

Following the Second Circuit's decision in the *Mountain Tobacco* I case, issued

November 7, 2019, *see Mountain Tobacco Co.*, 942 F.3d 536, and several letter

reports, filed December 4, 5, 6, 19 and 23, 2019, on the status of this case submitted to

Judge Arcara by the parties (*see* Dkt. Nos. 154-159), as Judge Arcara had previously

directed, by order of Judge Arcara, filed December 9, 2019 (Dkt. 157), the matter was

re-referred to the undersigned for all pretrial matters. *See* Dkt. 83. Based on Judge

Arcara's renewed order of referral the undersigned therefore finds the action should

proceed, without the restriction to conduct limited discovery as had been directed by

Judge Arcara. As, however, resolution of the pending motions will affect the scope of

further discovery in this matter the court addresses each of the pending motions.


**DISCUSSION**

1.    <u>Plaintiff's Motion to Amend and Supplement</u>.

A motion for leave to file an amended and supplemental complaint, pursuant to

Fed.R.Civ.P. 15(a)(2) and 15(d), should be freely given, absent undue delay, bad faith,

dilatory tactics, undue prejudice to the opposing party or futility. *See* Fed.R.Civ.P.

15(a)(2); *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Quarantino v. Tiffany & Co.*, 71

F.3d 58, 66 (2d Cir. 1995) (allowing proposed supplemental facts "connected" to original

pleading). Here, Plaintiff's proposed amendments seek elaboration of Plaintiff's federal

and state law claims asserting Defendants, through the joint venture as alleged by

Plaintiff, manufactured, imported, possessed and sold contraband cigarettes within New

York State in violation of the CCTA, the PACT Act, and the applicable N.Y. State Tax

Laws as pleaded by Plaintiff in the Second Amended Complaint.  *See* Dkt. 128-1 at 4-8

(summarizing Plaintiff's proposed amendments and supplemental facts directed to

these allegations as they now appear in the Second Amended Complaint).  For

example, Plaintiff seeks to add allegations intended to establish actions taken by

Defendants GRE and NWS for the purpose of promoting the sale of untaxed cigarettes

manufactured by GRE and shipped into New York State by GRE to be re-sold by NWS

to other Indian wholesalers and retailers located within New York State.  *See* Dkt. 128-4

at 23-25.  Plaintiff's only additional claim, not presently included in the Second

Amended Complaint, which Plaintiff proposes to assert as an amended pleading, seeks

to allege Defendants' violation of N.Y. Public Health Law § 1399-ll ("N.Y. Pub. Health

Law § 1399-ll"), which prohibits the commercial sale of cigarettes within New York State

to persons not otherwise licensed, registered, or authorized to possess such cigarettes,

*viz.*, a licensed cigarette tax agent, which licensed agent status Plaintiff alleges neither

Defendant is.  Defendants oppose Plaintiff's Motion to Amend and Supplement arguing

primarily that Plaintiff's Motion to Amend and Supplement should be denied because of

Plaintiff's delay in bringing the motion beyond the 20-day period as required by Rule

12(f), in seeking to include Plaintiff's proposed additional allegations of facts and its

proposed state law claim alleging Defendants' violation of N.Y. Pub. Health Law § 1399-

ll.  *See* Dkt. 132 at 7-10 (contending Plaintiff's proposed allegations are intended to

address deficiencies in Plaintiff's joint venture theory to further establish the legal and

factual basis for Defendant GRE's vicarious liability under Plaintiff's CCTA, PACT Act

and State tax law claims, as Plaintiff asserted, and are not mere "variations on the same

theme," Dkt. 132 at 4, as Plaintiff argues (quoting Dkt. 128 at 2), alleging Defendants'

liability under the applicable federal and New York laws presently asserted in the

Second Amended Complaint).

Defendants also contend Plaintiff's motion should be denied because Plaintiff is

engaged in improper strategic pleading in regard to Plaintiff's proposed § 1399-ll claims

in that Plaintiff should have included such state-law analog to the Plaintiff's CCTA claim

when commencing this action in 2014.  Dkt. 132 at 8.  In particular, Defendants assert

Plaintiff only then (in April 2019 when Plaintiff moved to amend and supplement, well-

prior to the Second Circuit's November 2019 ruling in *Mountain Tobacco* II), seeks to

add such claim as a "hedge" against what Defendants then asserted was a likely

Second Circuit affirmance of Judge Seybert's decision in *Mountain Tobacco* I

dismissing plaintiff's federal, *viz.*, the CCTA and PACT Act, claims involving shipments

of untaxed cigarettes into New York State from defendant's reservation in Washington

State to a reservation in New York State in that case.  Dkt. 132 at 8-9.  However, as

noted above, *see* Background and Facts*, supra*, at 5 n. 4, the Second Circuit has, since

the pending motions were filed, on November 7, 2019, sustained the plaintiff's PACT

Act claim, contrary to Judge Seybert's decision, as asserted in *Mountain Tobacco* I,

similar to that alleged by Plaintiff in this action, *see Mountain Tobacco Company*, 942

F.3d at 545-48, while affirming Judge Seybert's holding that as an Indian manufacturer

of cigarettes on a reservation in Indian Country, defendant was exempt from suit

brought by a state attorney general, *i.e.*, the New York State Attorney General, on

behalf of plaintiff  New York State in *Mountain Tobacco* I, as provided in § 2346(b)(1),

which, as noted, *see* Discussion*, supra*, at 6, exempts "an Indian in Indian Country"

from CCTA suits brought by a state attorney general.[9]   Moreover, Plaintiff recently, in

September 2018, see Dkt. 135-2 at 2; Dkt. 135-3 at 1-3; Dkt. 135-4 at 1-22, as a result

of an inter-governmental request for assistance to the Ontario Ministry of Finance

("OMF"), learned that GRE invoices to NWS for NWS's purchase of GRE manufactured,

but untaxed, Seneca brand cigarettes shipped to NWS by GRE, beginning at least in

June 2013, reflect F.O.B. points, and thus a transfer of title to such cigarettes, for the

imported untaxed Seneca brand cigarettes, not at GRE's shipping dock in Ontario as

Plaintiff previously believed and had alleged in the Second Amended Complaint, *see*

Dkt. 76 ¶ 55 (alleging GRE transferred its Seneca brand cigarettes to NWS "FOB

Canada in Canada" thereby transferring "title to the cigarettes from Grand River to

Native Wholesale in Canada") but, rather, at NWS's facilities located in New York State,

a fact unknown (apparently) to Plaintiff prior to its request for assistance from the OMF,

regarding GRE's Seneca brand cigarette shipments to NWS, thereby supporting, in

Plaintiff's opinion, that GRE was in fact shipping contraband cigarettes into New York

State to NWS in contravention of the CCTA and applicable N.Y. State Tax Laws

prohibiting such shipments based on their becoming contraband upon arrival in New

York State under the CCTA and N.Y. State Tax Laws.[10]   Although Plaintiff's proposed

amendments and supplementation may appear to reflect undue delay by Plaintiff

through a simple lapse of time, nevertheless, the relevant fact, is that, as of the date of

Plaintiff's Motion to Amend and Supplement, no significant discovery has occurred while

the parties (and the court) awaited the outcome of Defendants' earlier motions, filed

---

[9]  CCTA suits against Indians may, however, be brought by the United States Attorney General pursuant to 18 U.S.C. § 2346(a).
[10]   Plaintiff has also obtained copies of such invoices from the OMF.  *See* Dkt. 135-4 at 2-22.

January 15, 2015 (Dkt. 79, 80), pursuant to Fed.R.Civ.P. 12(b)(6) to dismiss the Second

Amended Complaint which would govern the scope of such discovery and was

unresolved until this court's Decision and Order filed February 11, 2019 (Dkt. 110)

denying Defendants' motion, as well as the Second Circuit's more recent determination

of the appeal in *Mountain Tobacco* I.

Thus, although Defendants maintain that Plaintiff has engaged in improper

strategic pleading by failing to earlier assert Plaintiff's proposed § 1399-ll claim and

unnecessarily delayed in seeking, until the past year, permission to add this claim and

include Plaintiff's proposed supplemental facts, particularly regarding the F.O.B.

shipments of GRE cigarettes to NWS, in a proposed third amended complaint, the court

finds, based on these circumstances Plaintiff did not engage in any abusive litigation

tactics nor will granting Plaintiff permission to file the proposed third amended complaint

at this time result in any demonstrable prejudice to Defendants.

