UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

STATE OF NEW YORK,

                                    Plaintiff,                          **DECISION**
                                                                        **and**
            v.                                                          **ORDER**

GRAND RIVER ENTERPRISES SIX NATIONS, LTD.,            **14-CV-910A(F)**
NATIVE WHOLESALE SUPPLY COMPANY, INC.,

                                    Defendants.
_____

APPEARANCES:            LETITIA A. JAMES
                        New York State Attorney General
                        Attorney for the Plaintiff
                        LESLIEANN CACHOLA,
                        BRANT B. CAMPBELL,
                        CHRISTOPHER K. LEUNG,
                        JOHN P. OLESKE,
                        Assistant Attorneys General, of Counsel
                        120 Broadway
                        New York, New York  10271

                        FRIEDMAN KAPLAN SEILER & ADELMAN LLP
                        Attorneys for Defendant Grand River Enterprises
                        ERIC O. CORNGOLD,
                        JEFFREY R. WANG, of Counsel
                        7 Times Square, 27th Floor
                        New York, New York  10036

                        LIPPES MATHIAS WEXLER FRIEDMAN LLP
                        Attorneys for Defendant Native Wholesale Supply
                        SCOTT S. ALLEN,
                        MICHAEL G. ROSSETTI,
                        DENNIS C. VACCO, of Counsel
                        1400 Liberty Building
                        Buffalo, New York   14202

        In this action Plaintiff seeks damages and injunctive relief based on Defendants'

alleged violations of federal and state law applicable to the possession, shipment and

sale of untaxed cigarettes in New York State, specifically the Contraband Cigarette

Trafficking Act, 18 U.S.C. §§ 2341-2346 ("the CCTA"), the Prevent All Cigarette Trafficking Act, 15 U.S.C. §§ 375-378 ("the PACT Act"), N.Y. Public Health Law § 1399-ll, and N.Y. Tax law §§ 471, 480-b, and 1814.  In the Third Amended Complaint (Dkt. 164) ("the TAC") Plaintiff alleges Defendant Grand River ("GRE") manufactures in Ontario, Canada and transports large quantities of cigarettes without pre-payment of the required New York State excise tax of $4.35 per pack ($43.50 per carton of 10 packs) to Defendant Native Wholesale ("NWS") which distributes the cigarettes to wholesalers or retail outlets located on Indian reservations within New York State who in turn resell the untaxed cigarettes to Indian and non-Indian retail purchasers, or GRE ships such cigarettes to on-reservation distributors within New York State, as well as one in Ontario, at NWS's direction.  The Scheduling Order, filed April 28, 2020, upon consultation with the parties, required all document production was to be completed by October 30, 2020 (Dkt. 177).

By papers filed October 9, 2020, Plaintiff moves to compel Defendants' responses to Plaintiff's discovery requests specifically Plaintiff's First Set of Document Production Requests and First Set of Interrogatories, and Plaintiff's Second Set of Document Production Requests and Second Set of Interrogatories (together "Plaintiff's discovery requests") (Dkt. 204) ("Plaintiff's motion").  Also before the court is Defendants' Motion to Compel filed October 23, 2020 (Dkt. 212) ("Defendants' motion") seeking to compel document production pursuant to Defendants' Requests for Production of Documents served April 27, 2020 (Dkt. 209-2) and Defendants' request to modify the Scheduling Order (Dkt 177) to extend the period for document production by 90 days in response to the present coronavirus pandemic, supported by affidavits filed

by Defendants on October 23, 2020 (Dkt. 210; 211) ("Defendants' Request to Amend the Scheduling Order").

1. **Plaintiff's Motion to Compel**

Plaintiff's discovery requests generally seek documents and information pertaining to Defendants' business organization, finances and commercial relationships with respect to the manufacture and shipment by Defendants of untaxed cigarettes primarily into Indian reservations located within New York State, particularly NWS's facility located in Perrysburg, New York, for the period 2010 to the present time. Plaintiff also requests sanctions pursuant to Fed.R.Civ.P. 37(a)(5)(A).  Dkt. 205 at 1.  In Defendants' opposition, Defendants represent that Defendants intend to and will produce all documents responsive to Plaintiff's discovery requests at issue on Plaintiff's motion relevant to Plaintiff's allegations in the TAC that Defendants' activities regarding the shipment of untaxed cigarettes into New York State, and to one location in Ontario, and constitute a joint venture thereby imposing vicarious liability for violations of both applicable federal and state law. *See* Dkt. 208 at 5.

Defendants also represent Defendants have been impeded in their ability to search for and produce copies of the requested documents because of tribal and local governmental restrictions on Defendants' ability to conduct regular business activity in both in Ontario (GRE) and New York State (NWS) imposed by tribal and governmental authorities in response to the present coronavirus pandemic.  Dkt. 208 at 8-9 (referencing affidavits of Ryean Warburton, GRE's Chief Financial Officer, and Erlind Hill, NWS's manager.  Dkts. 210; 211).  Mr. Warburton's affidavit describes greater restrictions imposed by the Six Nations of the Grand River Reserve, where GRE is

located, than those imposed by the Province of Ontario.  Dkt. 210 ¶ 6.  As a result, according to Mr. Warburton, GRE was required to limit staffing for its normal on-site manufacturing operations, including its ability to access GRE's business records necessary to comply with Plaintiff's discovery requests, Dkt. 210 ¶¶ 12, 20, nor could GRE employ third-parties to assist in performing such work or obtain on-site assistance of counsel to engage in document review.  *Id.* ¶ 21.  GRE's document production ability was further hampered, as stated by Warburton, by a criminal computer hacking incident which resulted in a loss of GRE records.  Dkt. 210 ¶ 24.  Mr. Hill, on behalf of NWS, describes similar impediments to NWS's timely compliance with Plaintiff's discovery requests based on restrictions imposed by New York State as well as the Seneca Nation of Indians on whose reservation NWS's business operation is located and conducted.  *See* Dkt. 211 (*passim*).  Defendants also assert, in partial mitigation of NWS's failure to produce, Plaintiff has received considerable amounts of responsive information such as NWS's balance sheets and profit and loss statements including records documenting GRE's cigarette sales to NWS and NWS's cigarette sales to other Indian resellers of GRE cigarettes in New York, as detailed in NWS's Monthly Operational Reports filed in connection with NWS's Chapter 11 proceeding in the Bankruptcy Court of this district, beginning in November 2011 and continuing through the recent termination of the proceeding in August 2020 from which, as Defendants claim, responses to Plaintiff's discovery request are ascertainable.[1]  Dkt. 208 at 6.

