UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

| | | |
|---|---|---|
| STATE OF NEW YORK, | | |
| | Plaintiff, | DECISION and |
| v. | | ORDER |
| GRAND RIVER ENTERPRISES SIX NATIONS, LTD., and NATIVE WHOLESALE SUPPLY COMPANY, INC., | | 14-CV-910A(F) |
| | Defendants. | |

_____

APPEARANCES:          LETITIA A. JAMES
                     New York State Attorney General
                     Attorney for the Plaintiff
                     JOHN P. OLESKE,
                     LESLIEANN CACHOLA, and
                     BRANT B. CAMPBELL
                     Assistant Attorneys General, of Counsel
                     120 Broadway
                     New York, New York  10271

                     LIPPES MATHIAS WEXLER FRIEDMAN LLP
                     Attorneys for Defendant Native Wholesale Supply
                     DENNIS C. VACCO, and
                     SCOTT S. ALLEN, Jr., of Counsel
                     1400 Liberty Building
                     Buffalo, New York  14202

                     HARTER SECREST & EMERY, LLP
                     Attorneys for Defendant Grand River Enterprises
                     JOHN G. HORN, of Counsel
                     50 Fountain Plaza
                     Suite 1000
                     Buffalo, New York  14202-2293

                     FRIEDMAN KAPLAN SEILER & ADELMAN LLP
                     Attorneys for Defendant Grand River Enterprises
                     ERIC OWEN CORNGOLD and
                     JEFFREY ROSS WANG, of Counsel
                     7 Times Square
                     27th Floor
                     New York, New York  10036

**JURISDICTION**

This case was referred to the undersigned by Honorable Richard J, Arcara on January 16, 2015, for pretrial matters.  The matter is presently before the court on Plaintiff's application filed April 12, 2021 (Dkts. 258 and 259) for attorney's fees awarded pursuant to this court's Decision and Order filed March 12, 2021 (Dkt. 242). [1]

**BACKGROUND and FACTS**[2]

In this action, Plaintiff seeks damages and injunctive relief for Defendants' alleged violations of federal and state laws applicable to the possession, shipment and sale of untaxed cigarettes in New York State, specifically, the Contraband Cigarette Trafficking Act, 18 U.S.C. §§ 2341-2346 ("the CCTA"), the Prevent All Cigarette Trafficking Act, 15 U.S.C. §§ 375-378 ("the PACT Act"), N.Y. Public Health Law § 1399-ll, and N.Y. Tax Law §§ 471, 480-b, and 1814.  Defendants to this action include Grand River Enterprises Six Nations, Ltd. ("GRE"), and Native Wholesale Supply Company, Inc. ("NWS") (together, "Defendants").  In the Third Amended Complaint (Dkt. 164) ("TAC"), Plaintiff alleges GRE manufacturers in Ontario, Canada, large quantities of cigarettes which GRE, without prepaying New York's excise tax, transports or ships to NWS in New York where NWS then distributes the cigarettes to wholesalers or retail outlets located on Indian reservations within New York State who, in turn, resell the untaxed cigarettes to both Indian and non-Indian retail purchasers.

---

[1] An award of expenses pursuant to Fed.R.Civ.P. 37(a) is non-dispositive.  *See Laser Medical Research Foundation v. Aeroflot Soviet Airlines*, 1994 WL 584665, at * 2 (S.D.N.Y. Oct. 24, 1994) ("Ordering a sanction in the amount of attorney's fees [for failure to provide discovery] is considered non-dispositive since it does not resolve the substantive claims of relief alleged in the pleadings." (citing *Thomas E. Hoar, Inc., v. Sara Lee Corp.*, 900 F.2d 522, 525 (2d Cir.), *cert. denied*, 498 U.S. 846 (1990))).
[2] The Facts are taken from the pleadings and motion papers filed in this action.