In particular, as to the question of potential prejudice to Defendants, Defendants'

undoubted awareness, based on the GRE invoices obtained by Plaintiff documenting,

since 2013, GRE's F.O.B. shipment practices of holding title to its exported untaxed

cigarettes while they were shipped from Ontario into New York State for delivery to

NWS within the State, belies any assertion by Defendants of unfair surprise and thus

potential prejudice which could result from Plaintiff's request to plead such facts at this

time in further support of Defendants' alleged joint venture to possess and sell untaxed

cigarettes in New York State and, by virtue of its status as such a joint venturer, and

thus GRE's vicarious liability based on the activities of the joint venture and NWS's

conduct as a joint venturer under Plaintiff's CCTA, PACT Act, and State tax law claims.

*See* Plaintiff's Reply, Dkt. 135 at 4-5.  It is well-established Second Circuit law that such amendments and supplementation will be allowed where the opposing party is aware of the alleged new facts prior to the request to amend or supplement.  *See, e.g., Monahan v. New York City Dept. of Corr.*, 214 F.3d 275, 284 (2d Cir.) (no undue delay or prejudice where non-moving party knew of proposed underlying facts a year in advance of movant), *cert. denied*, 531 U.S. 1035 (2000); *see also Smalls v. Bright*, 2011 WL 5429685, at *5 (W.D.N.Y. Nov. 9, 2011) (same) (citing *Monahan*, 214 F.3d at 284). Here, as noted, the record demonstrates Defendants were, or reasonably should have been, aware of the facts underlying Plaintiff's proposed F.O.B. allegations, based on GRE's invoices to NWS over a period of several years, regarding GRE's post-June 2013 shipments to NWS, bringing Defendant GRE's shipments of its Seneca brand untaxed cigarettes arguably within the reach of New York's tax laws regarding such contraband products, well-prior to Plaintiff's motion.  Finally, even if Plaintiff could, or should, have earlier sought to assert its proposed § 1399-ll claim, the fact remains that, as discussed, Discussion, *supra*, at 13-14, given the delay in the disposition of Defendants' motion to dismiss the Second Amended Complaint, and the absence of any significant discovery in this case pending determination of Defendants' Rule 12(b)(6) motion to dismiss and the Second Circuit's ruling in *Mountain Tobacco* I, Defendants' cannot point to any appreciable prejudice if Plaintiff's Motion to Amend and Supplement is now granted.  *See* Dkt. 135 at 8.

Nor is there any merit in Defendants' contention that Plaintiff's Motion to Amend and Supplement should fail because it was not filed within 20 days after service of Defendants' answers to the Second Amended Complaint as required by Rule 12(f).

Courts permit such belated motions because the court has broad authority itself to strike a defense as specifically permitted by Rule 12(f).  *See In the Matter of Rationis Enterprises, Inc. of Panama v. Hyundai Mipo Dockyard Co.*, 210 F.Supp.2d 421, 425 (S.D.N.Y. 2002) (citing *Nat'l Union Fire Ins. Co. of Pittsburgh v. Alexander*, 728 F.Supp. 192, 203 (S.D.N.Y. 1989)); *see also Betts v. Peterson*, 2010 WL 4140824, at *4 (W.D.N.Y. Oct. 21, 2010), *report and recommendation adopted*, 2011 WL 282697 (W.D.N.Y. Jan. 25, 20122) (acknowledging plaintiff's motion to dismiss answer was untimely filed but considering *sua sponte* under Rule 12(f)(1) whether to strike the answer).  As this court has stated, the Federal Rules of Civil Procedure "permit[ ] the court to *sua sponte* strike a pleading at any time."  *Id.*  Thus, courts may consider untimely motions to strike and "grant them if doing so seems proper."  *Hoppe v. G.D. Searle & Co.*, 779 F.Supp. 1413, 1421-23 (S.D.N.Y. 1991) (citing C. Wright & A. Miller, FEDERAL PRACTICE AND PROCEDURE § 1380 (1969) (citations omitted)). Plaintiff's Motion to Amend and Supplement should therefore be GRANTED.

2.   <u>Plaintiff's Motion to Strike</u>.

To avoid dismissal, affirmative defenses, like claims, must comply with the requirement that such defense plausibly plead a legally valid defense.  *See GEOMC Co., Ltd. v. Calmare Therapeutics Inc.*, 918 F.3d 92, 98 (2d Cir. 2019) (requiring affirmative defenses to comply with plausibility test established by *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 679 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Fed.R.Civ.P. 12(f) permits striking an affirmative defense where "'(1) there is no question of fact which might allow the defense to succeed; (2) there is no question of law which might allow the defense to succeed; and (3) the plaintiff would be prejudiced

by the inclusion of the defense.'"  *White v. Fein, Such and Crane, LLP*, 2018 WL

955903, at *1 (W.D.N.Y. Feb. 20, 2018) (quoting *Sibley v. Choice Hotels Intern., Inc.*,

304 F.R.D. 125, 132 (E.D.N.Y. 2015)).  For purposes of a motion to strike an affirmative

defense, prejudice to plaintiff is established if litigating a legally insufficient defense

"would needlessly increase the time and expense of trial or duration and expense of

litigation." *EEOC v. Frontier Hot-Dip Galvanizing, Inc.*, 2017 WL 11309771, at *4

(W.D.N.Y. Dec. 18, 2017) (quoting *City of New York v. Fedex Ground Package Sys.,

Inc.*, 314 F.R.D. 348, 355 (S.D.N.Y. 2016)).

In support of its motion, Plaintiff contends at the outset the affirmative defense is

defective first because it ambiguously asserts Plaintiff's prospective enforcement of N.Y.

State Tax Laws, as applicable to the manufacture, importation and possession of

untaxed cigarettes, violated the dormant Commerce Clause based on Plaintiff's policy of

selective enforcement of New York State's laws taxing cigarettes against out-of-state

Indian cigarette manufacturers, like GRE, which produce and ship to Indian resellers,

like NWS, untaxed cigarettes into states which impose such taxes, making the

cigarettes contraband subject to seizure, in violation of Fed.R.Civ.P. 8(b)(1)(A)

(requiring a defendant to state, in response to a pleading, "in short and plain terms its

defenses to each claim and asserted against it") ("Rule 8(b)(1)(A)").

However, in this case, the court finds that, because the record demonstrates that

cigarettes produced by GRE and possessed and sold by NWS in N.Y. State are

contraband under the CCTA and the applicable provisions of the N.Y. State Tax Law,

Defendants can have no legitimate possessory interest in the cigarettes which could be

violated by Plaintiff's seizure as contraband, threatened or actual, as the affirmative

defense alleges, of such cigarettes with the result that the court lacks subject matter jurisdiction over Defendants' affirmative defense.  Although Plaintiff has not raised this threshold issue, district courts are expected to address a possible lack of subject matter jurisdiction *sua sponte*.  *Lyndonville Sav. Bank & Trust Co. v. Lussier*, 211 F.3d 697, 700 (2d Cir. 2000) ("failure of subject matter jurisdiction is not waivable and may be raised at any time by a party or by the court *sua sponte*"); *Rush v. Hillside Buffalo, LLC*, 314 F.Supp.3d 477, 481 (W.D.N.Y. 2018) ("'Federal district courts are required to test their subject matter jurisdiction *sua sponte*,'" (quoting *Sabatino v. St. Barnabas Med. Ctr.,* 2004 WL 2413940, at *2 (S.D.N.Y. 2004))).  Additionally, the district court may make findings of fact to determine its jurisdiction.  *See MMA Consultants 1, Inc. v. Republic of Peru*, 719 Fed.Appx. 47, 49 (2d Cir. 2017) (citing caselaw).  A party asserting an affirmative defense based on a constitutional limitation has the burden to establish the court's subject matter to consider the merits of such defense.  *See Woods v. Rondout Valley Sch. Dist. Bd. of Educ.,* 466 F.3d 232, 237 (2d Cir. 2006) (defendant required to demonstrate basis for affirmative defense of 11th Amendment immunity).  As relevant, the CCTA provides that it is unlawful for any person to "ship, transport, receive, possess, sell, distribute, or purchase contraband cigarettes," which violation is a five-year federal felony, 18 U.S.C. §§ 2342(a), 2344(a), and subjects such cigarettes to seizure and forfeiture, including potential destruction pursuant to 28 U.S.C. § 2344(b)(1).  The CCTA defines contraband cigarettes as more than 10,000 cigarettes "found" in a jurisdiction which requires the payment of a cigarette excise tax without evidence, *i.e.*, in this case, a stamp on the packages of the found cigarettes, that such tax has been paid, *see* 18 U.S.C. § 2341(2), subject to certain exceptions not applicable

to Defendants.  New York State Tax Law §§ 480-b, 481(c) and 1846, together known as New York's Contraband Statutes ("the Contraband Statutes"), *see Freedom Hldgs., Inc. v. Spitzer*, 357 F.3d 205, 213 (2d Cir. 2004), also render cigarettes sold for consumption in New York State subject to compliance with N.Y. Public Health Law §§ 1399-nn – 1399-pp, which require certain cigarette manufacturers to pay into an escrow fund to satisfy financial obligations to states under the master tobacco cases settlement program.  *See Freedom Hldgs, Inc.*, 367 F.3d at 211-14.  Violations of the Contraband Statutes subject the affected cigarettes to seizure by New York State peace officers, *see* N.Y. Tax Law § 1846(a), and forfeiture as provided by N.Y.C.P.L.R. Art. 13A.  *See Freedom Hldgs., Inc.*, 357 F.3d at 214-15.