Plaintiff strongly disputes Defendants' rationale for non-production as set forth by

---

[1] To cite an example of such information, Plaintiff states that according to these records, Defendants shipped 40 million packs of untaxed GRE cigarettes into New York State between April and September 2020.  Dkt. 218 ¶ 2.

4

Messrs. Warburton and Hill.  Specifically, Plaintiff contends that Defendants' reliance on tribal and governmental coronavirus-related barriers to justify Defendants' failure to provide by October 30, 2020, document production lacks credulity, Defendants proffer no rationale for Defendants' failure to serve sworn answers to Plaintiff's interrogatory requests in compliance with Fed.R.Civ.P. 33(b), particularly those interrogatories seeking facts surrounding Defendants' ownership and Defendants' use of F.O.B. shipping notations for shipments of the GRE cigarettes to NWS.  Dkt. 215 at 2.  More particularly, Plaintiff argues current ownership information for NWS is necessary because of NWS's assertion that it is immune from suit by Plaintiff regarding Plaintiff's claims pursuant to the CCTA which precludes suit by a state against an Indian-owned entity as provided in 18 U.S.C. § 2346(b)(1).  Plaintiff notes that NWS's answers to Plaintiff's Second Set of Interrogatories requesting such ownership information referred only to one Arthur Montour, Jr., a Seneca Nation member as NWS's owner, who has been deceased for at least two years, according to Plaintiff, a fact not disputed by NWS and Plaintiff therefore argues NWS has thus failed to identify current NWS's ownership since Mr. Montour expired in completely responding to Plaintiff's interrogatories on this issue.

In opposition to Defendants' asserted inability to produce based on the asserted restrictions stemming from the coronavirus, Plaintiff submits such excuse lacks credibility and is unpersuasive as according to publicly available information GRE has, despite the stated virus-related limitations imposed on general business activity in Ontario, as well as Defendant's respective Grand River tribal authority, maintained cigarette production at its plant, Dkt. 215 at 4.  As well, Plaintiff maintains NWS's

attorneys should have been able to assist in preparing NWS's answers to Plaintiff's interrogatory requests and in obtaining responsive documents notwithstanding State and tribal restrictions, similar to those affecting GRE in Ontario, intended to prevent spreading the virus.  Dkt. 215 at 4.  Plaintiff also opposes Defendants' contention that Defendants' document production obligations are satisfied by Plaintiff's possession, as an NWS creditor, of NWS's Monthly Operational Reports filed in NWS's Chapter 11 proceedings on the ground the Plaintiff is entitled to the underlying documents in order to ascertain the "accuracy" of the information submitted by NWS in such monthly reports.  Dkt. 215 at 3.  Finally, Plaintiff reiterates its demand that Defendants provide personal contact information for witnesses identified in Defendants' disclosure required by Fed.R.Civ.P. 26(a).  *Id.*

In further opposition to Defendants' request for modification of the Scheduling Order, Plaintiff's supplemental briefing, filed October 30, 2020, contends Defendants' request lacks a showing of good cause required by Fed.R.Civ.P. 16(b)(4).  Dkt. 217 at 3-4.  According to Plaintiff, Defendants' affidavits asserting Defendants' inability to comply with the October 30, 2020 deadline for document discovery despite exercising reasonable diligence are perjurious, Dkt. 217 at 4, because, despite Mr. Warburton's and Mr. Hill's averments, Defendants have over the past five months continued to ship and distribute untaxed cigarettes into New York State.  According to Plaintiff, GRE has since June 2020 fully resumed manufacturing cigarettes, has been hiring workers, and its CEO was able to interact with GRE's counsel in Ontario to ameliorate an intra-tribal dispute between GRE's CEO and another Grand River Nation member, Dkt. 218 ¶¶ 4-5, arising from a large virus spreading social event hosted by GRE's principal owner, Ken

Hill, at a private venue. *Id.* ¶ 6 (attaching two color photographs). Plaintiff also asserts

that further delay in readying this case for disposition on the merits will severely

prejudice Plaintiff in that additional losses of $43.5 million in uncollected excise tax

revenue will be suffered by Plaintiff unless Defendants are enjoined from continuing

violations of applicable federal and state law. *Id.* ¶ 7.

Defendants counter, Dkt. 219, by pointing out that, contrary to Plaintiff's

assertions, Defendants have timely served answers to Plaintiff's interrogatories, Dkt.

219 at 4, 9, and the Defendants' affidavits in support of Defendants' request for

additional time to provide document discovery demonstrate that Defendants' operations

staffing was much lower than normal with employees suitable for document production

tasks limited to off-site functions, Dkt. 218 at 8, *see* November 4, 2020 Supplemental

Affidavit of Ryean Warburton, Dkt. 220 ¶ 2 (representing GRE's operations during the

past six months was limited to "skeleton staff"), and that such on-site staff lacked

capability to engage in document production required to respond to Plaintiff's discovery

requests. Dkt. 220 ¶ 2 (describing such staff as maintenance workers and occupational

health  personnel), and that more recently overall GRE staffing was only at 50-60% and

dedicated to production and manufacturing work, by personnel not suitable for litigation-

related work such as the document production as issue. *Id.* ¶ 3. Mr. Warburton also

describes the very recent increase in coronavirus cases in Southern Ontario as

foreshadowing added tribal and provincial restrictions the exact nature of which are

unforeseeable at present. *Id.* ¶¶ 4-5.