On October 9, 2020, Plaintiff moved to compel Defendants' responses to Plaintiff's discovery requests, including Plaintiff's First and Second Sets of Document Production Requests and First and Second Sets of Interrogatories ("Plaintiff's Discovery Requests") ("Dkt. 204) ("Plaintiff's Motion to Compel"); Defendants' opposition to Plaintiff's Motion to Compel were filed on October 23, 2020 (Dkt. 208-211) ("Defendants' Opposition").  On October 23, 2020, Defendants moved to compel Plaintiff's responses to Defendants' discovery requests, including Defendants' Requests for Production of Documents (Dkt. 212) ("Defendants' Motion to Compel"); Plaintiff's opposition to Defendant's Motion to Compel was filed on November 7, 2020 (Dkt. 221) ("Plaintiff's Opposition").

In a Decision and Order filed December 15, 2020 (Dkt. 225) ("December 15, 2020 D&O"), the undersigned granted in part and denied in part both Plaintiff's Motion to Compel and Defendants' Motion to Compel.  Because Fed.R.Civ.P. 37(a)(5)(A) ("Rule 37(a)(5)(A)") requires, absent an exception, awarding a party prevailing on a motion to compel discovery the reasonable costs of such motion, including attorney's fees, and Fed.R.Civ.P. 37(a)(5)(B) requires the movant pay the attorney fees incurred by the party opposing an unsuccessful motion to compel, the parties were ordered to show cause why the opposing parties' expenses, including attorney fees, incurred in connection with their respective motions to compel should not be granted (December 15, 2020 D&O at 27-28) ("Order to Show Cause" or "OTSC").[3]  Accordingly, on January 29, 2021, responses to the OTSC were filed by Defendants (Dkt. 231), and Plaintiff (Dkt. 232). On February 12, 2021, replies in further support of their respective positions on the

---

[3] Defendants' appeal of the December 15, 2020 D&O pursuant to Fed.R.Civ.P. 72(a) remains pending before Judge Arcara.

OTSC were filed by Defendants (Dkt. 234), and Plaintiff (Dkt. 235). Sur-replies regarding the OTSC were filed by Plaintiff on February 26, 2021 (Dkt. 237), and by Defendants on March 10, 2021 (Dkt. 241). In a Decision and Order filed March 12, 2021 (Dkt. 242) ("the D&O"), the requests pursuant to Rule 37 for expenses and fees were granted as to Plaintiff and denied as to Defendants, with Plaintiff directed to submit an affidavit of expenses within 30 days. D&O at 4-6.

On April 12, 2021, Plaintiff filed its fee application ("Fee Application"), consisting of the Memorandum of Law in Support of Plaintiff's Fee Application (Dkt. 258) ("Plaintiff's Memorandum"), and the Declaration of John Oleske in Support of the State's Fee Application (Dkt. 259) ("Oleske Declaration"), attaching exhibit A (Dkt. 259-1) ("Plaintiff's Exh. A"). On May 3, 2021, Defendants filed Defendants' Response to Plaintiff's Fee Application (Dkt. 269) ("Defendants' Response"). On May 13, 2021, Plaintiff filed Plaintiff's Reply to Defendants' Response to the State's Fee Application (Dkt. 271) ("Plaintiff's Reply"). Oral argument was deemed unnecessary.

Based on the following, Plaintiff's Fee Application is GRANTED in part and DENIED in part.

## DISCUSSION

1.     **Lodestar Method**

As stated, Plaintiff was awarded its expenses, including reasonable attorney's fees incurred in preparing and arguing Plaintiff's Motion to Compel, as a sanction pursuant to Fed.R.Civ.P. 37, and Plaintiff's Opposition to Defendants' Motion to Compel. D&O at 4-6; 16-27. Plaintiff was directed to file an affidavit of expenses,

4

including reasonable attorney's fees, necessary for the court to consider the amount to be awarded. *Id*. at 15.