In the instant case, Plaintiff alleged in the Second Amended Complaint that between November 2011 and February 2013, Defendant GRE sold to NWS at wholesale more than 1.5 billion untaxed cigarettes.  In Defendants' answers, Defendants did not directly deny this allegation, instead referring Plaintiff to NWS's "monthly operating reports" filed in NWS's bankruptcy court proceeding in the U.S. Bankruptcy Court for this district.  *See* Dkt. 122 ¶ 101 (NWS's Answer); 124 ¶ 101 (GRE's Answer).   A review of these documents filed in NWS's Bankruptcy Court proceedings, *In Re Native Wholesale Supply Company*, Case No. 11-4009 at Dkts. 117-2; 118-3; 119-3; 164-4; 165-4; 247-5; 248-4; 275-4; 276-4; 373-1; 374-1; 375-1; 376; 377; 378; 388, shows NWS's monthly payments to GRE for cigarette products over the 16-month period ranged from $3,310,704 to zero for a total of $34,998,515, Dkt. 76 ¶ 101,[11] which extrapolates to more than 1.166 billion cigarettes NWS received from GRE

---

[11]   The actual amounts are provided in the Appendix to this Report and Recommendation/Decision and Order.

and paid for during this period and resold to other Indian wholesalers within New York State.  In its answer to the Second Amended Complaint NWS also admits it imports GRE's Seneca brand cigarettes and resells such cigarettes within New York State.  *See* Dkt. 122 ¶¶ 9-10.  Using the NWS Bankruptcy Court monthly operating reports as pleaded and referenced by GRE and NWS in their answers, and assuming a very reasonable distributor's purchase price, *i.e.*, the price per carton charged by GRE to NWS, of $25.00/carton[12] (court takes judicial notice that a standard cigarette carton contains 10 packs with 20 cigarettes per pack) divided into $34,998,515 yields close to approximately 288 million cigarettes over the period alleged by Plaintiff, or approximately 17.5 million cigarettes per month received by NWS in New York State from GRE.[13]  Thus, even assuming a daily shipment to NWS the number of untaxed cigarettes equals approximately 583,333 received by NWS from GRE per day, well above the possession of 10,000 cigarettes required by the CCTA for the cigarettes found or admitted by NWS to have been received in New York State to qualify as contraband.  Stated in another way, in order to conclude that based on NWS's admitted payments to GRE the number of untaxed cigarettes delivered to NWS by GRE on the monthly basis during the 16-month <u>was</u> <u>less</u> <u>than</u> the CCTA required 10 thousand untaxed cigarettes would require a purchase price per carton by NWS of $43,750, an

---

[12]   Compare *United States v. Khan*, 771 F.3d 367, 371 (7th Cir. 2014) (affirming convictions for violation of the CCTA for the sale of quantities of untaxed cigarettes as contraband purchased from undercover federal agents by defendants at a price of $25/carton supporting that the actual manufacturer's price, such as GRE's, was necessarily (and substantially) less to allow for further markup by the sting 'wholesaler' and defendants).

[13]   Facts may be established by reference to the pleadings in a case.  *See Paraco Gas Corp. v. Travelers Cas. and Sur. Co. of America,* 51 F.Supp.3d 379, 399-401 (S.D.N.Y. 2014) (granting in part the plaintiff's motion to dismiss the defendant's cross-claims that were disproved by the defendant's factual assertions in the answer and cross-claims).

obvious absurdity on its face.[14]  Thus, by any reasonable measure, Defendants should

be found to have admitted in their answers to shipping, possessing and selling in New

York State[15] at least 10,000 Seneca brand cigarettes on a monthly (or even a daily)

basis during the time-period as Plaintiff alleges and a fact confirmed by copies of GRE's

invoices for its cigarette shipments to NWS.

Additionally, although the NWS monthly Bankruptcy Court reports indicate NWS

paid customs duties for the imported GRE cigarettes, the reports do not, nor do the

GRE invoices, specify whether the applicable New York State excise tax on the

cigarettes shipped to NWS was paid to a licensed New York State tax agent for each

shipment by GRE as required by N.Y. Tax Law §§ 471[2] and 480-b(2) ("§ 480-b[2]").

However, Defendants, as noted, Background and Facts, *supra*, at 7, assert that based

on Defendants' interpretation of the T & F Department's July 2011 e-mail, Defendant

GRE, as a non-New York resident, is subject to discriminatory enforcement of Plaintiff's

---

[14]   In fact, according to copies of GRE's invoices to NWS recently forwarded by OMF to Plaintiff, *see* Discussion, *supra*, at 13, and the accuracy of which Defendants do not dispute, *see* Dkt. 132 (*passim*), and assuming 60 cigarette cartons to a case, *see* Khan, 771 F.3d at 371 (finding the 'sting' received from the cigarette manufacturer 10 cases of untaxed Marlboro cigarettes with each case containing 60 cartons of cigarettes), the actual GRE price per carton sold to NWS was $3.90.  *See, e.g.*, Dkt. 135-4 at 2 (GRE invoice dated June 27, 2013) ("June 27, 2013 invoice"), billing NWS for multiple shipments of cases of Fire Safe Seneca 100 Full Flavour cigarettes @ $234 per case) shipped F.O.B to various Native American businesses within this district.  Although the invoices do not expressly state they refer to GRE's cigarettes, GRE admits it manufactures its Seneca brand cigarettes which are imported by NWS.  *See* Dkt. 124 ¶ 10.  In particular, included in the June 27, 2013 invoice are several separate transactions for 32 cases of cigarettes at a unit price of $234 and total price of $7,488 for each quantity of 32 cases.  With 60 cartons per case, each of these shipments included 1,920 cartons, for a per carton price of $3.90.  Further, at 200 cigarettes per carton, each shipment of 1,920 cartons evidenced by the GRE invoices contained 384,000 cigarettes, thereby demonstrating GRE shipped and NWS received in New York State at least 10,000 untaxed cigarettes constituting contraband based on each shipment effected and as represented by the GRE invoices.

[15]   While NWS's monthly expense statements do not specifically state NWS resells the Seneca brand cigarettes, it would defy reason to believe that having paid nearly $35 million for the cigarettes, the cigarettes were merely stored at NWS's facility and not resold to finance NWS's cigarette and other businesses. In sum, the GRE invoices cover shipments between June 2013 and August 2018 for a total of 11,621 cases of GRE's Seneca brand cigarettes each case containing 12,000 cigarettes and thus constituting contraband under the CCTA.

cigarette tax laws with respect to potential seizure of "untaxed" cigarettes shipped by

GRE into New York State in contrast to a supposed, according to Defendants'

interpretation of the T & F Department's e-mail, lack of potential seizures by New York

State agents of untaxed cigarettes transported between Indian reservations within New

York State.  *See* Dkt. 138 Exh. E.  Specifically, Defendants contend the July 2011 e-

mail reflects "an intent to enforce [N.Y.'s] statutes in a manner that would target

commerce from outside New York state."   Dkt. 137 at 11; Dkt. 152 at 10 (contending

the e-mail demonstrates Plaintiff has a "clear intent to selectively enforce its statutes . . .

that would target commerce from outside New York State") (referencing Dkt. 138 Exh.

E).  As relied on by Defendants, the e-mail addresses the potential transportation by

Native Americans of "untaxed Native American cigarettes from a reservation outside

NYS to a reservation inside NYS."  *Id.*  Unless GRE and NWS, by their reliance on the

e-mail, were thereby conceding that the Seneca brand cigarettes at issue in this case

were also being transported to New York State by Defendants for resale by NWS

without evidence that the applicable New York State cigarette excise taxes imposed by

§§ 471 and 480-b[2], had been paid, Defendants' reliance on the T & F Department's e-

mail would be senseless and the factual basis for Defendants' Thirteenth Affirmative

Defense to make the defense plausible, as put forth by Defendants, would be non-

existent.  Accordingly, the Defendants' pleadings, including Defendants' reference to

NWS's monthly operating reports filed in its recent bankruptcy case in the Bankruptcy

Court and the State's T & F Department's e-mail expressly relied upon by Defendants

and as referenced by  Defendants in the affirmative defense, amply support a

conclusion that all the cigarettes produced by GRE shipped to New York State and sold

to NWS during the 2011-2013 period alleged by Plaintiff constituted contraband under both the CCTA and applicable N.Y. State Tax Laws.