As regards Defendants' failure to provide document discovery responsive to

Plaintiff's First and Second Requests, it is basic that in responding to a request to

produce documents pursuant to Fed.R.Civ.P. 34(a), a responding party is required to

engage in good-faith reasonable effort to identify and locate all responsive documents

subject to objections based on lack of relevance, overbreadth, undue burdensomeness

and privilege.  *See Guillory v. Skelly*, 2014 WL 4542468, at * 10 (W.D.N.Y. Sept. 11,

2014) (citing *Kenneth v. Nationwide Mutual Fire Ins. Co.*, 2007 WL 3533887, at * 15

(W.D.N.Y. Nov. 13, 2007)).  Here, significantly, Defendants have committed to all of

Plaintiff's document production requests provided such requests are limited to

"documents relating to the sales of [GRE] cigarettes to NWS,"  Dkt. 208 at 5, within New

York State, and Defendants' "distribution of such cigarettes to on-reservation

wholesalers," Dkt. 208 at 11 (referencing TAC ¶¶ 55-65), thus conceding that, if so

limited, Plaintiff's document requests seek relevant information and are not burdensome

or overly broad.

It is well-established that discovery requests which seek documents beyond the

"subject matter of the action" are irrelevant and should be precluded.  *Daval Steel*

*Prods. V. M/V Fakredine*, 951 F.2d 1257, 1367 (2d Cir. 1991); *Bishop v. County of*

*Suffolk*, 248 F.Supp.3d 381, 391 (E.D.N.Y. 2017) ("[t]he locus of the line between

discovery reasonably calculated to lead to admissible evidence and the proverbial

fishing expedition is determined . . . by the allegations of the pleading") (internal citation

and quotation marks omitted); *Murphy v. Board of Education of the Rochester City*

*School District*, 2000 WL 33945849, at * 1-2 (W.D.N.Y. Sept. 11, 2000) (rejecting in

large part plaintiff's motion to compel seeking discovery "so impermissibly broad and

far-reaching that legitimate demands for relevant information and documents get lost in

the morass of inappropriate and irrelevant requests").  Here, Plaintiff's document

requests seek all of Defendants' business records without limitation by specific reference to the allegations in the TAC.  *See, e.g.*, Dkt. 206-11 (requesting "[a]ll of your [GRE] financial records . . ..").  While the TAC does allege NWS distributes GRE cigarettes throughout the United States including New York State, Dkt. 164 ¶ 9, a fair reading of the TAC also reveals its key allegations are directed to Defendants' activities relating to the cigarettes produced by GRE in Ontario and shipped into New York State by Defendants, in accordance with NWS's directions, to which cigarettes Plaintiff alleges the New York State excise tax is applicable.  Accordingly, the court views the subject matter of the TAC as limited to Defendants' business organization, relationships, finances, and operations only with respect to the delivery and distribution by Defendants of GRE untaxed cigarettes within New York State in violation of the applicable federal and state laws.  However, Defendants' commitment to provide such discovery, while encouraging, is not a substitute for the actual production required by Rule 34(c) and Defendants are therefore obligated to comply fully with Plaintiff's requests subject to the limitation on the scope of such requests as herein found by the court.  Accordingly, Defendants' objection to the broad scope of Plaintiff's document requests is sustained and Defendants' production of responsive documents shall be limited to GRE sales and shipments of GRE cigarettes to NWS and other resellers, including those located on Indian reservations within New York State, wholesale and retail, of GRE cigarettes as directed by NWS during the period of 2010 to present.  As to Plaintiff's document requests, Plaintiff's motion (Dkt. 204) should therefore be GRANTED in part and DENIED in part.

Defendants also maintain Defendants have provided answers to Plaintiff's

interrogatories; however, an examination of Defendants' answers, Dkt. 206-17 at 7 (GRE), Dkt. 206-16 (NWS), indicates Defendants' answers do not comply with Fed.R.Civ.P. 33(b)(1)(B) which requires interrogatories be answered, if the requested "party is a public or private corporation, a partnership, an association, or a governmental agency, by any officer or agent, who must furnish the information available to the party," under oath.  Fed.R.Civ.P. 33(b)(3).  Additionally, Defendants' objection to Plaintiff's interrogatories requesting explanatory information regarding Defendants' use of F.O.B. designation for shipments of GRE cigarettes to NWS or to NWS's distributors as requesting a legal conclusion is without merit.  Under U.C.C. § 2-319(1), an F.O.B. designation signifies the point in the sales transaction at which the risk of loss passes to the recipient purchaser.  The court fails to see how Plaintiff's request for what essentially is a business consideration constitutes a request for a legal opinion regarding the rationale for Defendants' selection of the F.O.B. for Defendants' cigarette shipments and Defendants provide no authority for Defendants' refusal to answer the interrogatory.  *See also Nimkoff v.  Dollhausen*, 262 F.R.D. 191, 195 (E.D.N.Y. 2009) (discussing Rule 33(c) contention interrogatories may ask, *inter alia*, the requested party "'to explain how the law applies to the facts'" (quoting *Strauss v. Credit Lyonnais*, S.A., 242 F.R.D. 199, 233 (E.D.N.Y. 2007)).  Plaintiff's motion regarding Defendants' inadequate answers to Plaintiff's Interrogatories should therefore be GRANTED.

Defendants' refusal to provide contact information, specifically home addresses and telephone numbers if known to the disclosing party, for its witnesses disclosed in accordance with Fed.R.Civ.P. 26(a)(1) ("Rule 26(a)(1)"), is also without merit.  By its terms, the rule requires disclosure of "the name and, if known, the address and

telephone number" of potential witnesses.  Fed.R.Civ.P. 26(a)(1)(A)(i).  It is generally recognized that providing counsel's address in lieu of that of the disclosed witness does not comply with Rule 26(a)(1) which requires the home addresses and telephone numbers of disclosed witnesses who are employees of the disclosing party.  *See* 6 Moore's FEDERAL PRACTICE—Civil § 26.22(4)(a)(1) (200) (citing caselaw).