Generally, "in determining a fee award, the typical point is the so-called lodestar amount, that is 'the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate.'" *Healey v. Leavitt*, 485 F.3d 63, 71 (2d Cir. 2007) (quoting *Hensely v. Eckerhart*, 461 U.S. 424, 433 (1983)). "Although the lodestar method is not perfect, it has several important virtues" including that "the lodestar method is readily administrable, and . . . the lodestar calculation is 'objective,' and thus cabins the discretion of trial judges, permits meaningful judicial review, and produces reasonably predictable results." *Perdue v. Kenny A ex rel. Winn.*, 559 U.S. 542, 552 (2010). The "strong presumption" that the lodestar calculation is reasonable nevertheless "may be overcome in those rare circumstances in which the lodestar does not adequately take into account a factor that may properly be considered in determining a reasonable fee." *Id*. at 554. In calculating the lodestar amount, the initial burden is on the requesting party to submit evidence supporting the number of hours worked and the hourly rate claimed. *Hensley*, 461 U.S. at 433. The "lodestar" calculation should exclude fees for work that is "excessive, redundant or otherwise unnecessary," as well as hours dedicated to severable unsuccessful claims." *Quarantino v. Tiffany & Co.*, 166 F.3d 422, 425 (2d Cir. 1999) (citing *Hensley*, 461 U.S. at 433-35). The lodestar analysis also applies where, as here, the party awarded attorney's fees is the government. *United States v. Carter*, 2020 WL 819320, at * 2 (N.D.N.Y. Feb. 19, 2020) (citing cases).

Here, Plaintiff submits an affidavit seeking fees for 225.7 hours of work performed by four attorneys and one paralegal, for a total fee award of $ 157,195.

5

Oleske Declaration ¶ 21.  The attorneys, all Assistant New York Attorneys General, include John P. Oleske ("Oleske"), Leslieann Enverga Cachola ("Cachola"), Brant Barrington Campbell ("Campbell"), and Jonathan Greenwald ("Greenwald"), and the paralegal, also an employee of the New York State Office of the Attorney General, is David Payne ("Payne"). Following is a schedule listing the hours Plaintiff claims each attorney and the paralegal worked on the motion and the associated hourly rates.

| Employee | Hourly Rate | Hours Expended | Fees Claimed |
|---|---|---|---|
| Oleske | $ 1,050 | 57.6 | $ 60,480 |
| Cachola | $ 850 | 57.4 | $ 48,790 |
| Campbell | $ 750 | 24.7 | $ 18,525 |
| Greenwald | $ 350 | 82.0 | $ 28,700 |
| Payne | $ 175 | 4.0 | $ 700 |
| Total |  | 225.7 | $ 157,195[4] |

Oleske Declaration ¶ 21.

Defendants challenge both the hourly rates and the hours expended as unreasonable, specifically arguing Plaintiff cannot recover fees for the time spent drafting Plaintiff's Reply to Defendant's response to the OTSC or performing solely clerical tasks, Defendants' Response at 2-3, Plaintiff's requested hourly rates, consistent with the prevailing market rates in the Southern District of New York, are unreasonable, id. at 3-8, and the number of hours for which Plaintiff seeks

---

[4] Plaintiff does not seek reimbursement of any expenses incurred in connection with Plaintiff's motion to compel.

reimbursement is inordinately high and reflects "multiple attorneys spent time performing excessive, redundant, or otherwise unnecessary work" such that the alleged hours expended are unreasonable. *Id*. at 8-10. Defendants also challenge the descriptions of the entries for each attorney's time spent drafting the various documents related to Plaintiff's Motion to Ccompel, asserting in total, Plaintiff is entitled to no more than $ 14,086. *Id*. at 10-16. In opposition, Plaintiff maintains it is entitled to fees for the time spent drafting Plaintiff's reply to Defendants' response to the OTSC, Plaintiff's Reply at 2-3, no fees are requested for time expended on impermissible clerical tasks, *id*. at 3-4, the hourly rates Plaintiff's seek are reasonable, *id*. at 5-9, and Plaintiff did not unnecessarily rely on an "inordinate" number of attorneys in light of the importance of the enforcement nature of this action. *Id*. at 9-11.