It is black-letter law that contraband is not a subject to which any lawful possessory interest may attach.  *See United States v. Howe,* 2011 WL 2160472, at *3 (W.D.N.Y. May 27, 2011) (holding defendant had no possessory interest to support a return of defendant's lap top containing child pornography because the computer had become contraband and stating "an individual has no constitutionally recognized possessory . . . interest in contraband") (citing *Illinois v. Andreas*, 463 U.S. 765, 771 (1983) (no privacy interest exists in contraband); *United States v. Williams*, 592 F.3d 511, 523 (4th Cir.) (seizure of photographs including child pornography did not interfere with defendant's possessory interest because "once their nature as contraband become apparent [defendant's] possessory interests were forfeited"), *cert. denied*, 562 U.S. 1044 (2010)), *report and recommendation adopted*, 2012 WL 1565708 (W.D.N.Y. May 1, 2012), *aff'd.* 545 Fed.Appx. 64 (2d Cir. 2013).  It is also basic that a federal district court lacks subject matter jurisdiction over any claim or defense as to which there is no cognizable injury in fact to the party asserting the claim or defense.  *See In re 183 Lorraine Street Associates,* 101 F.3d 685, 685 (2d Cir. 1996) ("If a party has no legally cognizable injury, the federal court lacks jurisdiction, for its ruling would be an advisory opinion in violation of Article III of the Constitution."); *United States ex rel. Kriendler & Kriendler v. United Technologies Corp.*, 985 F.2d 1148, 1155-56 (2d Cir. 1993) (holding district court erred in dismissing action as time-barred without first addressing subject matter jurisdiction because dismissal of complaint for lack of such jurisdiction renders moot all claims and accompanying defenses and objections).  The absence an injury in

fact by the party asserting protection against Constitutional violation demonstrates there is no case or controversy issue prerequisite to this court's jurisdiction to consider and determine the merits of a claim or affirmative defense.  As noted, *Twombly's* plausibility requirement applies to all pleadings including an affirmative defense.  *See GEOMC Co., Ltd.*, 918 F.3d at 98.  Here, Defendants do not in the affirmative defense allege that Plaintiff has in fact engaged in any actual seizures consistent with the e-mail and, as a result, Defendants have suffered no actual disparate treatment by Plaintiff prohibited by the dormant Commerce Clause.  Such harm is therefore entirely hypothetical and speculative.[16]  Thus, although Defendants have asserted an affirmative defense based on Plaintiff's alleged violation of the dormant Commerce Clause and a policy of selective, *i.e.*, discriminatory, enforcement of Plaintiff's cigarette excise tax laws in this case against GRE as a foreign supplier of the untaxed cigarettes, and not a claim for equitable relief or money damages, *see Woods,* 466 F.3d at 237 (subject matter jurisdiction required to be established for affirmative defense), nevertheless, because Defendants' cigarettes based on the pleadings are contraband Defendants, as a matter of law, have not and cannot incur any legally cognizable injury in fact to any Defendants' possessory interest in such contraband and thus have suffered no injury in fact sufficient to establish Defendants' standing to assert the affirmative defense based on Plaintiff's supposed violation of the dormant Commerce Clause as pleaded in the affirmative defense and to satisfy the threshold requirement for the court's subject matter jurisdiction over the validity of the affirmative defense.  Moreover, the affirmative

---

[16]   Although Plaintiff alleges a seizure at 16,230 cartons of GRE Seneca brand cigarettes at a Seneca Falls Indian smoke shop by agents of the federal Bureau of Alcohol, Tobacco, Firearms and Explosives, not agents of the T & F Department, on January 2013, Dkt. 76 ¶¶ 97-98, Defendants declined to admit this allegation.  *See* Dkt. 122 ¶ 98 at 13 (NWS denying); Dkt. 124 ¶ 98 at 11 (GRE declining to admit).

defense does not allege that any of Defendants' cigarettes were actually seized by Plaintiff's agents pursuant to the T & F Department's policy as asserted by Defendants thus refuting Defendants have suffered any injury in fact thereby negating that subject matter jurisdiction attaches to the defense.  *See In Re 183 Lorraine Street Associates*, 101 F.3d at 685 (cognizable injury in fact prerequisite to district court's subject matter jurisdiction); *Pugh v. Reverse Mortgage Solutions, Inc.,* 2019 WL 6352465, at *2 (E.D.N.Y. Nov. 11, 2019) (court's subject matter jurisdiction does not attach to a hypothetical possibility of defendant's future foreclosure proceedings).  Accordingly, Defendants have failed to meet Defendants' burden to establish subject matter jurisdiction for the Thirteenth Affirmative Defense.

Even assuming Defendants have standing to invoke the dormant Commerce Clause as a bar to Plaintiff's federal and state law claims and that the court has subject matter jurisdiction to determine the validity of the affirmative defense, the defense is nevertheless insufficient on its face.  Here, as noted, Background and Facts, *supra*, at 7, Defendants' affirmative defense is based on Plaintiff's alleged cigarette tax enforcement policies as violating the dormant Commerce Clause which prohibits a state from imposing undue burdens upon interstate commerce in relation to the state or favoring in-state commercial interests to the disadvantage of out-of-state, in this case foreign, competition.  *See Mountain Tobacco Company*, 942 F.3d at 541.  However, like the rule that one cannot maintain a valid possessory interest in contraband, it is also well-established that contraband is not within the protection afforded by the Commerce Clause.[17]  *See Pabst Brewing Company v. G.Y. Crenshaw*, 198 U.S. 17, 29 (1905)

---

[17]  U.S. Const. Art. I Sec. 8 grants Congress exclusive power to regulate both foreign and inter-state commerce.

(holding Missouri state law requiring inspection of beer or malt liquor shipped into the state for resale as permitted by Congressional enactment, the Wilson Act of 1890, 26 Stat. 313, did not violate Commerce Clause as such products were subject to state's police power) (quoting *Vance v. W.A. Vandercook Co.*, 170 U.S. 438, 448 (1898) ("if all alcoholic liquors, by whomever held, are declared [by the state] contraband, they cease to belong to commerce, and are within the jurisdiction of the [state's] police power.")) (internal quotation marks and citations omitted); *Predka v. Iowa*, 186 F.3d 1082, 1084 (8th Cir. 1999) (defendant's marijuana constituted contraband, *i.e.*, property unlawful to possess, "and as such not an object of interstate trade protected by the Commerce Clause") (citing *Ziffrin, Inc. v. Reeves*, 308 U.S. 132, 139 (1939) (state statute declaring alcoholic beverages shipped without state license contraband outside scope of Commerce Clause protection)); *see also Citicorp Indus. Credit, Inc. v. Brock*, 483 U.S. 27, 39 (1987) (goods produced in violation of the Fair Labor Standards Act validly excluded as "contraband" by Congress from interstate commerce for sale by a secured creditor).

Moreover, neither the CCTA nor § 471 denominate the untaxed cigarettes manufactured by GRE and purchased and possessed by NWS for resale in New York State as contraband until such cigarettes are "found" (CCTA § 2341(2)) or "possessed in [N.Y. State] for sale" (New York Tax Law § 471), *see City of New York v. Chavez*, 944 F.Supp.2d 260, 265 (S.D.N.Y. 2013) (under the CCTA cigarettes "found in New York State without tax stamps required by state tax laws are "contraband").  Thus, as New York State's potential for seizure, as discussed in the T & F Department's July e-mail, of Defendants' cigarettes accrues only upon their arrival and possession within the

state, Plaintiff's seizure policy, as alleged by Defendants, if even effected, does not discriminate against Defendants' cigarettes based on their out-of-state source.  Rather, the CCTA provides for the seizure of more than 10,000 untaxed cigarettes as contraband an exercise of state authority expressly authorized by Congress.  *See* 18 U.S.C. § 2342(a) (unlawful to knowingly ship, transport, receive, possess, sell, distribute or purchase contraband cigarettes); § 2345(a) (permitted states to enact and enforce state's cigarette tax laws and to authorize seizure of untaxed cigarettes in violation of such laws).  Moreover, it is also well-established that states may regulate products produced in other states, or a foreign nation, when authorized by Congress without violating the Commerce Clause.  *See Pabst Brewing Co.*, 198 U.S. at 553-54 (state's inspection requirement for purity of beer produced out-of-state authorized by the Wilson Act did not violate the Commerce Clause).  Here, Congress through the CCTA has specifically authorized state seizures of contraband cigarettes when found within the State.  *See*, 18 U.S.C. § 2345(a).  As such, Commerce Clause protection does not attach to the Defendants' cigarettes at issue after their arrival in New York State at which point their status as unprotected contraband, outside the protection afforded legitimate commerce by the Commerce Clause, takes place by operation of the CCTA, a Congressional enactment indisputably permitted by Commerce Clause,[18] as well as applicable state law.  As discussed, Discussion, *supra*, at 19-23, Defendants have necessarily admitted in their pleadings that the Seneca brand cigarettes shipped during the period into New York State by Defendants are, by any reasonable measure, contraband, a fact confirmed by reference to GRE's invoices to NWS for its cigarette

---

[18]   Defendants do not contend otherwise.

shipments between 2013 and August 2018 to Indian retail outlets within this district and billed to NWS.  Any potential seizure, even assuming such seizure occurred, by Plaintiff pursuant to New York's Contraband Statutes therefore does not discriminate against Defendants' cigarettes based on their character as foreign commerce protected by the Commerce Clause, and Defendants' affirmative defense fails as a matter of law.