Defendants' reliance on *Tamas v. Family Video Movie Club, Inc.*, 304 F.R.D. 543 (N.D.Ill. 2015) ("*Tamas*"), to avoid providing such contact information, is unavailing.  In *Tamas,* the court approved defendant's compliance with Rule 26(a)(1) allowing the defendant to provide counsel's address in lieu of that of the disclosed witnesses which defendant designated as persons within defendant's "control group," *Tamas*, 304 F.R.D. 546, because of the "exorbitant" number of employees, 3,300, whom defendant had identified.  *Id.*  However, such an exemption from the otherwise unambiguous requirements of Rule 26(a)(1) does not find support within the text of the rule nor do Defendants cite to any authority within the Second Circuit approving any such similar exception as that approved in *Tamas*.  Moreover, here, unlike the 3,300 witnesses in *Tamas*, the number disclosed by Defendants is not "exorbitant" so as to warrant a similar accommodation.  Specifically, GRE disclosed 10 employees; NWS disclosed 2 employees.  Accordingly, the undersigned declines to follow *Tamas* and exclude those individuals from the general requirements of Rule 26(a)(1) as persons within Defendants' "control group."  Moreover, it appears the court's approval in *Tamas* of the use of counsel's address for that of the "control group" was based on convenience, a factor not necessarily authorized by the rule.  *See Luke's Catering Service, LLC v. Cuomo*, __ F.Supp.3d __, 2020 WL 5425008, at *9 (W.D.N.Y. Sept. 10, 2020) (court not

required to follow precedent from other district courts) (citing *Camreta v. Greene*, 563 U.S. 692, 709 n. 7 (2011) ("A decision of a federal district court judge is not binding precedent in either a different judicial district, the same judicial district, or even upon the same judge in a different case.")).  Plaintiff's motion on this issue should therefore be GRANTED.

(2)   Defendants' Request to Modify the Scheduling Order.

Turning to Defendants' Request to Modify the Scheduling Order, the court observes that although Defendants' request is belated in that Defendants should have earlier advised Plaintiff and the court that the restrictions caused by the pandemic were interfering substantially with Defendants' ability to comply timely with Plaintiff's production requests and requiring additional time for Plaintiff's requested document production, nevertheless it is difficult, without conducting an evidentiary hearing to ascertain the precise validity of Defendants' asserted impediments to production which, in the circumstances, the court in its discretion, declines to undertake, to gainsay Defendants' representations regarding the impact of governmental and tribal regulations related to control of the virus on Defendants' ability to conduct normal document production.  The parties are no doubt aware of this court's considerable effort to maintain its own functioning in a safe manner in response to the coronavirus.  *See* General Order filed Dec. 8, 2020 (recognizing the difficulties presented to the court, counsel, parties, witnesses, jurors and the public in accessing the court caused by the virus and directing numerous responsive measures to ensure public safety). Additionally, as to GRE's circumstances, the court is hampered by the lack of information explaining the extent to which civil litigation and related pretrial discovery

activity has been restricted in Southern Ontario by virus-related regulations.  Moreover, courts have been prompted to stay discovery based on the coronavirus itself establishing good cause for the delay.  *See Garbutt v. Ocwen Loan Servicing, LLC*, 2020 WL 1476159, at *2 (M.D.Fla. Mar. 26, 2020) ("good cause exists based on the disruption to business caused by the spread of Covid-19").  In granting a 60-day stay of discovery, the court in *Garbutt* stated "[t]he situation caused by the virus makes it reasonable to stay discovery for a period of time."  *Id.*  Here, Defendants request an additional 90 days to respond to Plaintiff's discovery requests.  Under the present circumstances, including a rising coronavirus infection rate and related deaths from the virus, the court finds itself constrained to accept Defendants' representations at this time.  Based on Defendants' representations, the court therefor finds good cause for the request.  Accordingly, Defendants' request should be GRANTED.  An Amended Scheduling Order consistent with the foregoing will be filed by the court.

(3)   Defendants' Motion to Compel.

Defendants' motion consists of two parts.  First, Defendants seek to compel Plaintiff's responses to Defendants' discovery requests broadly directed to the Plaintiff's legal authority to regulate the sale of cigarettes on Indian reservations located within New York State as well as Plaintiff's policies and enforcement activities relating thereto respecting such sales.  *See* Dkt. 213 at 5-6 (summarizing Defendants' requests) ("first category").  Second, Defendants seek to require Plaintiff to comply with Plaintiff's previous agreement to provide documents from the files of various state agencies relating to the manufacture, importation and sale of GRE cigarettes into New York State through Defendants' joint venture as alleged by Plaintiff and any excise tax due on such

sales ("second category").  *See* Dkt. 213 at 8-9 (summarizing Defendants' First

Document Production Requests to which Plaintiff committed to provide production).  To

facilitate Plaintiff's production, Defendants limited Defendants' requests to five state

agencies from which Plaintiff should provide responsive documents, Dkt. 213 at 9 n. 5,

however, Plaintiff asserts it agreed to search the records of three agencies.  Dkt. 221 at

7.  Plaintiff represents it has served eight document productions providing 3,500

documents consisting of 20,000 pages.  Dkt. 221 at 7.  Defendants also assert Plaintiff

failed to provide a privilege log in support of its work-product objections to various

Defendants' discovery requests within the second category of Defendants' requests for

production, Dkt. 213 at 10, which Plaintiff has agreed to provide.  Dkt. 221 at 6.  Like

Plaintiff, Defendants also assert Defendants are entitled to Defendants' expenses in

connection with Defendants' motion pursuant Fed.R.Civ.P. 37(a)(5)(A).  Dkt. 213 at 11.