### A.     Hourly Rates

Plaintiff seeks to have the attorneys' fees awarded calculated using the market rates for attorneys practicing in the Southern District of New York, rather than in the Western District of New York where the reviewing court sits. Plaintiff's Memorandum at 4-6; Plaintiff's Reply at 6-9. "[D]istrict courts in this Circuit generally employ market rates to calculate awards of government attorneys' fees." *NLRB v. Local 3, Intern. Broth. Of Elec. Workers*, 471 F.3d 399, 407 (2d Cir. 2006) (citing *NLRB v. A.G.F. Sports Ltd.,* 146 L.R.R.M. 3022, 3023 (E.D.N.Y. 1994), and *United States v. Kirksey,* 639 F.Supp. 634, 637 (S.D.N.Y. 1986)). Under the forum rule, "courts should generally use the hourly rates employed in the district in which the reviewing court sits." *Simmons v. New York City Transit Auth.,* 575 F.3d 170, 174 (2d Cir. 2009) (quoting *Arbor Hill*

*Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany,* 493 F.3d 110, 119 (2d Cir. 2007) ("*Arbor Hill*"), *superseded by* 522 F.3d 182 (2d Cir. 2008)). "[D]eviation from the forum rule is only appropriate 'in the unusual case,' in which a litigant demonstrates that her selection of counsel was 'reasonable under the circumstances.'" *Id.* at 175 (quoting *Arbor Hil,* 493 F.3d at 119). Specifically, the Second Circuit has held:

> when faced with a request for an award of higher out-of-district rates, a district court must first apply a presumption in favor of application of the forum rule. In order to overcome that presumption, a litigant must persuasively establish that a reasonable client would have selected out-of-district counsel because doing so would likely (not just possibly) produce a substantially better net result.... The party seeking the award must make a particularized showing, not only that the selection of out-of-district counsel was predicated on experience-based, objective factors, but also of the likelihood that use of in-district counsel would produce a substantially inferior result.

*Id.* at 175–76.

In determining whether to apply the forum rule, some courts have distinguished between awards made pursuant to a fee-shifting statute and those made as a sanction. *See, e.g., Ceglia v. Zuckerberg,* 2012 WL 503810 at * 8  (W.D.N.Y. Feb. 14, 2012) ("*Ceglia*"); *Robbins & Myers, Inc. v. J.M. Huber Corp.,* 2011 WL 1598973, *3 (W.D.N.Y.2011) ("the court has discretion to use out-of-district rates in fixing the amount of an attorneys' fee awarded as a sanction and to deter similar conduct in the future"); *Disabled Patriots of Am., Inc. v. Niagara Grp. Hotels,* 2008 WL 1867968, * 3 (W.D.N.Y.2008).

      Underlying the court's application of out-of-district rates in *Ceglia*, however, was the fact that the action was "more than a 'garden variety' contract dispute" as the Defendants maintained, involving a challenge, raising significant computer technology issues, to the rightful ownership of Facebook, Inc., a social media company then valued