Here, as noted, Defendants' Thirteenth Affirmative Defense alleges Plaintiff's claim "may be barred by the Dormant Commerce Clause and/or Equal Protection Clause."  Alternatively, assuming for the sake of analysis there is subject matter jurisdiction for the affirmative defense, *i.e.*,  that Defendants have standing to assert a violation of the dormant Commerce Clause despite the absence of any alleged injury in fact incurred by Defendants based on the absence of any allegation that Defendants' cigarettes were in fact seized by the T & F Department, and notwithstanding the speculative nature of Plaintiff's enforcement policy as pleaded by the affirmative defense, and that the dormant Commerce Clause is inapplicable to Defendants' contraband cigarettes, even if the court were to overlook that the affirmative defense does not comply with Rule 8(b)(1) on account of its ambiguous reliance, specifically that Plaintiff's action "may" be barred, based upon Defendants' including of alleged violations of both the dormant Commerce and Equal Protection Clauses in the same pleading, the affirmative defense does not plausibly allege a violation of the dormant Commerce Clause, based on Plaintiff's selective enforcement of Plaintiff's contraband statutes and policies in violation of the Equal Protection Clause as Defendants assert, or some hybrid combination of these two theories of constitutional limitation.  As is also well-established, the dormant Commerce Clause arises from a judicial construction of

the Commerce Clause, U.S. Const. art. I, Sec. 8, which grants to Congress the
exclusive power to regulate both foreign and domestic, inter-state, commerce.  *See*
*Jones v. Schneiderman*, 974 F.Supp.2d 322, 349 (S.D.N.Y. 2013) (quoting U.S. Const.
art. 1, § 8, cl. 3 ("The Congress shall have power . . . to regulate Commerce . . . with
foreign nations and among the several States")),[19] by establishing the "principle that
because 'the right to engage in interstate commerce is not the gift of a state, and that
the state cannot regulate or restrain it,'"  *Mountain Tobacco*, 942 F.3d at 541 (quoting
*Selevan v. N.Y. Thruway Auth.* 584 F.3d 82, 90 (2d Cir. 2009) (quoting *Hughes v.*
*Alexandria Scrap Corp.*, 426 U.S. 794, 808 (1976) (quoting *Hood & Sons v. Du Mond*,
336 U.S. 525, 535 (1948) (Jackson, J.)))), states may not hinder inter-state commerce
in an effort to promote or protect local commerce. "'The negative or dormant implication
of the Commerce Clause prohibits state taxation . . . or regulation . . . that discriminates
against or unduly burdens interstate commerce and thereby impedes free private trade
in the national marketplace.'"  *Mountain Tobacco*, 942 F.3d 541 (quoting *General*
*Motors Corp. v. Tracy*, 519 U.S. 278, 287 (1997)) (internal quotation marks, brackets
and italics omitted).  As relevant to Plaintiff's Motion to Strike the affirmative defense for
insufficiency, the Second Circuit recently stated in *Mountain Tobacco* II that "[a] state
law or regulation offends the dormant Commerce Clause <u>only</u> if it '(1) clearly
discriminates against interstate commerce in favor of intrastate commerce, (2) imposes
a burden on interstate commerce incommensurate with the local benefits secured, or (3)

---

[19]  Given GRE's cigarettes are manufactured in and shipped from Ontario, the dormant Commerce
Clause is relevant to such shipments as foreign commerce; however, the dormant Commerce Clause
applies as well to such foreign commerce.  *See USA Recycling, Inc. v. Town of Babylon*, 66 F.3d 1272,
1281 (2d Cir. 1995) (recognizing the dormant Commerce Clause as a "self-executing limitation of the
power of the states to enact laws imposing substantial burdens on such [interstate and foreign]
commerce") (citing cases).

has the practical effect of extraterritorial control of commerce occurring entirely outside the boundaries of the state in question.'" *Mountain Tobacco*, 942 F.3d at 542 (quoting *Selevan*, 584 F.3d at 90).  Here, Plaintiff's state law claims are based on Defendants' alleged violations of Sections 471, 480-b and 1814 of the New York State Tax Law.

Specifically, N.Y. Tax Law Section 471 imposes an excise tax of $4.35 per pack on the possession of all cigarettes for sale within the state including cigarettes sold on Indian reservations to non-members of the Indian tribe or nation on whose reservation the cigarettes are sold.  Evidence of payment of the tax must appear on an affixed tax stamp exclusively provided by tax agents licensed in the State.  *Id.*  Sales to tribal or nation members are exempt from the tax which nevertheless is prepaid to the State by the licensed tax agents subject to participation by the tribe in a coupon and tax refund program operated by the State by which the retailers are reimbursed for the prepaid tax based on estimates of on-reservation cigarette purchases and usage by Native Americans who are exempt from the excise tax.  *Id.*  New York Tax Law Section 480-b requires each cigarette manufacturer whose cigarettes are sold in New York State to certify to the N.Y. State Commissioner of Health its financial participation in a master settlement agreement as provided in N.Y. Public Health Law § 1399-oo, or a qualified escrow fund created pursuant to N.Y. Public Health Law § 1399-pp.  As applicable to this case, Section 1814(a) of the New York Tax Law makes the possession, transportation and sale of 10,000 or more untaxed cigarettes in New York State subject to state criminal (a Class E felony) penalties; the possession or transportation of at least 5,000 untaxed cigarettes at one time is presumptive evidence that the excise tax under § 471 applies to such cigarettes.  § 1814(d).

In the instant case, a fair reading of Defendants' affirmative defense fails to reveal any reference to the specific New York State tax laws which Plaintiff asserts Defendants to have violated by virtue of Defendants' alleged joint venture to manufacture, import and sell untaxed cigarettes in New York State, nor does the affirmative defense purport to assert that any of such New York State tax laws "'clearly discriminates'" against interstate, or foreign, commerce, "'imposes a burden on interstate commerce incommensurate with the local benefits secured,'" or has created "'extraterritorial control of commerce entirely outside'" New York's boundaries, *Mountain Tobacco* II, 942 F.3d at 542 (quoting *Selevan*, 584 F.3d at 90), the required elements for a cognizable dormant Commerce Clause defense.  *Id.*  As discussed, Discussion, *supra*, at 19-23, Defendants' theory also fails as Defendants' untaxed cigarettes constitute, upon their shipment into New York State, contraband by operation of the CCTA and the New York Contraband Statutes, and as New York's power to seize contraband cigarettes attaches only upon the arrival of such cigarettes which upon arrival in New York State become contraband, *see* N.Y. Tax Law §§ 471[1] (imposing an excise tax on cigarettes possessed for sale in New York State); 480-b (requiring manufacturers of cigarettes sold in New York State to certify participation in the master tobacco settlement or escrow program); 1846(a)(a-1) (authorizing the seizure and forfeiture of all cigarettes possessed in violation of §§ 471[1] and 480-b), such state statutory authority does not by their terms discriminate against GRE's cigarettes as foreign commerce.  Rather, the affirmative defense, without further particularization, ambivalently asserts "Plaintiff's claims <u>may</u> be barred" by the dormant Commerce Clause as a result of Plaintiff's "<u>policy</u> of enforcement" that specifically discriminates

against out-of-state shipments to New York State of untaxed cigarettes by Native Americans such as GRE thereby favoring intra-state shipments of untaxed cigarettes produced by Native American businesses within the State.  Although Defendants' affirmative defense asserts only that Plaintiff has established in a "policy" of discriminatory enforcement of Plaintiff's cigarette tax laws, whether such "policy" itself violates the dormant Commerce Clause cannot be divorced from the underlying statute which supposedly gave rise to the asserted discriminatory enforcement policy and Defendants do not contend Plaintiff's alleged enforcement policy represents conduct that is *ultra vires*, *i.e.*, one unauthorized by applicable state law, nor do Defendants allege any of the N.Y. State Tax Laws, which, as discussed, Discussion, *infra*, at 35, apply to all cigarette manufacturers or shipments of cigarettes into New York State, authorized such an alleged discriminatory enforcement policy.  In fact, Defendants do not allege Plaintiff has actually acted to enforce the "policy" as referenced in the defense, only that the e-mail expresses, according to Defendants, an "intent" to do so. Dkt. 152 at 10; Dkt. 137 at 11.  As such, the affirmative defense fails to plausibly plead any of the N.Y. State Tax Laws or any enforcement policy necessarily based on such laws allegedly violated by Defendants, discriminate on their face, or as enforced, against foreign commerce particularly involving Defendants' shipments into New York State of GRE manufactured untaxed cigarettes as the supposed target of Plaintiff's discriminatory enforcement policy.