In the first category of Defendants' requests, Defendants seek documents

reflecting Plaintiff's communications with a broad array of organizations such as the

National Association of State Attorneys General, various federal agencies, and any

Indian tribes regarding sales of cigarettes in Indian Country as defined in 18 U.S.C. §

115 including sales by Defendants, the applicability of New York tax and public health

laws to the sale of cigarettes in Indian Country and Plaintiff's enforcement of such laws,

documents relating to Plaintiff's participation in the 1998 Tobacco Master Settlement

Agreement, a 2004 North American Free Trade Agreement ("NAFTA") arbitration

brought by GRE's principals, Plaintiff's investigator reports concerning purchases of

Defendants' untaxed cigarettes in Indian Country, communications with other

government agencies regarding enforcement of the CCTA and PACT Act, and

documents relating to other proceedings under NAFTA relating to the importation, distribution and sale of cigarettes in Indian country, *see* Defendants' First Set of Document Requests Nos. 4, 5, 14, 17, 18, 19, 20, 21, 22, 24-27, 34, 35, 36) (referenced in Dkt. 213 at 4-5).

Plaintiff opposes Defendants' requests as stated in the first category, addressed to Plaintiff's authority to enforce Plaintiff's cigarette excise tax upon Indian cigarette sales within New York State, based on a lack of relevancy, Dkt. 221 at 8, and, even if relevant, because Defendants' requests are not proportional to the needs of the case as outlined in the TAC's claims or Defendants' putative affirmative defenses, *i.e.*, not formally asserted by Defendants in an answer to the TAC.  Dkt. 221 at 13, n. 7. However, Plaintiff does not oppose Defendants' motion on this latter ground.

Defendants contend that Defendants' requests in the first category are relevant to the equitable defenses of waiver and estoppel, unclean hands and laches, and judicial and/or collateral estoppel, albeit not yet formally pleaded in this case by Defendants.  *See* Dkt. 222 at 7.  More specifically, Defendants seek the disputed discovery in order to disprove Plaintiff has "the legal authority to regulate" the "manufacture, sale and distribution of cigarettes in Indian Country."  Dkt. 213 at 4. Defendants assert the requested documents will establish that Plaintiff has previously admitted it lacks such authority which, based on the equitable defenses Defendants evidently intend to assert,[2] bars Plaintiff's present efforts to do so as alleged in the TAC. *Id.*  Defendants' contention fails at the outset.

---

[2] Defendants asserted such defenses in Defendants' Answer to the Second Amended Complaint.  *See* Dkt. 124  ¶¶ 144 (waiver-estoppel), 145 (unclean hands-laches), 167 (judicial-collateral estoppel, 168 (forbearance) (GRE); Dkt. 122 ¶¶ 5 (waiver-estoppel), 8 (unclean hands-laches), 29 (judicial-collateral estoppel), 30 (forbearance) (NWS).

First, whether Plaintiff's present cigarette excise tax scheme enacted in 2010 directed to sales of cigarettes on Indian reservations is applicable to Defendants' shipments and distributions of untaxed cigarettes into New York State as the TAC alleges presents a question of law calling for judicial determination, not a subject for fact discovery which Defendants seek.  *See, e.g., Weil v. Retirement Plan Administrative Committee of the Terson Company, Inc.*, 913 F.2d 1045, 1048-49 (2d Cir. 1990) (reviewing question of statutory interpretation of Internal Revenue Code *de novo* as a matter of law) (*vacated in part on other grounds*, 933 F.2d 106 (2d Cir. 1991); *see also R.T. Vanderbilt Co., Inc. v. United States*, 2010 WL 2706282 at *8 (Ct.Cl. July 8, 2010) (interpretation of Internal Revenue Code as applied to issues in case presents a question of law for courts and not a subject to deposition testimony).  More pertinently is the New York cigarette excise tax scheme at issue in the instant case, *see* N.Y. Tax Law §§ 471; 471-e, as amended in 2010, which requires all cigarettes for sale in New York State be received and stamped by a licensed tax agent reflecting pre-payment of the state's cigarette excise tax prior to being made available to retailers.  For Indian retailers, the 2010 tax law permits wholesale purchases based on a prior approval by the Plaintiff's Department of Taxation and Finance of an amount of cigarettes which may be sold to Indian retailers without payment of the excise tax by the retailer or the purchaser on an amount of cigarettes calculated by the Department as the Indian reservation's probable cigarette demand, or using a coupon-based purchase system for such sales representing estimated personal use by Indian customers of a reservation and a corresponding refund to the wholesaler-tax agent representing the prepaid tax on permitted sales to Indian retailers.  This 2010 enactment of the State's cigarette excise

tax enforcement scheme was unqualifiedly upheld by the Second Circuit in *Oneida Nation of New York v. Cuomo*, 645 F.3d 154, 168 (2d Cir. 2010) ("*Oneida*") (N.Y. Tax Law § 471-e as amended in 2010 permissibly imposes excise tax collection on non-Indian, on-reservation retail cigarette purchases while exempting from the state excise tax retail cigarette purchases by qualified tribal members).  In *Oneida*, the court also approved both the prior approval and coupon systems created by N.Y. Tax Law § 471-e which limited the availability of tax-exempt cigarettes for on-reservation Indian retail purchases while preventing tax-free sales of such tax-exempt cigarettes to non-exempt non-Indian purchasers because of the resulting limited supply of cigarettes available to Indian retailers, based on the estimated personal use purchase authorization established by § 471-e, for sale to non-Indians.  *See Oneida*, 645 F.3d at 171, 172-74. As the Second Circuit in *Oneida* noted

> "A state 'does not interfere with [t]he tribes' power to regulate tribal enterprises' simply by imposing its [cigarette] excise tax on sales to non-members."

*Oneida*, 645 F.3d at 165 (quoting *Washington v. Confederated Tribes of Colville Reservation*, 447 U.S. 134, 159 (1980)).  As Judge Wesley's detailed consideration of the caselaw and statutes relevant to the issues presented in *Oneida* makes plain, the question of Plaintiff's authority in this case to enforce the 2010 excise tax scheme, which is the basis for the TAC, against Indian resellers of Defendants' cigarettes is quintessentially a legal question, not a fact issue warranting discovery as Defendants' request is irrelevant to Defendants' equitable defenses.  Thus, Defendants' attempt to demand document production from Plaintiff in support of Defendants' assertion that the TAC seeks to unlawfully regulate Indian markets in untaxed cigarettes is futile as the

"regulation" Plaintiff seeks to impose by enforcing the 2010 amendments to New York

Tax Law § 471 against illegal trafficking in untaxed cigarettes and sales to non-tax

exempt purchasers by Indian retailers in Indian Country within New York State, *i.e.*,

reservations, is, according to *Oneida*, an entirely lawful exercise of New York State's

governmental power over cigarette sales within the State.