at $ 1 billion which justified the defendants' retaining lead counsel from a top New York City law firm.  *Ceglia*, 2012 WL 503810 at *6.  Similarly, in *Robbins & Meyers, Inc.*, the plaintiff alleged fraud against the defendants in connection with the plaintiff's purchase of a wholly-owned subsidiary which the court found justified the defendants' retention of a top law firm practicing in the Southern District of New York, which firm had been representing the defendants since 2000, as well as the attorney hourly rates typically charged by such firms. *Robbins & Meyers, Inc.*, 2011 WL 1598973, at * 3-4.  In contrast, that the nature of the instant action is not so rare as to justify out-of-district fees is supported by the fact that similar actions involving the New York Attorney General's Office for this region and various Native American entities challenging the validity and enforcement of New York cigarette taxation laws have been adjudicated in this district. *See*, *e.g.*, *Seneca Nation of Indians v. Paterson*, 2017 WL 281754, at * 1 (W.D.N.Y. Jan. 23, 2017); and *Unkechauge Indian Nation v. Paterson*, 2020 WL 553576, at *1 (W.D.N.Y. Feb. 4, 2020).  Plaintiff's motion to compel also involved what can only be described as routine discovery concepts, *e.g.*, failures to answer interrogatories, to produce documents, and provide witness contact information pursuant to Fed.R.Civ.P. 26(a)(1)(A)(i) regarding required disclosures.  Further, although Plaintiff's successful opposition to Defendants' motion to compel related to issues of Plaintiff's continued capacity to enforce Plaintiff's cigarette tax laws, *see* December 15, 2020 D&O at 16-18 (citing *Oneida Nation of New York v. Cuomo*, 645 F.3d 154, 168 (2d Cir. 2010) ("*Oneida*"), and civil enforcement caselaw regarding equitable defenses, it did not raise complex issues, unlike in *Ceglia*, that required special expertise by counsel in successfully opposing Defendants' motion to compel.

9

Of further significance is that the instant case was filed in the Eastern District of New York, and transferred to the Western District pursuant to 28 U.S.C. § 1406(a) for improper venue. *See* Dkt. 45 (GRE arguing for dismissal based, *inter alia*, on improper venue or alternatively transferring the case to the Western District of New York), Dkt. 48 (same argument by NWS), and Dkt. 65 (October 15, 2014 Minute Entry for proceedings before District Judge Leonard D. Wexler following which Judge Wexler transferred the matter to the Western District of New York). Significantly, "if a suit is not maintainable in the district of filing and is transferred because of improper venue pursuant to 28 U.S.C. § 1406(a) (1976), the rates prevailing in the forum district should normally apply; otherwise counsel has an incentive to file in a high-rate district in the hope of obtaining a high fee, even though the case must be litigated elsewhere." *Polk v. New York State Dep't of Corr. Servs.*, 722 F.2d 23, 25 (2d Cir. 1983) (distinguishing, for purposes of determining which district's market hourly rate should be used to calculate award of attorney's fees, between attorney's fees awarded where a case is transferred for "the convenience of parties and witnesses, in the interest of justice" pursuant to 28 U.S.C. § 1404(a) where counsel normally is entitled to fees at the prevailing rate in the district where filed and a transfer for improper venue pursuant to 28 U.S.C. § 1406(a)). Finally, although using higher out-of-district hourly billing rates may be justified to promote greater deterrence and discourage further noncompliance, *Robbins & Myers, Inc.,* 2011 WL 1598973, *3 ("the court has discretion to use out-of-district rates in fixing the amount of an attorneys' fee awarded as a sanction and to deter similar conduct in the future"), the court finds no need for such additional incentive in this case. The court thus uses

the market hourly rates for the Western District of New York to calculate the reasonable attorneys' fees to be awarded to Plaintiff.

Having determined that the forum rule applies to the calculation of the attorneys' fees to be awarded in this case, the court considers what rates are reasonable in the Western District of New York. "The resulting product 'should be in line with the rates prevailing in the community for similar services by attorneys of comparable skill, experience, and reputation.'" *Carter*, 2020 WL 819320, at * 2 (quoting *Kapoor v. Rosenthal*, 269 F.Supp.2d 408, 412 (S.D.N.Y. 2003) (citing cases)). "A district court may also use its knowledge of the relevant market when determining the reasonable hourly rate." *McDonald ex rel Prendergast v. Pension Plan of the NYSA-ILA Pension Tr. Fund*, 450 F.3d 91, 96–97 (2d Cir. 2006) (citing *Miele v. New York State Teamsters Conference Pension & Ret. Fund,* 831 F.2d 407, 409 (2d Cir.1987)).