Similarly, with respect to Defendants' allegations of selective enforcement, Defendants also fail to plausibly allege, as a plain reading of the affirmative defense demonstrates, such a legally viable defense based on the Equal Protection Clause.  In

order to validly allege a particular form of governmental selective enforcement in violation of the Equal Protection Clause, the proponent-defendant must plead that the decision to unlawfully enforce a state's laws against a defendant both (1) "had a discriminatory effect," and (2) "was motivated by a discriminatory purpose." *United States v. Mazzariello*, 2015 WL 9244602,  at *2 (W.D.N.Y. Dec. 17, 2015) (Arcara, J.) (quoting *United States v. Armstrong*, 517 U.S. 456, 464-65 (1996)); *see also Bizzaro v. Miranda*, 394 F.3d 82, 86 (2d Cir. 2005) ("Equal Protection Clause bars the government from selective adverse treatment of individuals <u>compared</u> <u>with</u> <u>similarly</u> <u>situated</u> <u>individuals</u> if 'such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights *or malicious or bad faith intent to hurt a person'*") (italics in original) (quoting *LeClair v. Saunders*, 627 F.3d 606, 609-10 (2d Cir. 1980)).  As regards the enforcement of a state's tax laws like those which are the basis of Plaintiff's state tax law claims in this case, courts in this Circuit refuse to permit a selective enforcement defense to New York's efforts to interdict interstate trafficking in contraband cigarettes in New York State.  *See, e.g., Abuzaid v. Mattox*, 726 F.3d 311, 315-16 (2d Cir. 2013); *State of New York v. United Parcel Serv., Inc.*, 160 F.Supp.3d 629, 644-45 (S.D.N.Y. 2016), *opinion vacated in part on reconsideration sub. nom. New York v. United Parcel Serv., Inc.*, 2016 WL 10672074 (S.D.N.Y. June 21, 2016) (citing *Levin v. Commerce Energy, Inc.*, 560 U.S. 413, 421-22 (2010)).  Moreover, as the Second Circuit unambiguously stated in *Mountain Tobacco* II, "[t]here is <u>no</u> decision of this Court standing for the proposition that discriminatory enforcement of a nondiscriminatory state law violates the dormant Commerce Clause,"  942 F.3d at 542, thus undermining any basis for Defendants'

reliance on the dormant Commerce Clause or Equal Protection Clause or some combination thereof as Defendants posit, *see* Dkt. 152 at 12 ("discriminatory enforcement is a valid basis for a dormant Commerce Clause claim"), in support of the affirmative defense.  Further, unless the court finds that both required prongs as stated above, *see Mazzariello*, 2015 WL 9244602, at *2, for a viable selective enforcement claim have been plausibly pleaded, no discovery or an evidentiary hearing, in support of such alleged enforcement, is required.  *See Brink v. Conway*, 2010 WL 811542, at *8 (W.D.N.Y. Mar. 2, 2010) (citing *United States v. Myung Moon*, 718 F.2d 1210, 1229 (2d Cir. 1983) (internal citations omitted)).

In the instant case, Defendants' affirmative defense fails to allege that either Defendant has been subjected to disparate treatment in respect to the Plaintiff's enforcement of its tax laws applicable to the untaxed cigarette manufacture, importation, possession or sales within New York State, as alleged by Plaintiff, compared to others similarly engaged or situated, *see Bizzaro*, 394 F.3d at 86 (disparate treatment of defendant compared to persons or entities similarly situated a required element for a selective enforcement defense), other than through state licensed tax agents to whom New York law requires such untaxed cigarettes to be sold in order to be legally resold with the required tax stamps either at wholesale or retail within the State.  Defendants do not represent they qualify as such agents,[20] nor do Defendants assert which other persons or entities, particularly Native Americans, dealing in untaxed cigarettes from

---

[20]   Although Defendants deny, Dkt. 122 ¶ 27; 124 ¶ 27, Plaintiff's allegation, Dkt. 76 ¶ 27, n. 7 (defendants are neither licensed stamping agents or distributors authorized to possess untaxed cigarettes under N.Y. Tax Laws), that Plaintiff would proceed in this case against Defendants if Defendants were in fact such licensed agents borders on the absurd rendering Defendants' denials subject to the same characterization.  Notably, Defendants also have not sought to dismiss the action on this ground.

out-of-state sources, like GRE, have also failed to file their certificates of compliance and brand lists required by N.Y. Tax Law § 480-b as Defendants are alleged to have failed to do, Dkt. 76 ¶¶ 54, 58, yet were not acted against by Plaintiff's agents.  Although in the affirmative defense Defendants broadly allege Plaintiff's cigarette tax enforcement policies discriminate against particular transactions, *i.e.*, sales, by an out-of-state, Ontario, (Indian) cigarette manufacturer (GRE) to an in-state Indian (Native American) purchaser (NWS) while favoring, through non-enforcement, of similar activity involving two Indian reservations within New York State, Defendants nevertheless fail to allege they are in fact similarly situated to either the out-of-state or in-state Indian cigarette manufacturing or sales organizations to which Defendants seek to be equated and that these entities, like Defendants, have also violated the State's cigarette tax laws yet were treated differently with respect to the Sate's enforcement of its cigarette tax laws, *i.e.*, more favorably through non-enforcement, by Plaintiff.  More specifically, Section 471[1] imposes the State's excise tax on <u>all</u> cigarettes possessed for sale in the state.  It also applies to all cigarettes sold on an Indian reservation to non-Indians.  *Id.* New York Tax Law Section 480-b requires "[e]<u>very tobacco product manufacturer</u>" . . . "whose cigarettes are sold for consumption in New York State certify its participation in the master tobacco settlement or as provided in N.Y. Public Health Law § 1399-pp[2].  As Defendants do not contend NWS is a manufacturer, § 480-b cannot be interpreted as discriminatory against NWS, nor can § 480-b be seen as discriminating against an out-of-state cigarette manufacturer like GRE in favor of an in-state one as the law applies equally to both types of cigarette manufacturers regardless of location.  Importantly, as discussed, Discussion, *supra*, at 31, Defendants do not contend Plaintiff's so-called

enforcement "policy," as alleged by Defendants, regarding Plaintiff's intended seizure of contraband cigarettes, is based on other than the authority to do so pursuant to Plaintiff's contraband statutes.  Accordingly, Defendants' affirmative defense fails to plausibly allege any accepted theory that Defendants are the victims of unconstitutional selective enforcement based either on Plaintiff's cigarette tax laws or Plaintiff's supposed seizure policy directed to contraband cigarettes as required.  *See Mazzariello*, 2015 WL 9244602, at *2 (citing *Armstrong*, 517 U.S. at 464-65).