    Nor is there any merit to Defendants' theory that Defendants' discovery requests

at issue in Defendants' first category of document production requests are relevant to

Defendants' putative equitable defenses of waiver and estoppel, laches and unclean

hands, forbearance and judicial estoppel ("the equitable defenses").  "Waiver is . . . the

intentional surrender of a legal right by act or omission; equitable estoppel applies when

a party misrepresents or conceals material facts and knows or should know that another

party will act as a result; laches bars a party's claim in equity where the party has

unreasonably delayed in a prejudicial manner; unclean hands prohibits awarding

equitable relief to a party that has acted fraudulently or deceitfully to gain an unfair

advantage . . .."  *City of New York v. Fedex Ground Package System, Inc.*, 314 F.R.D.

348, 356-57 (S.D.N.Y. 2016) ("*Fedex Ground*") (citing *New York v. United Parcel

Service, Inc.* 160 F.Supp.3d 629, 645-46 (S.D.N.Y. 2016)).  Defendants' rationale for

Defendants' putative equitable defenses is based on Defendants' assertions that

Plaintiff has been "entirely <u>inconsistent</u> over time" in stating its "legal <u>authority</u>" to

regulate cigarette sales on Indian reservations within its borders.  Dkt. 222 at 6

(underlining added).  This assertion in turn appears to be predicated upon what the

Second Circuit described in *Oneida* as a policy of "forbearance," *Oneida*, 645 F.3d at

159, adopted initially by Plaintiff's Department of Taxation and Finance ("DTF")

beginning in 1988 with respect to enforcement of proposed regulations imposing the cigarette excise tax on cigarettes sold by Indians to non-Indians subject to the tax, despite the Supreme Court's approval of such regulations in *Dep't. of Taxation & Fin. of N.Y. v. Milhelm Attea & Bros., Inc.*, 512 U.S. 61, 78 (1994) (citing *Moe v. Confederated Salish and Kootenai Tribes of Flathead Reservation*, 425 U.S. 463, 483 (1976) (upholding state law requiring Indian retailers on tribal land to collect state cigarette tax imposed on sales to non-Indians)).  Such "forbearance," was, according to Judge Wesley's opinion in *Oneida*, the result  of official concerns over "additional litigation, civil unrest, and failed negotiations between the State and individual nations and tribes," stemming from the State's attempts to enforce the regulations and unsuccessful efforts to obtain cooperation of effective Indian tribes in implementing the regulations.  *Id.* Plaintiff's administrative "forbearance" ended in 2010, shortly before the June 20, 2010 enactment of amended provisions of the New York Tax Law imposing the excise tax on all cigarettes sold within New York State including "those intended for resale to tax-exempt Indians," *Oneida*, 645 F.3d at 160, along with stamps on each pack to show the cigarette tax was prepaid, which is the legal basis of the TAC.

Defendants' reliance on Plaintiff's prior forbearance as supporting Defendants' putative equitable defenses is also groundless because the alleged § 471 violation does not relate to the forbearance policy.  It is significant that the regulations creating the excise tax collection scheme prior to 2010, which limited purchases by Indian retailers to probable annual demand for cigarette consumption requiring use of State approved coupons, in 1998 to implement § 471-e, were either repealed in 1998 or not adopted in 2003 and 2005 in connection with legislative attempts to collect excise taxes on

cigarette sales to non-Indians on Indian reservations. *See Cayuga Indian Nation of N.Y. v. Gould*, 930 N.E.2d 233, 235-40 (N.Y.) ("*Gould*") (noting that following enactment of Tax Law § 471-e in 2003 requiring collection of the excise tax on sales of cigarettes on Indian reservations, the required implementing regulations by the Department of Taxation and Finance were "never formally adopted" nor did the Department timely adopt new regulations as the 2005 enactment required), *cert. denied*, 562 U.S. 953 (2010). Thus, Plaintiff's "inconsistencies," with respect to enforcement of the excise tax on non-exempt sales by Indian retailers as Defendants allege, do not relate back to any legally extant regulations which could be then enforced and as a result subject the TAC to Defendants' putative equitable defenses. Moreover, it is also clear that, as of 2010, Plaintiff's forbearance policy was revoked based on amendments to N.Y. Tax Law § 471 which had not been implemented for "practical reasons," *Gould*, 930 N.E.2d at 237; *see also Oneida*, 648 F.3d at 160, and that the absence of enforcement during the prior four-year period, *Gould*, 930 N.E.2d at 239-40, was predicated upon DTF's perceived difficulties in "addressing the calculation or collection of taxes arising from on-reservation retail sale of cigarettes," *id.* at 239-40, not whether Plaintiff has authority to impose such tax.

Generally, "[g]overnment officials . . . are given broad discretion in their decisions whether to undertake enforcement actions." *Gagliardi v. Village of Rawling*, 18 F.3d 188, 192 (2d Cir. 1994) (citing *Heckler v. Chaney*, 470 U.S. 821, 831 (1985) ("decision not to prosecute or enforce, whether through civil or criminal process, is a decision generally committed to an agency's absolute discretion")). In a recent case in which NWS was cited as one of 22 shippers of untaxed contraband cigarettes in violation of