In the instant case, Plaintiff provides a brief description of the level of experience for each of the Assistant AGs assigned to this case. Oleske is the Senior Enforcement Counsel at the New York State Attorney General's Office ("the AG's Office"), with more than 20 years of experience as an attorney. Oleske Declaration ¶ 9. Cachola is Acting Deputy Bureau Chief and Tobacco Section Enforcement Chief of the Health Care Bureau at the AG's Office, and has been an attorney for more than 10 years. *Id*. ¶ 10. Campbell works in the Health Care Bureau at the AG's office and has been an attorney since 1999. *Id*. ¶ 11. Greenwald also works in the AG's Office Health Care Bureau and graduated law school in 2020. *Id*. ¶ 12. Payne commenced working in at the AG's Office in 2006. *Id*. ¶ 13.

11

Within the Western District of New York, $ 500 is in-line with hourly rates for attorneys with experience similar to Oleske. *DIRECTV, LLC v. Wright*, 2020 WL 289156, at *2 (W.D.N.Y. Jan. 21, 2021) (citing cases). Attorneys with experience similar to Cachola and Campbell can be expected to charge an hourly rate of $ 350. *See Hallmark v. Cohen & Slamowitz, LLP*, 378 F.Supp.3d 222, 230 (W.D.N.Y. 2019). (finding $350-375 per hour were reasonable hourly rates in Fair Debt Collection Practices Act class action); *Langhorne v. Takhar Group Collection Services, Ltd.,* 2016 WL 1177980, at *2 (W.D.N.Y. Mar. 4, 2014) ($300/hr. reasonable for experienced attorney). For Greenwald, the court finds $ 200 is a reasonable rate in this district. *See Langhorne*, 2016 WL 1177980, at *2 ($ 175 reasonable hourly rate for newer attorneys). Further, the hourly rate for paralegals within this district is $ 100. *Wright*, 2020 WL 289156 at *2.

### B.     Hours

Defendants argue Plaintiff's time entries are unreasonable because the Oleske Declaration is unsworn and provides no explanation as to how the attorneys recorded their time or establishing such time entries were made contemporaneous with the asserted work, Defendants' Response at 9 & n. 4, the nature of the motion was routine and did not require input from four attorneys, *id*. at 9-10, and the recorded time entries are vague, rendering it difficult to determine whether the hours reported are excessive, redundant, or otherwise unnecessary. *Id*. at 10. Defendants all seek significant reductions in the number of hours Plaintiff asserts it expended in connection with Plaintiff's Motion to Compel, *id*. at 10-13, Plaintiff's Opposition to Defendants' Motion to

Compel, *id*. at 13-14, and the Fee Application. *Id*. at 14-15.  Plaintiff maintains it is entitled to attorney fees for all claimed hours because the asserted hours are "conservative estimates of its time spent litigating both motions to compel," Plaintiff's Reply at 9, and are reasonable in this action in which Plaintiff is attempting to enforce both federal and New York laws. *Id*. at 9-10.  The court finds the hours for which Plaintiff seeks to recover attorney fees are excessive.

First, as Defendants argue, Defendants' Response at 2-3, Plaintiff may not recover for any time spent arguing in reply to Defendants' response to the OTSC.  A plain reading of such papers establishes they repeat arguments Plaintiff made in opposition to Defendants' Motion to Compel.  Accordingly, all the hours expended in replying to Defendants' response to the OTSC, including this task, including 1 hour for Oleske, 9.7 hours for Cachola, 7 hours for Campbell, and 27.2 hours for Greenwald are disallowed.