Additionally, Defendants do not allege that such discriminatory enforcement was based on an improper classification such as race, ethnicity, religion or the exercise of any constitutional right or an intent to cause Defendants purposeful injury based on maliciousness or bad faith.  *See Bizzaro,* 394 F.3d at 86 (motive to enforce based on malicious intent to harm prohibited by Equal Protection Clause); *Mazzariello,* 2015 WL 9244602, at *2-3 (defendants' claim of selective enforcement failed because defendants are unable to establish defendants were "singled out" for discrimination based on improper motive, *i.e.*, an effort to punish the exercise of constitutional rights). Significantly, as indicated, *see* Discussion, *supra*, at 33-34 (citing *Mountain Tobacco*, 942 F.3d at 542), the Second Circuit in *Mountain Tobacco* II recently rejected a similar, if not identical, selective enforcement defense by the defendant out-of-state Indian manufacturer of untaxed cigarettes in that case which, like GRE, shipped such cigarettes to an Indian wholesaler located in New York State, like NWS.  In doing so, the Second Circuit distinguished the two out-of-circuit decisions cited by Defendants in support of Defendant's affirmative defense, cases were also relied upon by defendant in *Mountain Tobacco* II.  Dkt. 152 at 12 (citing *Florida Trans. Servs., Inc. v. Miami-Dade*

*Cnty.*, 703 F.3d 1230 (11th Cir.) ("*Florida Trans. Servs.*"), *cert. denied,* 571 U.S. 823

(2013); *Walgreen Co. v. Rullan*, 405 F.3d 50 (1st Cir. 2005) ("*Rullan*"), *cert. denied*, 552

U.S. 889 (2007)).  Any reliance on these cases by Defendants is equally unavailing as

the Second Circuit's analysis in *Mountain Tobacco* II demonstrates that neither *Florida*

*Trans. Servs.* nor *Rullan* can be interpreted as supporting Defendants' theory that

Plaintiff's selective enforcement of a non-discriminatory state excise cigarette tax law

violates the dormant Commerce Clause, *see Mountain Tobacco*, 942 F.3d at 542, by

targeting enforcement of New York's tax laws applicable to untaxed cigarettes to be

shipped into New York State and where upon arrival, *i.e.*, being found in New York

State, the cigarettes become contraband by operation of both federal and state law

thereby warranting enforcement against the defendant, an out-of-state Indian cigarette

manufacturer like GRE.  More specifically, in *Mountain Tobacco* II, the Second Circuit

stated that in *Florida Trans. Servs.* the Eleventh Circuit found a dormant Commerce

Clause violation based on defendant's enforcement of an ordinance without also holding

that the enforcement practice at issue "constituted direct discrimination in violation of

the dormant Commerce Clause."  *Id.*  According to the Second Circuit, the Eleventh

Circuit holding in *Florida Trans. Servs.*, was that the county ordinance at issue, which

defendant applied so as to restrict stevedore licenses to local, county-based, stevedore

companies, violated the dormant Commerce Clause because "regardless of

discrimination, "[it] . . . placed a burden on interstate commerce that clearly exceeded its

local benefits."  *Id.*  However, as the Second Circuit also stated in *Mountain Tobacco* II,

and as applicable to the instant case, a "lack of universal enforcement [of a state's

cigarette tax laws] does not bespeak [illegal] discrimination; and there is no plausible

reason New York would encourage or protect a local industry [Indian resellers of cigarettes like NWS] engaged in selling untaxed cigarettes." *Id.* As to the *Rullan* case, upon which Defendants also rely, Dkt. 152 at 12, the Second Circuit stated that, in that case, the First Circuit found a dormant Commerce Clause violation based on the "statute itself – not merely its enforcement." *Id.* (noting the statute at issue authorized the Puerto Rico Secretary of Health to restrict new pharmacies from entry into a local market upon objection of an existing pharmacy). Here, Defendants' affirmative defense does not plead that any of the State's tax law provisions asserted by Plaintiff "'clearly discriminate[ ],'" *Mountain Tobacco*, 942 F.3d at 542 (quoting *Selevan*, 584 F.3d at 90), against Defendants on their face in favor of intra-state, versus inter-state or foreign, commerce, *viz.* the manufacture and shipment, in untaxed cigarettes nor do Defendants allege in the affirmative defense that the State's tax law provisions at issue in the instant case impose a "burden on interstate commerce incommensurate with the local benefits secured." *Id.* Indeed, in *Mountain Tobacco* II, as stated above, the court held that no local benefit could plausibly exist in the sale of untaxed cigarettes, *see Mountain Tobacco*, 942 F.3d at 542, as no tax revenue is thereby created and the availability at lower retail prices of untaxed cigarettes obviously promotes more unhealthy smoking, a demonstrated public health hazard. Given the Second Circuit's recent and explicit rejection in *Mountain Tobacco* II of Defendants' theory of Plaintiff's discrimination against interstate commerce arising from Plaintiff's alleged enforcement policies with respect to untaxed cigarettes manufactured by a foreign Indian manufacturer shipped to New York State, Defendants have not, and cannot plausibly allege a dormant Commerce Clause violation based on Plaintiff's alleged discriminatory excise tax

enforcement policies aimed by Plaintiff at out-of-state untaxed cigarettes shipped to New York State by an Indian manufacturer thereby conferring an incommensurate benefit upon locally manufactured and sold, untaxed, Indian manufactured cigarettes within New York State.  In *Mountain Tobacco* II, the Second Circuit unmistakenly held such alleged targeting of cigarette tax enforcement against out-of-state manufactured untaxed cigarettes by the State does not "bespeak" prohibited discrimination and, according to the court, as noted above, there is no cognizable local benefit to be conferred on to those "engaged in selling untaxed cigarettes."  *Mountain Tobacco*, 942 F.3d at 542.  Simply put, because intra-state traffickers in contraband cigarettes do not receive a recognized legal economic benefit by the State's priority of enforcement against out-of-state shippers of untaxed cigarettes on account of seizure of such cigarettes by Plaintiff's agents, *i.e.*, of the T & F Department, the dormant Commerce Clause is not contravened.

Further, the Second Circuit's decision rejecting the legal predicate for Defendants' affirmative defense as stated in *Mountain Tobacco* II, also defeats Defendants' assertion, Dkt. 152 at 8, that where an affirmative defense which "involves facts that 'may not be readily known to a defendant, [such factor is] a circumstance warranting a relaxed application of the plausibility standard.'"  *Id.* (quoting *GEOMC*, 918 F.3d at 98).  However, such reliance on the GEOMC case is unavailing here as the Second Circuit's *Mountain Tobacco* II decision negates any legally recognized ground for Plaintiff's asserted dormant Commerce Clause or selective enforcement defense, even if, *arguendo,* Defendants' referenced internal e-mail memorandum, issued by an agent of the T & F Department, is considered as indicative of such enforcement policy

by Plaintiff and were shown to be the fact through discovery, rendering, as a consequence, Defendants' requested discovery as to this issue to be irrelevant.  Thus, there are no facts which Defendants can allege, nor law upon which Defendants can reasonably rely, to support Defendant's affirmative defense, *see White*, 2018 WL 955903, at *1 (quoting *Sibley*, 304 F.R.D. at 132) even assuming the court has subject matter jurisdiction to adjudicate the merits of the defense.  The Second Circuit's rejection of the notion that a dormant Commerce Clause violation may be predicated on a governmental discriminatory enforcement policy also renders inapposite Defendants' reliance, Dkt. 152 at 12, on *Major Tours, Inc. v. Colorel*, 720 F.Supp.2d 587, 608-09 (D.N.J. 2010) (speculating in *dicta* that some form of "official discretion can violate the Dormant Commerce Clause").  The court therefore finds the affirmative defense fails to plausibly plead a cognizable defense to Plaintiff's claims.

Moreover, the court finds that, given the absence of controlling precedent affording any plausible viability to Defendants' theory underlying the defense, Defendants' discovery requests directed to the affirmative defense would entail disproportionate amounts of discovery by allowing Defendants to obtain Plaintiff's extensive internal documents, covering the period 2008 to 2019, related to this subject. *See* Rule 26(b)(1) (requiring discovery be limited in proportion to the needs of the claims or defense).  As there are no legal grounds to support the pleading of Defendants' affirmative defense there can be no need for discovery relating to it; any discovery related to it would be *per se* disproportionate.  In such circumstances, allowing further litigation of Defendants' affirmative defense will "needlessly increase the time and expense of trial [and] the duration and expense of litigation," *Frontier Hot-Dip*

40

*Galvanizing, Inc.*, 2017 WL 11309771, at *4, causing Plaintiff undue prejudice thus further warranting striking Defendants' affirmative defense.