the CCTA and the PACT Act, the Second Circuit described plaintiff's lawsuit to enforce the CCTA and PACT Act against defendant, a common carrier for the shippers, for statutory penalties and injunctive relief as a "civil enforcement action[ ]." *New York v. United Parcel Service, Inc.*, 942 F.3d 554, 599 (2d Cir. 2019) "'Courts have routinely held that, when acting in a capacity to enforce public rights in the public interest and discharge statutory responsibilities, government entities are not subject to all equitable defenses – such as laches or estoppel – that could ordinarily be invoked against a private actor.'" *Fedex Ground,* 314 F.R.D. at 357 (quoting *New York v. United Parcel Serv., Inc.,* 160 F.Supp.3d at 640  (collecting cases)).  Such defenses may be available where the governmental party's "role in the action more closely resembles that of a private litigant." *Id.*  Relevantly, private litigants are not among plaintiffs permitted to initiate actions under the CCTA and PACT Act.  *See* 18 U.S.C. § 2346(b)(1) (permitting civil actions to enforce the CCTA to be brought by "[a] State, through its attorney general, a local government, through its chief law enforcement officer (or a designee thereof), or any person who holds a permit under chapter 52 of the Internal Revenue Code of 1986 . . ."); 15 U.S.C. § 378(c)(1)(A) (providing authority to enforce the PACT Act is held by "a State, through its attorney general, or a local government or Indian tribe that levies a tax subject to [the PACT Act] . . . .").  In the *Fedex Ground* case, the court, based on these general principles, struck defendant's affirmative defenses, similar to Defendants' putative equitable defenses in the instant action, of laches, estoppel, and unclean hands, asserted by defendant against plaintiff's CCTA claims. *Fedex Ground*, 314 F.R.D. at 358 (citing caselaw).

Additionally, Defendants' reliance on statements by Plaintiff's representatives in

earlier proceedings do not, as Defendants contend, even colorably establish Plaintiff conceded it lacked authority to enforce Plaintiff's cigarette excise tax at that time.  *See* Dkt. 213 at 407.  For example, Defendants include a statement from New York State as a party to Non-Participating Manufacturers adjustment proceedings in 2003, that the State lacked "authority to effectively tax Native American cigarette sales."  Dkt. 213 at 6. However, using a normal reading of the statement, it is reasonably clear that no concession of such purported lack of tax authority is intended, as if that were the intent the qualifier "effectively" used in the statement would be redundant.  Thus, accurately read, the statement strongly implies the state has such authority, contrary to Defendants' assertion.  Further, as the New York Court of Appeals also emphasized in *Gould*, prior to the 2010 enactments,  the limitations which prompted the State's forbearance arose from perceived legal impediments in conducting DTF audits of Indian retailers' cigarette sales to non-Indians on Indian reservations as well Indian immunity from suit to collect the unpaid excise tax from Indian sellers, *Gould*, 930 N.E.2d at 237-38, a lack of cooperation by Indian retailers to facilitate the State's enforcement efforts against such retailers, and the failure to negotiate cooperation agreements with Indian tribes to facilitate collection of applicable excise taxes, as well as physical violence by Indian protesters erupting in opposition to the State's efforts to seize contraband cigarettes being transported to reservations on public highways.  *Id.*  Such valid considerations underlying the State's forbearance have nothing to do with any official conduct suggesting a lack of legal authority sufficient to constitute a waiver of the state's ability to enforce the law.  Rather, the judicially noted considerations reflect a frustration in carrying out lawful statutory requirements in the context of Indian efforts to maximize

the profitability of cigarette sales, untaxed, to non-Indians.

It is also significant that the TAC seeks to enforce Tax Law § 471[1] which prohibits the possession of unstamped cigarettes shipped into the State by anyone other than a licensed tax agent, TAC ¶ 27, with exceptions not relevant to the instant case, N.Y. Tax Law § 471[2] which requires the prepayment of the excise tax by such agents, TAC ¶ 24, and N.Y. Tax Law § 481[2](a) providing that possession of more than 400 unstamped cigarettes is presumptive evidence that such cigarettes are subject to the excise tax.  These provisions remained enforceable regardless of the State's policy of forbearance with respect to enforcement of the cigarette excise tax laws to sales on Indian reservations.  These provisions are specifically alleged to have been violated by Defendants and undergird Plaintiff's CCTA (TAC ¶¶ 42, 43) and PACT Act claims (TAC ¶¶ 45, 47).  Moreover, a plain reading of the TAC indicates Defendants, after all, are not alleged to have violated Tax Law § 471 as Indian retailers illegally selling untaxed cigarettes to non-exempt retail purchasers which were the target of Tax Law § 471-e and the subject of the DTF forbearance policy; rather Defendants are alleged to be engaged in operating an illegal supply apparatus for importing and distributing large quantities of unstamped, untaxed cigarettes into New York State and thus in violation of the State's exclusive licensed tax agent-wholesaler requirement involving N.Y. Tax Law provisions, particularly § 471[1], that remained unaffected by the Plaintiff's forbearance policy for the period 1988-2020.  Defendants' argument is therefore based on a fundamentally erroneous premise.  Therefore, Defendants' alleged cigarette excise tax evasion operation was not within the scope of the State's forbearance policy and thus it does not protect Defendants' from liability in this action.  Nor are Defendants alleged to

be cigarette wholesalers or effective Indian tribes.  As such, Plaintiff's claims as alleged in the TAC remain viable.

Defendants' reliance on Professor Davis, Dkt. 222 at 9 (citing 2 Kenneth Culp Davis, Administrative Law Treatise § 17.06 (1ˢᵗ ed. 1958)), to support Defendants' contention that governmental parties are subject to the defense of estoppel is unavailing as the caselaw cited to support that proposition pertains to disputes by litigants over routine zoning, civil service and retroactive sales tax calculation disputes; none involve an enforcement action involving vindication of a major public policy such as the instant action in which Plaintiff as a State government seeks to dismantle a massive evasion of Plaintiff's cigarette excise policy based on Defendants' maintaining a highly lucrative system of introducing, in violation of several cigarette tax laws, vast amounts of contraband cigarettes into the New York State market for purchase and consumption by non-tax exempt cigarette purchasers.  As to Defendants' asserted laches defense, Plaintiff's action was commenced in 2013 only two years following the Second Circuit's decision in *Oneida*, upholding the present State cigarette excise tax scheme with respect to Indian sales, hardly indicative of unreasonable delay.  Nor could Defendants reasonably rely on the forbearance policy to their prejudice as justifying Defendants' continued belief for thinking that such policy indicated Defendants' illegal supply system of untaxed, unstamped cigarettes for on-reservation sale to non-Indians was within the scope of Plaintiff's forbearance policy as it was not.  Defendants' alleged illegal supply operation did not depend on how Indian retailers obtain cigarettes from lawful wholesalers in New York, which was the object of the State's forbearance policy, as such retailers could, as the TAC alleges, have continued (and did continue), to obtain

large amounts of Defendants' contraband cigarettes for unlawful sales to non-Indians. In short, Defendants' contention that the relevance of Defendants' discovery requests in the first category is support by Defendant's putative equitable defenses is meritless. The court therefore finds no support for the applicability of Defendants' putative waiver/estoppel or other equitable defense against the TAC.