Although Fed.R.Civ.P. 37(a)(5)(B) provides for Plaintiff to be awarded fees for the time spent opposing Defendants' Motion to Compel, a careful review of Plaintiff's Opposition establishes that only 30% pertains to successful arguments.  In particular, Plaintiff's successful arguments included that *Oneida* definitively answers the legal question for which Defendants sought discovery of whether the cigarette excise tax scheme enacted in 2010 and directed to the sales of cigarettes on Indian reservations is applicable to Defendants' shipments and distribution of untaxed cigarettes into New York State such that Defendants' assertion to the contrary was without a reasonable basis and no discovery related to this issue of law is necessary in this action.  Plaintiff's Opposition at 6-8.  As well, there was no merit to Defendants' requested discovery

related to Defendants' equitable defenses predicated on Plaintiff's prior forbearance, such as equitable estoppel and waiver, based on Plaintiff's alleged inconsistency in seeking to enforce the state's cigarette taxing laws in the instant action. *Id*. at 8-14. The court thus reduces the number of hours for which Plaintiff seeks attorney fees in connection with Plaintiff's Opposition by 70%, resulting in disallowing 2.94 hours for Oleske, 21.84 hours for Cachola, 4.9 hours for Campbell, and 1.05 hours for Payne.

Insofar as Plaintiff seeks to recover for hours billed by two senior associates, including Cachola and Campbell, the court finds Plaintiff's attorneys assigned to the discovery motions were overstaffed. *See United States v. Acquest Transit LLC*, 2016 WL 3536673, at * 2 (W.D.N.Y. June 29, 2016) (reducing total hours expended by senior staff attorneys on action by 50% because the plaintiff government's prosecution of Clean Water Act enforcement proceedings was "significantly overstaffed"). To account for such overstaffing, the court disallows recovery of all of Campbell's hours.

With regard to Greenwald, the time records show Greenwald expended a total of 54.8 hours researching basic fee application law including the lodestar amount and out-of-market rates which, as discussed above, Discussion, *supra*, at 7-12, cannot be awarded because the Eastern District of New York, where this action was initially filed, was an improper venue, and the nature of Plaintiff's motion to compel was not sufficiently complicated or unique to support the need for out-of-district counsel. Accordingly, the court disallows all of Greenwald's hours except for the six hours spend on April 8, 2021 drafting and editing the Plaintiff's Fee Application.

Further, as Defendants argue, Defendants' Response at 10, many of Plaintiff's time entries reflect time spent on several activities rendering it difficult to discern exactly

how much time each billing attorney in fact spent on the individual tasks, as well as whether there was duplication of efforts.  This so-called "block billing" is normally frowned upon, but also is common where the attorneys seeking fees are government attorneys who do not normally bill clients.  *See Acquest Transit LLC*, 2016 WL 3536573, at *2 (finding without merit the defendant's argument that the plaintiff government should not be permitted to recover any attorneys' fees where the government attorneys' claimed hours were not supported by contemporaneous time records as used by private attorneys in billing their clients but were adequately accounted for through use of the agency's own record keeping system) (citing *Perez v. Lasership, Inc.*, 2015 WL 8750965, at **2, 7 (D. Conn. Dec. 14, 2015)).  Although the use of block billing does make it difficult to review the time entries, it does not preclude awarding fees; rather, courts often employ an "across the board" percentage reduction to account for the probable duplication of efforts and unnecessary work.  *See McDonald v. Pension Plan of the NYSA–ILA Pension Trust Fund,* 450 F.3d 91, 96 (2d Cir.2006) ("A district court may exercise its discretion and use a percentage deduction as a practical means of trimming fat from a fee application.") (internal quotation marks and citation omitted); *Walker v. Coughlin,* 909 F.Supp. 872, 881 (W.D.N.Y.1995) (reducing by 15 % the total hours requested).  The court does likewise in the instant case.