Generally, a motion to dismiss under Rule 12(b)(6) or to strike pursuant to Rule 12(f) for failure to state a claim or defense is without prejudice and with leave to file an amended complaint or affirmative defense curing the deficiencies of the dismissed original complaint or defense. *See Cortec Industries, Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1992) ("It is the usual practice upon granting a motion to dismiss to allow leave to replead.").  Where, however, the plaintiff's pleadings' deficiencies are substantive such that better pleading will not cure them as, for example, with regard to lack of subject matter jurisdiction or time-barred claims, leave to replead would be futile, thus warranting dismissal without the opportunity to amend. *See Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010) (where leave to replead would be futile dismissal may be with prejudice and without leave to file an amended complaint).  Further, where the responses in opposing dismissal are devoid of any indicia that the pleading's substantive deficiencies may be feasibly overcome, dismissal with prejudice is supported. *Cf. Cortec Industries, Inc.*, 949 F.2d 50 (permitting leave to replead where "there is no suggestion from the averments of the complaint that an amendment would not supply the facts required to support the allegations and to cure the defect.").  Here, in view of the Second Circuit's decision in *Mountain Tobacco* II, *see* Discussion, *supra*, at 33-34, there appears no room for Defendants to 'plead around' the court's broad rejection of Defendants' affirmative defense based on selective or discriminatory enforcement of Plaintiff's cigarette tax laws against an out-of-state cigarette manufacturer thereby constituting a violation of the dormant Commerce Clause.  Nor, as

41

discussed, Discussion, *supra*, at 19-23, can it be reasonably supposed Defendants can overcome Defendants' implicit admissions that the cigarettes at issue here are contraband thereby not only depriving the court of subject matter jurisdiction to allow the defense for lack of an injury in fact, but also removing any semblance upon which to find Defendants' actions with respect to such cigarettes, as alleged by Plaintiff in this case, may somehow fall within the protection of the dormant Commerce Clause.  *See Baker v. New York State*, 128 Fed.Appx. 185, 186 (2d Cir. 2005) (affirming district court's dismissal of complaint for lack of subject matter jurisdiction without leave to amend where leave to amend would have been futile because no factual allegations would have successfully alleged a violation under the ADA).  Defendants' assertion to the contrary as denominated in the affirmative defense, is a far-fetched notion undeserving of any judicial *imprimatur*.  Accordingly, given Defendants' failure to demonstrate any reason to believe that a plausible basis for such a defense may yet exist despite the Second Circuit's determination in *Mountain Tobacco* II, one capable of being asserted in good faith, and this court's findings based on Defendants' pleadings with respect to the contraband nature of Defendants' cigarette activities excluding Defendants suffered any injury in fact or even have standing to assert a dormant Commerce Clause defense, Plaintiff's Motion to Strike should be GRANTED with prejudice.

3.    Defendants' Motion to Compel.

Based on the foregoing discussion, *see* Discussion, *supra*, at 18-42, finding and recommending Plaintiff's Motion to Strike should be granted with prejudice, Defendants' Discovery Requests, presently directed to the basis for Defendant's Thirteenth Affirmative Defense seek information regarding Plaintiff's enforcement policies of New

York State's Tax Laws applicable to the importation and sale of untaxed cigarettes manufactured and shipped by out-of-state Indian cigarette manufacturers like GRE, are irrelevant to Defendants' affirmative defense as beyond the scope of discovery by Rule 26(b)(1) (discovery limited to information relevant to a claim or defense), and, as such, Defendants' Motion to Compel should be DENIED pending consideration of this Report and Recommendation with respect to Plaintiff's Motion to Strike by the District Judge. Should the District Judge decline to adopt this recommendation and find the affirmative defense viable and that Plaintiff's motion to strike be denied, the matter should be remitted to the undersigned to consider Plaintiff's other non-dispositive objections to Defendants' discovery requests, not addressed herein, based on vagueness, overbreadth, undue burdensomeness, and privilege.

4.    Plaintiff's Motion to Compel.

    As noted, Plaintiff's Motion to Compel seeks information relating to Defendants' involvement in a joint venture to manufacture and ship into New York State untaxed cigarettes in violation of the CCTA, the PACT Act, and New York Tax Laws. Defendants opposed such discovery arguing Plaintiff's discovery requests exceed the limited discovery ordered by the undersigned, in compliance with Judge Arcara's direction, that such limited (not otherwise delineated by the District Judge) discovery should proceed while the parties and court awaited the Second Circuit's decision in *Mountain Tobacco* I appeal.  *See, e.g.,* Dkt. 150-13 at 2 (Objection of Defendant GRE to Plaintiff's discovery requests asserting Plaintiff's Interrogatories exceed the limited scope of discovery authorized by the court's May 1, 2019 Order (Dkt.  134)); Dkt. 150-13 (Objection of Defendant NWS asserting Plaintiff's interrogatories exceed the limited

scope of discovery authorized by the court's May 1, 2019 Decision and Order (Dkt. 134)).  As that decision, *Mountain Tobacco* II, has now been rendered and Judge Arcara has again referred the matter to the undersigned for further pretrial proceedings, there is no longer any reason to conduct <u>limited</u> discovery in the case, as Judge Arcara had previously ordered, subject to the usual objections available under Rule 26(b)(1), *i.e.*, relevance, vagueness, overbreadth, undue burdensomeness, and privilege.  In opposing Plaintiff's Discovery Requests, Defendants alternatively reserved potential further objections based on vagueness, overbreadth and burdensomeness in the event the court disagreed with Defendants' primary objection based on Plaintiff's discovery requests exceeding the court's discovery limitation.  *See, e.g.,* Dkt. 150-13 at 3 ("additional objections"); 151-1 at 3 (objections based on overbreadth and undue burdensomeness); 151-3 at 3 (same), 151-4 at 4 ("additional objections").  Here, Defendants' refusal to respond to Plaintiff's discovery requests turns on Defendants' primary contention that Plaintiff's requests go beyond the elements of a joint venture required under New York law such as contributions of assets, joint management, and the sharing of profits and losses.[21]  Thus, whatever arguable restriction on the scope of discovery by the parties flowed from the May 1, 2019 Order, such limits are now moot in light of the subsequent Second Circuit's *Mountain Tobacco* II decision and Judge Arcara's re-referral of the case to the undersigned to oversee further pretrial proceedings.  Plaintiff's Motion to Compel should therefore be DISMISSED as moot and

---

[21]  The parties do not address whether the CCTA or the PACT Act permit vicarious liability to be imposed on Defendants based on a joint venture.  *See, e.g., Meyer v. Holley*, 537 U.S. 280 (2003) (considering extent to which Fair Housing Act, 42 U.S.C. §§ 3604(b), 3605(a) may impose potential vicarious liability); *Western Fuels-Utah, Inc. v. Federal Mine Safety & Health Review Comm'n*, 870 F.2d 711 (D.C.Cir. 1989) (Mine Act, 30 U.S.C. § 814(a) (1982) authorizes vicarious liability on mine operator).

Defendants permitted to assert additional objections, if substantially justified, based on relevance, vagueness, overbreadth, undue burdensomeness or privilege.  Such objections, if any, shall be served <u>not</u> <u>later</u> <u>than</u> <u>30</u> <u>days</u> following this Decision and Order.

## CONCLUSION

Based on the foregoing, Plaintiff's Motion to Strike (Dkt. 146) should be GRANTED with prejudice; Plaintiff's Motion to Amend and Supplement (Dkt. 128) is GRANTED; Defendants' Motion to Compel (Dkt. 136) is DENIED; Plaintiff's Motion to Compel (Dkt. 148) is DISMISSED as moot; Defendants' further objections, if any, to Plaintiff's pending discovery requests may be served <u>within</u> <u>30</u> <u>days</u>.

Respectfully submitted as to
Plaintiff's Motion to Strike (Dkt. 146),

/s/ *Leslie G. Foschio*

_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

SO ORDERED as to Plaintiff's
Motion to Amend and Supplement
(Dkt. 128), Defendants' Motion to
Compel (Dkt. 136) and Motion
to Compel (Dkt. 148).

/s/ *Leslie G. Foschio*

_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

Dates:  March 10th, 2020
          Buffalo, New York

Pursuant to 28 U.S.C. '636(b)(1), it is hereby

**ORDERED** that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of the Court within ten (14) days of service of this Report and Recommendation in accordance with the above statute, Rules 72(b), 6(a) and 6(d) of the Federal Rules of Civil Procedure and Local Rule 72(b)

**Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.** *Thomas v. Arn*, 474 U.S. 140 (1985); *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989); *Wesolek v. Canadair Limited*, 838 F.2d 55 (2d Cir. 1988).

Let the Clerk send a copy of this Report and Recommendation to the attorneys for the Plaintiff and the Defendants.

SO ORDERED.

/s/ *Leslie G. Foschio*

_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:      March 10th, 2020
                 Buffalo, New York

# APPENDIX

Invoices (Bills) from GRE to NWS per NWS Bankruptcy Court Filings

November 2011 ..................................................................................   604,906

December 2011 .............................................................................. 1,917,238

January 2012 ................................................................................. 2,739,364

February 2012 ............................................................................... 1,691,700

March 2012 .................................................................................... 2,822,336

April 2012 ...................................................................................... 2,286,348

May 2012 ....................................................................................... 2,691,804

June 2012 ...................................................................................... 3,310,704

July 2012 ....................................................................................... 2,876,844

August 2012 .................................................................................. 3,456,742

September 2012 ............................................................................. 2,392,304

October 2012 ................................................................................. 2,885,592

November 2012 ..............................................................................   990,995

December 2012 ..............................................................................        0

January 2013 ................................................................................. 1,270,692

February ........................................................................................ 3,060,946


Total  ............................................................................................. $34,998,515