Thus, even if Defendants' discovery requests were relevant to Plaintiff's claims as alleged in the TAC, and as particularly directed to Defendants' waiver defense, such discovery should be denied as not "proportional to the needs of the case," pursuant to Fed.R.Civ.P. 26(b)(1) ("Rule 26(b)(1)").  Specifically, Rule 26(b)(1) permits discovery that is relevant to a claim or defense and "proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expenses of the proposed discovery outweighs its likely benefits."  Fed.R.Civ.P. 26(b)(1) (underlining added).  Where a court finds that the discovery requests at issue would, if allowed to proceed, move the case "down an unfruitful path," *MacKenzie Architects, P.C. v. VLG Real Estate Developers, LLC*, 2017 WL 4898743, at *3 (N.D.N.Y. Mar. 3, 2017), the discovery will be denied as "disproportionate to the needs of the case," in accordance with Rule 26(b(1).  Here, because the document production in the first category sought by Defendants is based on Defendants' contention that Plaintiff's prior forbearance in declining to enforce New York's excise tax upon on-reservation cigarette sales to non-Indians is, according to Defendants, beyond the authority of Plaintiff, thus supportive of Defendants' putative equitable defenses, none of

which are applicable to Plaintiff's instant enforcement action acting as a statutorily authorized governmental authority to enforce federal and state tax laws applicable to Defendants' alleged unlawful conduct and to bring the instant federal and state claims alleged in the TAC, the court finds the requested discovery is lacking in importance to the actual issues in the case, in which the primary question is Defendants' liability for violations of the CCTA, PACT Act and New York excise tax laws for trafficking in untaxed cigarettes, rendering Defendants' discovery requests in the first category as fruitless, *MacKenzie Architects, P.C.*, 2017 WL 4898743, at * 3, and that the burden of the discovery on Plaintiff imposed by Defendants' first category of discovery requests therefore outweighs any plausible benefit.  *See id.*  The Second Circuit's holding in *Oneida*, explicitly upholding the present New York cigarette excise tax imposition and collection scheme to apply to on-reservation cigarette sales enacted in 2010 also undermines Defendants' theory that Plaintiff's forbearance of enforcement of the State's predecessor cigarette taxing scheme as applied to cigarette sales in Indian Country is, on account of such forbearance, barred.

Moreover, it would be inequitable to find, by accepting Defendants' asserted equitable defenses as valid subjects for discovery, that because of the Plaintiff's decision to forbear enforcement based, *inter alia*, on a desire to avoid, at that time, civil disorder, *i.e.*, potential violence, in connection with Plaintiff's active enforcement of the State's cigarette tax laws against non-exempt cigarette sales to non-exempt purchasers from Indian retailers in an effort to stanch the widespread evasion of the State's cigarette excise tax laws, that Plaintiff should now be prevented from enforcement of the State's amended cigarette tax laws and related provisions of the CCTA and PACT Act.

Simply put, the alleged violation of § 471 by Defendants is not related to New York's previous forbearance policy. Defendants' motion to compel document discovery as to the first category of documents should therefore be DENIED.

As to the document requests in the Defendants' second category, Plaintiff shall provide a privilege log as required by Fed.R.Civ.P. 26(b)(5) within 30 days for any documents on which a privilege is asserted by Plaintiff. Defendants may within 10 days serve objections to the claimed privileges. The court will determine the validity of such objections and, if necessary, require the disputed documents be submitted to the court for an *in camera* inspection.

## 4.   Sanctions

Fed.R.Civ.P. 37(a)(5)(A) requires the court award expenses, including reasonable attorneys fees, of a motion to compel in favor of the prevailing party where the motion was not substantially justified, *i.e.*, not reasonably arguable or the award of expenses would in the circumstances be unjust, *i.e.*, where the ability to provide the discovery at issue was beyond the responding party's control, including allocation of liability between counsel and the party to the extent either is found responsible for the need for the motion. *See Scott-Iverson v. Independent Health Association, Inc.*, 2017 WL 7598842, at * 2 (W.D.N.Y. Feb. 28, 2017)). Here, the court finds Plaintiff's motion was substantially justified to the extent of requiring Defendants to serve responsive answers to Plaintiff's interrogatories as required by Rule 33(b) and Defendants' full compliance with Rule 26(a)(1) for witness contact information; the court also has found Defendants' motion was without merit with respect to Defendants' first category of document requests but was meritorious with respect to Plaintiff's failure to provide

production, with a privilege log, for Defendants' second category of production requests.

Accordingly, Plaintiff shall show cause <u>not</u> <u>later</u> <u>than</u> <u>20</u> <u>days</u> why Defendants'

expenses should not be awarded to the extent stated above; Defendants shall show

cause why Plaintiff's expenses should not be awarded as stated above in connection

with Defendants' motion to compel production regarding Defendants' first category of

document production requests.  The parties' responses shall be filed <u>within</u> <u>10</u> <u>days</u>

thereafter; oral argument shall be at the court's discretion.


## CONCLUSION

Based on the foregoing, Plaintiff's motion (Dkt. 204) is GRANTED in part and

DENIED in part; Defendants' Request to Amend the Scheduling Order (Dkt. 210, 211) is

GRANTED; Defendants' motion (Dkt. 212) is GRANTED in part and DENIED in part.

SO ORDERED.

/s/ *Leslie G. Foschio*

_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

Dates:  December 15, 2020
        Buffalo, New York