### C.     Awarded Attorneys' Fees

Applying the reduced hourly rates to the reduced hours expended discussed above yields the following:

| Employee | Hourly Rate | Hours Expended | Fees Claimed |
|---|---|---|---|
| Oleske | $ 500 | 53.66 | $ 26,830 |
| Cachola | $ 350 | 25.06 | $ 8,771 |
| Campbell | $ 350 | 0.00 | $ 0 |
| Greenwald | $ 200 | 6.00 | $ 1,200 |
| Payne | $ 100 | 2.95 | $ 295 |
| Total | | 86.51 | $ 37,096 |

Here, however, there are additional issues with the billing records, including the failure to use contemporaneous records sufficiently detailing the legal services provided with regard to each time-keeping entry, and instead using so-called "block billing" such that it is not possible to discern whether there is overlap or redundancy in the effort of the Plaintiff's attorneys. *See*, *e.g.*, entries dated 10/8/20 for 6 hours for Oleske for "Revision of brief (all sections); drafting/revision of declaration), and for 4.5 hours for Cachola for "Edit brief, notice of motion, and proposed order; attend to correspondence re same"). Further, the total amount of hours expended on this matter is excessive in light of the rather routine nature of Plaintiff's Motion to Compel as well as Plaintiff's Opposition to Defendants' Motion to Compel. Accordingly, the court, in the exercise of its discretion, further reduces Plaintiff's fee request by 30% to account for probable redundancy, overstaffing, block-billing, and fat-trimming. *See Scott-Iverson v. Independent Health Association, Inc.*, 2016 WL 1457881, at * 4 (W.D.N.Y. Apr. 14, 2016) (applying 30% fat-trimming reduction for "redundancies inherent in Defendant's block-billing and to eliminate in probable unnecessary time . . . ."). *See also United*

16

*States v. Acquest Transit LLC*, 2016 WL 3536573, at * (W.D.N.Y. June 29, 2016) (applying 25% fat-trimming reduction to eliminate possible redundancy and excessive time where the plaintiff's government attorney used block-billing). The court here further reduces this amount by 30% to "trim the fat," *Ortiz v. City of New York*, 843 Fed.Appx. 355, 360 (2d Cir. 2021), resulting in a final fee award of $ 25,967 ($ 37,096 X 70% = $ 25,967.20 rounded to the nearest dollar). Accordingly, Plaintiff is entitled to an award of $ 25,967 for attorneys' fees incurred in connection with the motions to compel.

Furthermore, "'[s]anctions imposed pursuant to . . . Rule 37(a) may be imposed upon either the attorney or the party or both. . . .'" *Mugavero v. Arms Acres, Inc.*, 680 F.Supp.2d 544, 575 (S.D.N.Y. 2010) (quoting *Imperial Chems. Indus., PLC v. Barr Labs., Inc.*, 126 F.R.D. 467, 473 (S.D.N.Y. 1989) and citing 7 *Moore's Federal Practice* § 37.23[4][a]). *See also* Fed.R.Civ.P. 37(a)(5)(A) (providing court may order attorney fees incurred in connection with motion to compel discovery to be paid by the party whose conduct necessitated the motion, the attorney advising such conduct, or both). Where, as in this case, the relative culpability of counsel and client for perpetrating discovery abuses is not clear, courts do not hesitate to hold both equally liable for the attorney's fees awarded. *See*, *e.g.*, *Mugavero*, 680 F.Supp.2d at 575 ("Given that the relative culpability of Plaintiff and her counsel in perpetrating these discovery abuses is not clear, Plaintiff and Plaintiff's counsel will be held equally liable for the attorneys' fees award ultimately imposed.").

## CONCLUSION

Based on the foregoing, Plaintiff's Fee Application (Dkts. 258 and 259), is GRANTED in part and DENIED in part; Plaintiff is awarded $ 25,967 in attorney's fees in connection with Plaintiff's Motion to Compel and Plaintiff's Opposition to Defendants' Motion to Compel, with half the fees to be paid by Defendants and the other half to be paid by Defendants' attorneys.  Such payments are due 30 days after an affirmance of the December 15, 2020 D&O by the District Judge.

SO ORDERED.

/s/ *Leslie G. Foschio*
_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:     October 26th, 2021
           Buffalo, New York